UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

OMEGA HOSPITAL, LLC

VERSUS

UNITED HEALTHCARE
SERVICES, INC, and
UNITED HEALTHCARE OF
LOUISIANA, INC.

CIVIL ACTION

No. 16-00560-JJB-EWD

### RULING

This matter is before the Court on the *Motion to Dismiss*[1] filed by Defendants, United Healthcare Services, Inc. and United Healthcare of Louisiana, Inc. (collectively "United"). Plaintiff, Omega Hospital, LLC ("Omega"), has filed an *Opposition*,[2] to which United filed a *Reply*.[3] Oral argument on this *Motion* was held on August 10, 2017, before this case was reassigned to the undersigned Judge.[4] Along with the briefs, the Court has considered the parties' arguments made during the oral argument. For the following reasons, United's *Motion to Dismiss* will be granted in part and denied in part, with instructions.

I.  **FACTUAL BACKGROUND**

This action was brought by Omega against United for alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA")[5] and Louisiana state law.[6] Omega is a hospital and surgical center in Metairie, Louisiana that treats patients whose

---

[1] Rec. Doc. No. 11.
[2] Rec. Doc. No. 33.
[3] Rec. Doc. No. 31.
[4] On August 22, 2017, Judge Dick granted Omega's *Motion for Recusal*, thereby recusing herself from the case. On that same day, the case was reassigned to Judge Brady. Rec. Doc. No. 37.
[5] 29 U.S.C. § 1001, *et seq.*
[6] The Louisiana state law claims are for alleged violations of prompt pay statutes, recoupment laws, and negligent misrepresentation and fraud.

1

health care plans are insured and/or administered by United.[7] Omega treats these patients on an out-of-network basis, which means that Omega does not have a preexisting contract with United concerning reimbursement for medical services and equipment.[8] Omega purports to bring these claims on behalf of two representative patients identified as "SJ" and "LL."[9]

As claims administrator, United adjudicates claims submitted on behalf of patients such as "SJ" and "LL," and determines the amounts to which each patient is entitled under the terms of their respective plan.[10] For convenience, United pays patients' benefits directly to a provider if directed to do so by the patient, as Omega alleges was done for "SJ" and "LL."[11] When United pays benefits directly to a provider, it issues a Provider Explanation of costs not covered by the patient's plan, the deductible and coinsurance obligations of the patient, the amount ultimately reimbursed by United, and the amount ultimately paid to the provider. United contends that the patient and provider frequently accept the paid amount as full reimbursement under the plan even when it is lower than the total charges incurred.[12] Other times, the patient (or the properly authorized representative provider) may challenge the initial benefits determination through a multi-level appeals process, as Omega claims it did unsuccessfully as to "LL."[13]

United contends that sometimes this exchange of information results in an agreement between the provider and the plan that the overpaid amount was identified

---

[7] Rec. Doc. No. 1, ¶ 8.
[8] *Id.*
[9] *Id.* ¶¶ 20-26.
[10] *Id.* ¶¶ 39-40.
[11] *Id.* ¶¶ 21 and 27.
[12] *Id.* ¶ 21. ("Omega did not appeal the United reimbursement" as to "SJ.").
[13] *Id.* ¶¶ 28-31.

correctly, and the provider will voluntarily return the overpayment by check or voluntary offset. In other cases, as herein, the provider (Omega) is unable or unwilling to justify the overpaid amount and refuses to return the plan's overpaid funds.[14] In these situations, after all provider appeals are exhausted, United may offset a subsequent benefit payment to that provider, reallocating the overpaid amount to pay, in whole or in part, a claim subsequently submitted by the same provider while simultaneously cancelling a corresponding amount of the provider's overpayment debt to the plan arising from the earlier benefits claims.[15]

Omega claims that this recovery of overpayments process utilized by United violates both ERISA and Louisiana law, depending on the plan at issue. United moves to dismiss Omega's complaint on three grounds: (1) Omega lacks standing to bring this case; (2) Omega fails to state a plausible claim under ERISA; and (3) Omega's state law claims are preempted by ERISA.

## II. MOTION TO DISMISS

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[16] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[17] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[18] In *Twombly*, the United States Supreme

---

[14] *Id.* ¶¶ 24-25; 34-35.
[15] *Id.* ¶¶ 25, 35.
[16] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[17] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[18] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d at 467).

3

Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[19] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[20] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[21] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[22] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[23] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[24]

### III. STANDING

The Court finds that Omega has satisfied that it has Article III standing for purposes of a motion to dismiss. As the party invoking federal jurisdiction, Omega bears the burden of establishing each element of standing.[25] To carry this burden, a

---

[19] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter *Twombly*).
[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "*Iqbal*").
[21] *Id.*
[22] *Id.*
[23] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[24] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[25] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

plaintiff must support each element with the "manner and degree of evidence required at the successive stages of litigation."[26]

First, the Court finds that Omega's allegations of the purported assignment of rights are sufficient to establish standing at this stage in the litigation. The Court finds persuasive the holdings in *Premier Health Center, P.C. v. UnitedHealth Group*[27] and *Almont Ambulatory Surgery Center, LLC v. UnitedHealth Group.*[28] The *Premier* court held that: "the standard form language provided by Plaintiffs is sufficient to establish derivative standing by assignment to bring their ERISA claims."[29] In that case, the court explained that, "[w]hile Plaintiffs do not indicate from which assignment form this language was taken, or which of their patients actually signed the form, providing that level of specificity is unnecessary. . ."[30] In *Almont*, a similar case in which the plaintiffs initially, as here, only provided the general language of the assignment forms which purported to be both an assignment of rights and authorization as an authorized representative, the court held that, "[w]hile there are certainly areas for more definiteness, the Court rules that the alleged assignments are sufficiently definite to survive a motion to dismiss on the issue of standing for Count I (for ERISA benefits pursuant to § 502(a)(1)(B))."[31] Thus, the Court finds that Omega does not lack standing for failing to attach the Assignment of Benefits form at this stage in the litigation. On a 12(b)(6) motion, the Court must accept as true that the patients at issue signed the Assignment of Benefits forms as alleged.

---

[26] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).
[27] *Premier Health Center, P.C. v. UnitedHealth Group*, CIV.A. 11-425 ES, 2012 WL 1135608, at *7 (D.N.J. Apr. 4, 2012).
[28] *Almont Ambulatory Surgery Center, LLC v. UnitedHealth Group, Inc.*, 99 F. Supp. 3d 1110 (C.D. Cal. 2015).
[29] *Premier*, 2012 WL 1135608, at *7.
[30] *Id.*
[31] 99 F. Supp. 3d at 1130.

The Court also finds that Omega has standing applying the same reasoning as the Fifth Circuit in *North Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*.[32] There the court held that North Cypress had standing because "[t]he patients have thus allegedly been deprived of what they contracted for, a concrete injury."[33] The Fifth Circuit stated: "a patient suffers a concrete injury if money that she is allegedly owed contractually is not paid, regardless of whether she has directed the money be paid to a third party for her convenience."[34] The *North Cypress* court agreed with a Southern District of New York decision which held that, if a provider "has alleged it is an assignee of the Patient and that [the insurer] failed to fulfill its contractual obligations to the Patient; this is all that is required to demonstrate Article III standing."[35]

The fact that this case involves recoupment rather than a failure to pay does not render *North Cypress* inapplicable. If United contractually owed its insureds a benefit, paid that benefit, then later recouped part of that benefit, an insured could bring a claim that United has breached its contract. Thus, as assignee of these rights, Omega can also bring such a claim against United. Further, on a motion to dismiss, Omega does not have to prove that United's recoupment scheme violates ERISA in this instance, as that is a question for the merits. Therefore, the Court denies the *Motion to Dismiss* as it relates to standing.

## IV. PLAUSIBILITY

After considering the parties' briefs and oral arguments on plausibility, the Court finds that Omega's *Complaint* lacks necessary specificity and fails to provide proper

---

[32] *North Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 194 (5th Cir. 2015).
[33] *Id.* at 194.
[34] *Id.* at 193.
[35] *Id.* (quoting in agreement *Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc.*, No. 10 CIV. 7427 JSR, 2011 WL 803097, at *4 (S.D.N.Y. Feb. 18, 2011)).

factual support for certain allegations. Therefore, the Court will allow Omega thirty (30) days leave to amend its *Complaint* to allege with specificity the dates of service and claim numbers at issue with respect to the identified patients. In turn, United is ordered to provide all plan information to Omega sixty (60) days thereafter. Omega is further ordered to amend its *Complaint* to clarify and specify the class it purports to represent.[36]

## V. STATE LAW CLAIMS

Omega has filed the following Louisiana state law claims: Count 5 alleges a violation of La Rev. Stat. 22:1832, Louisiana's "prompt pay statute," claiming that United's overpayment recovery process results in claims being paid outside the time period mandated under state law. Count 6 alleges that this overpayment recovery process violates Louisiana's recoupment laws, La. Rev. Stat. 22:1838(B) and (E). Count 7 alleges common law negligent misrepresentation and fraud claims based on Omega's alleged reliance on initial benefits determinations that United later reduced and/or offset through the overpayment recovery methods at issue.

United has moved to dismiss Counts 5 and 6 arguing they are preempted by ERISA and Count 7 for failure to comply with the particularity requirements of Rule 9 of the Federal Rules of Civil Procedure.

The Court finds that, as to the ERISA-plan participants, all state law claims are preempted by ERISA. Further, while the Court agrees that state law claims may only be asserted as to non-ERISA plans governed by Louisiana state law, the Court is not satisfied with general statements referring to non-ERISA plans without specific allegations identifying a particular non-ERISA plan at issue in this case. The Court finds

---

[36] During the oral argument on August 10, 2017, the parties and the Court noted the confusion in Omega's *Complaint* because it purports to represent both a class of patients and a class of providers. *See* ¶ 9 and ¶ 51.

that such reference to non-ERISA plans is speculative and not grounded in fact. For this reason, the Court will dismiss the state law claims as to the alleged non-ERISA plans without prejudice, allowing Omega leave to amend its *Complaint* to cure this deficiency.

Regarding the ERISA plans at issue, the Court disagrees with Omega's argument that nothing in ERISA speaks to the subject of recoupment plans as covered by La. R.S. 22:1838. Omega has pled that United's recoupment procedure is an "adverse benefit determination,"[37] clearly an issue contemplated, enforceable, and redressable under ERISA.

According to 29 U.S.C. § 1144(a), ERISA preempts a state law that "relates to" an employee benefit plan.[38] This provision states that ERISA "shall supersede any and all State laws insofar as they may now or hereinafter relate to any employee benefit plan."[39] A state law "relates to an employee benefit plan" when two requirements are met: (1) when the state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan, and (2) when the claim directly affects the relationship between the traditional ERISA entities-the employer, the plan, and its fiduciaries, and the participants and beneficiaries.[40] The Court finds that the statutes at issue, particularly La. R.S. 22:1838, unquestionably satisfy both elements. They address the right to receive benefits under the terms of an ERISA plan because they pertain to an insurer's duty to satisfy claims in good faith. They "relate to an employee benefit plan" because they directly touch upon the insured's right to receive benefits under the policy.

---

[37] Rec. Doc. No. 1, ¶¶ 5-6.
[38] *Sutherland v. U.S. Life Ins.*, 263 F.Supp.2d 1065, 1071 (E.D. La. 2003).
[39] 29 U.S.C. § 1144(a).

8

Accordingly, the Court will grant the *Motion to Dismiss* the state law claims brought on behalf of ERISA-plan participants with prejudice. The Court will grant the *Motion to Dismiss* the state law claims brought on behalf of non-ERISA plan participants without prejudice subject to Omega's leave to amend these allegations to plead these claims with greater particularity. The Court finds that Count 7 satisfies Rule 9 of the Federal Rules of Civil Procedure and will deny United's *Motion* on Count 7.

## VI. CONCLUSION

For the foregoing reasons, the *Motion to Dismiss*[41] filed by Defendants, United Healthcare Services, Inc. and United Healthcare of Louisiana, Inc., is hereby GRANTED in part and DENIED in part. Counts 5 and 6 are dismissed with prejudice as to the ERISA-plan participants. Omega Hospital, LLC is granted leave to amend its *Complaint* within thirty (30) days from this *Ruling* to cure the deficiencies noted by the Court. Defendants, United Healthcare Services, Inc. and United Healthcare of Louisiana, Inc., shall have sixty (60) days from the amendment to provide Omega Hospital, LLC with all relevant plan materials.

IT IS SO ORDERED.

Signed in Baton Rouge, Louisiana, on September 21ST, 2017.

JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

---

[40] *Hubbard v. Blue Cross & Blue Shield*, 42 F.3d 942, 945 (5th Cir. 1995).
[41] Rec. Doc. No. 11.