UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

OMEGA HOSPITAL, LLC

VERSUS

UNITED HEALTHCARE SERVICES, INC,
and UNITED HEALTHCARE OF
LOUISIANA, INC.

CIVIL ACTION

NO. 16-00560-JWD-EWD

## RULING

Before the Court is a *Motion to Dismiss* filed by Defendants, United Healthcare Services,

Inc. and United Healthcare of Louisiana, Inc. (collectively "United Defendants" or "United").[1]

Plaintiff, Omega Hospital, LLC ("Omega") has filed an *Opposition* to which Defendants have filed

a *Reply*.[2]  The Court's jurisdiction is pursuant to 28 U.S.C. § 1331. Oral argument is unnecessary.

For the following reasons, the *Motion* is granted in part and denied in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This action was brought by Omega against United for alleged violations of the Employee

Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA") and Louisiana state

law.[3]  In response to the original *Complaint*, United filed a *Motion to Dismiss*.[4]  After considering

the briefs and the arguments made during oral argument, the Court granted in part and denied in

part United's *Motion*.[5]  In particular, the Court denied United's *Motion* on the issue of standing,

finding instead that Omega had satisfied Article III standing for purposes of a motion to dismiss.[6]

The Court granted United's *Motion* as to the lack of plausibility of Omega's ERISA claims, but

---

[1] Doc. 67.
[2] Doc. 76 and Doc. 80.  United also submitted a *Notice of Supplemental Authority* to which Omega filed a *Response*.
Doc. 88 and Doc. 89.
[3] Doc. 1; Doc. 41.
[4] Doc. 11.
[5] Doc. 38.  Originally this case was assigned to Judge Shelly Dick, who, after conducting oral argument, recused
herself from the matter.  The case was subsequently reassigned to Judge James Brady, who issued the *Ruling* on
United's original *Motion to Dismiss*.  Due to Judge Brady's passing, the case was reassigned to the undersigned Judge.
[6] Doc. 38, p. 4.

gave Omega thirty (30) days to file an amended complaint to "allege with specificity the dates of service and claim numbers at issue with respect to the identified patients."[7]  The Court also granted United's *Motion* finding that all of the state law claims brought against the ERISA-plan participants were preempted by ERISA; therefore, these claims were dismissed with prejudice.[8]  As for the state law claims asserted against the non-ERISA plan participants under Louisiana's "prompt payment statute"[9] and Louisiana's recoupment laws,[10] the Court dismissed them without prejudice subject to Omega's right to amend these allegations in order to plead these claims with greater particularity.   Finding that Omega's remaining state law claim of negligent misrepresentation satisfied Rule 9 of the Federal Rules of Civil Procedure, the Court denied United's *Motion* as to this claim in regards to the non-ERISA plan participants.[11]

Pursuant to the Court's *Ruling*, on October 20, 2017, Omega filed its *First Amended and Restated Class Action Complaint* (hereinafter "*First Amended Complaint*").[12]  In response, United has filed its second *Motion to Dismiss* Omega's claims.[13]

Omega is a hospital and surgical center in Metairie, Louisiana, that treats patients whose healthcare benefit plans are insured and/or administered by United.   Omega treats United's insureds on an out-of-network basis, which means that Omega does not have a pre-existing provider contract with United concerning reimbursement for medical services and equipment.   As in its *Original Class Action Complaint*, Omega purports to bring ERISA claims on behalf of two representative patients identified as "SJ" and "LL."[14]  Omega now also brings state-law claims on

---

[7] Doc. 38, p. 7.
[8] Doc. 38, p. 9.
[9] La. R.S. § 22:1832.
[10] La. R.S. §§ 22:1838(B) and (E).
[11] Doc. 38, pp. 8-9.
[12] Doc. 41.
[13] Doc. 67.
[14] Doc. 41, pp. 7-8.

behalf of a new representative patient, "DB," who was allegedly a member of a United plan that was not covered by ERISA.[15]

United, as claims administrator, adjudicates claims submitted on behalf of patients like "SJ," "LL," and "DB," and determines the amounts to which each patient is entitled under the terms of his or her respective plan. For convenience, United pays patients' benefits directly to a provider, if directed to do so by the patient, as Omega alleges was done for "SJ," "LL," and "DB." When United pays benefits directly to a provider, it issues a Provider Explanation of Benefits or a Provider Remittance Advice which explains the costs that are allowed under the plan, the patient's deductible and coinsurance obligations, the amount reimbursed by United, and the amount paid to the provider. A patient (or the properly authorized representative provider) may challenge the initial benefits determination through a multi-level appeals process, as Omega claims that it unsuccessfully did on behalf of "LL."[16]

In order to expedite the initial payment of benefits, United claims that insurers rely on automated systems to process the massive volumes of submitted claims in the first instance. Subsequently, United conducts audits to validate paid claims. In the event the audit reveals an overpayment on a patient's claims, United issues an overpayment notification to the provider in possession of the overpaid funds for said claims with claim information.[17] United submitted such overpayment notifications to Omega for previous claims' payments for "SJ," "LL," and "DB." In each of these cases, Omega objected to United's determinations that it was entitled to reimbursement or recoupment of any overpayment. Because the recoupment amount was not paid, Omega contends that United offset the overpayment it sought by reducing subsequent "payments

---

[15] Doc. 41, pp. 11-12.
[16] Doc. 41, pp. 9-10.
[17] Doc. 58-1. (under seal).

for services rendered by Omega to unrelated patient accounts, none of which patient accounts and services were covered under the same United Group plan" as patients "SJ," "LL," and "DB."[18]

Omega contends that the process used by United to identify, adjudicate, and then recover overpayments (via direct recoupment, cross-plan recoupment, offset, and/or withholding unrelated payments) made to providers and members of the putative classes violates both ERISA and Louisiana law, depending upon the specific plan at issue.

In its *First Amended Complaint*, Omega asserts that it brings the action on its own behalf and on behalf of an "ERISA Plan Class" which it defines as follows:

> All healthcare providers in the State of Louisiana who, from ten (10) years prior to the filing date of this action to its final termination ("the Class Period"), provided or will provide healthcare services or supplies to patients insured under healthcare plans governed by ERISA and insured or administered by the Defendants, and who, after pursuing reimbursement pursuant to an assignment from the Defendants' insured, and after having received payments from the Defendants, were subjected to retroactive requests for repayment of all or a part of such payments and/or to recoupment and/or to setoff, and/or cross-plan recoupment, or to compel[] or coerce[] repayments of prior benefits.[19]

Omega also brings this action on behalf of itself and a "Non-ERISA Plan Class" which it defines as:

> All healthcare providers in the State of Louisiana who, from ten (10) years prior to the filing date of this action to its final termination ("the Class Period"), provided or will provide healthcare services or supplies to patients insured under healthcare plans governed by ERISA and insured or administered by the Defendants, and who, after pursuing reimbursement pursuant to an assignment from the Defendants' insured, and after having received payments from the Defendants, were subjected to retroactive requests for repayment of all or a part of such payments and/or to recoupment and/or to setoff, and/or cross-plan recoupment, or to compel[] or coerce[] repayments of prior benefits.[20]

---

[18] Doc. 41, pp. 8, 10, and 12.
[19] Doc. 41, p. 19.
[20] Doc. 41, p. 19.

Omega asserts four counts arising under ERISA in its *First Amended Complaint*. Because Omega has failed to identify the specific statutory provisions upon which it bases its claims, the Court construes the ERISA claims to be as follows: (1) a claim for benefits under 29 U.S.C. § 1132(a)(1)(B);[21] (2) a claim for failure to provide "full and fair review" of overpayment determinations that United later recouped in violation of ERISA § 503;[22] (3) a breach of fiduciary duty claim seeking prospective declaratory and injunctive relief under ERISA § 502(a)(3)(A) barring United from pursuing future overpayment recovery;[23] and (4) a breach of fiduciary duty claim based upon United's alleged failure to comply with the Plan terms, seeking equitable relief under ERISA § 502(a)(3)(B) compelling United to return "all funds received from [Omega and the ERISA class]" and "all funds recouped or withheld from [them]."[24] Omega asserts two claims under Louisiana law. In count five, Omega asserts a negligent misrepresentation and fraud claim,[25] and in count six, Omega asserts a new breach of contract claim.[26]

---

[21] 29 U.S.C. § 1132(a)(1)(B) provides: "A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." This is also referred to as ERISA §502(a)(1)(B).

[22] Omega alleges that the United Defendants failed to provide it and the ERISA class members "full and fair review" of denied claims pursuant to 29 U.S.C. § 1133. Doc. 41, p. 28. Section 1133 of title 29 provides: "In accordance with regulations of the Secretary [of Labor], every employee benefit plan shall—(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."

[23] Doc. 41, pp. 29-30. 29 U.S.C. § 1132(a)(3)(A) provides: "A civil action may be brought—by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan."

[24] Doc. 41, pp. 30-31. 29 U.S.C. § 1132(a)(3)(B) provides: "A civil action may be brought—by a participant, beneficiary, or fiduciary . . . (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or terms of the plan."

[25] Doc. 41, pp. 31-33. For instance, Omega has alleged that the "Defendants' misrepresentations and after-the-fact reimbursement reversals were materially misleading to Omega and to the Non-ERISA Plan Class members, each of whom accepted United insureds as patients based on representations concerning the existence of coverage and the rate of reimbursement and subsequently made business policy and decisions based on the promised reimbursements, or the original reimbursements issued and represented by the Defendants to be final payments for closed claims." Doc. 41, p. 32.

[26] Doc. 41, pp. 33-34. Omega alleges that "none of the United plans at issue in this case contain terms and conditions allowing for cross-plan recoupment of alleged overpayments to the members of the putative Classes." Omega also claims that "[b]y improperly and unlawfully retaining and continuing to retain, recouping and continuing to recoup, offsetting and continue to offset, and otherwise taking back recoupment, cross-plan recoupment, offset and/or

United now seeks dismissal of Omega's *First Amended Complaint* on the following grounds: (1) Omega lacks standing to bring this case; (2) Omega has failed to exhaust administrative remedies; (3) Omega fails to state plausible ERISA claims; (4) the Court lacks supplemental jurisdiction over Omega's state law claims; and, (5) in the alternative, Omega's state law claims are implausible, and Omega's breach of contract claim is preempted as to the ERISA plans.

## II.    LEGAL STANDARDS

### A.  Rule 12(b)(1)[27]

"Federal courts are courts of limited jurisdiction."[28]  In a Rule 12(b)(1) motion, a party may raise the defense of lack of subject matter jurisdiction.  Pursuant to Rule 12(b)(1), a claim "'is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim."[29] "A motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief."[30]

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."[31]   "Moreover, when a complaint could be dismissed for both lack of jurisdiction and failure to state a claim, 'the court should dismiss only on the jurisdictional ground under [Rule]

---

withholding reimbursements previously paid to Omega and to the ERISA Class and Non-ERISA Plan Class members, the Defendants have breached the plan contract between the Defendants and the plan beneficiaries (and their healthcare providers where acting pursuant to a valid assignment)." Doc. 41, p. 33.

[27] *See Memorial Hermann Health System v. Pennwell Corp. Medical and Vision Plan*, Civil Action No. 17–2364, 2017 WL 6561165, *4 (S.D. Tex. Dec. 22, 2017), for discussion about how the Fifth Circuit has treated standing challenges to whether a party may assert a claim for benefits under ERISA as jurisdictional challenges; therefore such challenges are appropriately considered under Rule 12(b)(1).

[28] *Kokkonen v. Guardian Life Ins. Co. of America*, 114 S.Ct. 1673, 1675 (1994).

[29] *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012)(quoting *Home Builders Ass'n v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

[30] *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

[31] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

12(b)(1), without reaching the question of failure to state a claim under [Rule] 12(b)(6)."[32] This practice prevents a court from issuing advisory opinions.[33]

There are two forms of Rule 12(b)(1) challenges to subject matter jurisdiction: "facial attacks" and "factual attacks."[34] "A facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence that challenges the court's jurisdiction based solely on the pleadings."[35] In considering a "facial attack," the court "is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient the complaint stands."[36] Whereas, "[a] factual attack challenges the existence of subject matter jurisdiction irrespective of the pleadings, and matters outside the pleadings such as testimony and affidavits may be considered."[37] The "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."[38] "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."[39] When a factual attack is made, the plaintiff, as the party seeking to invoke jurisdiction, must "submit facts through some evidentiary method and . . . prov[e] by a preponderance of the evidence that the trial court does have subject matter jurisdiction."[40]

---

[32] *Crenshaw-Logal v. City of Abilene*, 436 F. App'x. 306, 308 (5th Cir. 2011)(quoting *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)).

[33] *Id.* at 308 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)).

[34] *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

[35] *Harmouche v. Consulate General of the State of Qatar*, 313 F.Supp.3d 815, 819 (S.D. Tex. June 12, 2018)(citing *Paterson*, 644 F.2d at 523).

[36] *Paterson*, 644 F.2d at 523.

[37] *Harmouche,* 313 F.Supp.3d at 819 (citing *Paterson*, 644 F.2d at 523).

[38] *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)(quotation omitted).

[39] *Id.*

[40] *Paterson*, 644 F.2d at 523; *see also*, *Gilmour for Grantor Trusts of Victory Parent Co., LLC v. Aetna Health, Inc*., Civil Action No. 17-00510, 2018 WL 1887296, *3 (W.D. Tex. Jan. 19, 2018) (citing *Doe v. Tangipahoa Parish Sch. Bd*., 494 F.3d 494, 496-97 (5th Cir. 2007)(en banc)("Standing to sue must be proven, not merely asserted.")).

## B. Rule 12(b)(6)

At the motion to dismiss stage, the Court must accept the well-plead factual allegations in the complaint as true.[41] The Court views the complaint in the light most favorable to the plaintiff, resolving all doubts in his favor.[42] However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[43] The Court will not "strain to find inferences favorable to the plaintiff."[44] If the facts as plead allow the Court to conclude that plaintiff's claims for relief are "plausible," the motion must be denied.[45] To satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully."[46] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[47] In deciding a Rule 12(b)(6) motion to dismiss, the Court may also consider other sources outside of the complaint, such as documents incorporated into the complaint by reference and matters of which the court may take judicial notice.[48]

## III.   ANALYSIS

### A. Standing

United argues that Omega lacks standing as an assignee for four reasons. United contends that the relevant Plans contain anti-assignment clauses that specifically prohibit plan members from assigning their benefits; Omega's assignment form is "inherently contradictory" because it cannot "simultaneously" be an assignee of a plan member's rights and an authorized representative

---

[41] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).
[42] *Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir. 1988).
[43] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[44] *Taha v. William Marsh Rice Univ.*, Civil Action No. H-11-2060, 2012 WL 1576099, *2 (S.D.Tex. May 3, 2012)(quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc*., 365 F.3d 353, 361 (5th Cir. 2004)).
[45] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[46] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).
[47] *Id.*
[48] *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007).

as to those same rights; Omega has, once again, failed to provide United with an actual copy of the assignments and the only form in United's possession for LL confers authorized representative status and not assignee status; and none of Omega's assignment forms allow it to seek prospective fiduciary relief.

In response, Omega argues that Judge Brady's prior *Ruling* in this case, where he determined that Omega had standing to sue, forecloses any consideration of United's standing challenges raised in the instant *Motion*. Notably, Omega offers no legal support for its position. And, in spite of its argument, Omega addresses what it characterizes as the "lone novel" standing argument made by United, concerning the validity of the assignments in light of the Plans' anti-assignment language.[49] Aside from that, however, Omega fails to offer any opposition to United's standing arguments.

The Court disagrees with Omega's position. Importantly, United's prior *Motion to Dismiss* involved only facial attacks to standing, which limited the Court's analysis to the well-plead factual allegations of the *Complaint*. In the pending *Motion*, however, United has submitted evidence in support of its standing arguments. Hence, United's standing argument is no longer limited to facial attacks—it involves factual attacks, which alters the Court's analysis as well as the Plaintiff's burden of proof.

To the extent Omega may be relying on the law-of-the-case doctrine to support its position, the Court finds the doctrine is not an impediment to considering United's standing arguments. The real significance of the law-of-the-case doctrine is that it "preclude[s] a reexamination of issues of law decided on appeal, explicitly or by necessary implication, either by the district court on remand

---

[49] Doc. 76.

or by the appellate court in a subsequent appeal."[50]   Considering that this case has yet to be examined on appeal, the law of the case doctrine does not preclude the Court from considering United's standing arguments. Accordingly, the Court shall address each of United's challenges to standing in turn.

### 1. Validity of Omega's Assignments

Pursuant to 29 U.S.C. § 1132(a)(1)(B), a civil enforcement action may be brought only by a plan participant, beneficiary, fiduciary, or the Secretary of Labor.  The statutory provision provides no independent right for a provider, such as Omega, to seek redress under ERISA. However, the Fifth Circuit recognizes "derivative standing" for a plan participant who assigns plan benefits or rights to a non-enumerated party, such as a health care service provider.[51]

Although Omega has alleged that it holds valid assignments executed by the representative patients that confer derivative standing on Omega to assert the ERISA claims in this lawsuit, United contends the assignments are invalid.  In particular, United asserts that the relevant Plans contain anti-assignment clauses that expressly prohibit plan members from assigning their benefits to an out-of-network provider like Omega; therefore, Omega's assignments are invalid.   In response, Omega contends, as United anticipated, that La. R.S. § 40:2010 ("Louisiana's assignment statute") and related jurisprudence, saves its assignments in the face of the Plans' anti-assignment provisions.

---

[50] *McPeters v. LexisNexis*, 11 F.Supp. 3d 789, 795 (S.D. Tex. Mar. 31, 2014)(quoting *Chapman v. Nat'l Aeronautics & Space Admin.*, 736 F.2d 238, 241 (5th Cir. 1984).

[51] *Tango Transp. v. Healthcare Fin. Servs., LLC*, 322 F.3d 888, 891 (5th Cir. 2003); *see also, Memorial Hermann Health System,* 2017 WL 6561165, at *5 (citing *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 191 & n. 31(5th Cir. 2015)(quoting *Harris Methodist Fort Worth v. Sales Support Services, Inc. Employee Health Care Plan*, 426 F.3d 333-34 (5th Cir. 2005)("It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim.")); *see also, Dallas County Hosp. District v. Associates' Health & Welfare Plan*, 293 F.3d 282, 289 (5th Cir. 2002)(holding that a hospital could not have independent standing to assert an ERISA claim without a valid, enforceable assignment from an ERISA plan participant or beneficiary.")).

The Court first turns its attention to the Plans' anti-assignment language. As previously explained, because this is a factual attack on standing, and the anti-assignment provisions are central to the claims at issue, the Court shall consider these provisions in evaluating United's *Motion*.

In the Summary Plan Description for representative patient "SJ," the anti-assignment provision provides as follows: "You may not assign your Benefits under the Plan to a non-Network provider without our consent. The Claims Administrator may, however, in their discretion, pay a non-Network provider directly for services rendered to you."[52] Similar language also appears in representative patient "LL's" UnitedHealthcare Certificate of Coverage ("COC"): "You may not assign your Benefits under the Policy to a non-Network provider without our consent."[53] Likewise, the COC for representative patient "DB" states: "You may not assign your Benefits under the Policy to a non-Network provider without our consent."[54]

Although the foregoing language appears to prohibit assignments, Omega contends that Louisiana's assignment statute invalidates the anti-assignment provisions. La. R.S. § 40:2010 provides in pertinent part as follows:

> No insurance company, employee benefit trust, self-insurance plan, or other entity which is obligated to reimburse the individual or to pay for him or on his behalf the charges for the services rendered by the hospital shall pay those benefits to the individual when the itemized statement submitted to such entity clearly indicates that the individual's rights to those benefits have been assigned to the hospital. When any insurance company, employee benefit trust, self-insurance plan, or other entity has notice of such assignment prior to such payment, any payment to the insured shall not release said entity from liability to the hospital to which the benefits have been assigned, nor shall such payment be a defense to any action by the hospital against that entity to collect the assigned benefits. However, an interim statement shall be provided when requested by the patient or his authorized agent.[55]

---

[52] Doc. 67-9, p. 65.
[53] Doc. 67-10, p. 77.
[54] Doc. 67-11, p. 93.
[55] La. R.S. § 40:2010.

It is undisputed that United complied with representative patients' assignments, insofar as they requested that United make direct payments as required by La. R.S. § 40:2010 to their provider, or Omega.[56] Because Omega was paid directly, United contends that La. R.S. § 40:2010 has been fully satisfied and cannot be invoked "to do the further, far more intrusive work of invalidating ERISA plan terms that prohibit the transfer of contractual rights under the plan to non-participants."[57] In particular, United points out that the express language of the assignment statute neither "purports to invalidate contractual restrictions on a member's right to assign his or her benefits," "[n]or does it forbid plans from including anti-assignment clauses, render such clauses inoperable, or otherwise confer standing on providers like Omega."[58] Therefore, United contends that the representative patients are prohibited from assigning their legal rights under the Plans to Omega.

At first blush, United's argument appears logical. In response, however, Omega asserts that the Fifth Circuit's decision, *La. Health Serv. & Indem. Co. v. Rapides Healthcare Sys.* (hereinafter "*Rapides Healthcare*"), has closed the door on United's argument.[59] After considering *Rapides Healthcare*, the Court finds itself in agreement with Omega.

In *Rapides Healthcare*, the plan administrator, Blue Cross Blue Shield of Louisiana ("BCBSLA"), filed an action seeking a declaratory judgment that La. R.S. § 40:2010 was preempted by ERISA to the extent that it applied to ERISA employee welfare benefit plans insured or administered by BCBSLA. Prior to filing suit, two hospitals had complained to the Louisiana Department of Insurance that BCBSLA failed to comply with the assignment statute after the

---

[56] Doc. 58-6, p. 14 (DB)(under seal); Doc. 58-7, p. 11 (SJ)(under seal). While this point is not in dispute for purposes of this *Motion*, United does argue that it has been unable to locate any similar assignment form patient "LL." Instead, United contends it only has a form that authorizes Omega to serve as LL's representative, not as an assignee. United's argument will be addressed herein at Section III(A)(3).
[57] Doc. 80, p. 2.
[58] Doc. 67-1, p. 16.
[59] *La. Health Serv. & Indem. Co. v. Rapides Healthcare Sys.*, 461 F.3d 529 (5th Cir. 2006).

hospitals terminated their participating provider agreements with BCBSLA. On the issue of preemption, BCBSLA advanced two arguments. First, BCBSLA asserted that La. R.S. § 40:2010 conflicted with ERISA's enforcement scheme. Second, it argued that the assignment statute was expressly preempted because it was a law that "'relate[s] to' employee benefit plans."[60] The Fifth Circuit was not persuaded by either argument.

As for the first argument, the *Rapides Healthcare* court found that ERISA was silent on the assignability of employee welfare benefits. The court further concluded that the assignment statute did not create an additional means to enforce payment of the benefits under an ERISA plan. Notably, the court explained that

> The assignment of benefits from the patient to the hospital results solely in the transfer of the cause of action provided by § 502(a) from the patient to the hospital. The assignee takes what the assignor had; no more, no less. The assignment statute merely passes the sole enforcement mechanism—ERISA § 502—from patient to hospital; it does not impose any additional obligation on the ERISA plan administrator, nor does it create additional or separate means of enforcement.[61]

Therefore, the *Rapides Healthcare* court held that La. R.S. § 40:2010 was not in conflict with ERISA's exclusive enforcement mechanism.[62]

As for its second argument, the *Rapides Healthcare* court disagreed with BCBSLA's contention that the "application of the assignment statute will impermissibly interfere with nationally uniform plan administration."[63] In doing so, the court found that the burden on the plan administrators would be minimal because La. R.S. § 40:2010 did not create any additional obligations; rather, the court suggested, the assignment statute might actually lessen BCBSLA's administrative responsibilities. "With or without assignment, [BCBSLA] will pay benefits only

---

[60] *Id.* at 533.
[61] *Id.* at 535.
[62] *Id.* at 536.
[63] *Id.* at 539.

one time, and payment is triggered upon submission of a claim form."[64]  Therefore, the court

reasoned that it should not matter to BCBSLA "whether the claim form comes from the plan

participant, as provided in the plan documents, or from the hospital, as assignee of the participant's

benefits claim."[65]  Due to the "intricacies of coverages, deductibles, and retentions of most health

care plans," the burden on the plan seemed "greater" to the court when many individual plan

participants individually filed their claims with BCBSLA.[66]  Therefore, "[b]y consolidating many

different individual claims," the court reasoned that, "hospitals [could] channel expertise in the

benefits process."[67]  Ultimately, the *Rapides Healthcare* court held that Louisiana's assignment

statute was not preempted by ERISA.[68]

As discussed in *Rapides Healthcare*, the assignment of benefits under La. R.S. § 40:2010

also results in the transfer of the cause of action provided by ERISA § 502(a)—the sole

enforcement mechanism—from the patient to the hospital.  Therefore, contrary to United's

position otherwise, when the representative patients' assigned direct payment of their benefits to

Omega under La. R.S. § 40:2010, this also inherently resulted in the transfer of their legal rights

to assert a Section 502(a) ERISA enforcement action to their provider.  Accordingly, the Court

finds that United's anti-assignment provisions are invalidated by La. R.S. § 40:2010.

In anticipation of such a finding, United argues that "if the text of La. R.S. § 40:2010 could

be construed to invalidate the plans' anti-assignment language, the statute would be preempted by

ERISA," based upon the United States Supreme Court decision, *Gobeille v. Liberty Mutual Ins.

Co.*[69]  In *Gobeille*, the Supreme Court found that ERISA preempted a Vermont statute that imposed

---

[64] *Id.*
[65] *Id.*
[66] *Id.*
[67] *Id.*
[68] *Id.* at 541.
[69] Doc. 67-1, p. 16.  *Gobeille v. Liberty Mut. Ins. Co.*, 136 S.Ct. 936 (2016).

certain reporting, disclosure, and recordkeeping requirements upon health insurers, health care providers, health care facilities, and governmental agencies. According to the *Gobeille* Court, "Vermont's reporting regime, which compel[led] plans to report detailed information about claims and plan members, both intrud[ed] upon 'a central matter of plan administration' and 'interfer[ed] with nationally uniform plan administration.'"[70] The Court explained that the matters that Vermont's law and regulations governed—plan reporting, disclosure, and recordkeeping—"are fundamental components of ERISA's regulation of plan administration."[71] As such, "[d]iffering, or even parallel, regulations from multiple jurisdictions could create wasteful administrative costs and threaten to subject plans to wide-raging liability;"[72] therefore; "[p]re-emption is necessary to prevent the States from imposing novel, inconsistent and burdensome reporting requirements on plans."[73] Ultimately, the *Gobeille* Court held that ERISA preempted Vermont's statute as applied to ERISA plans because it "impose[d] duties that are inconsistent with the central design of ERISA, which is to provide a single uniform national scheme for the administration of ERISA plans without interference from the laws of the several States even when those laws, to a large extent, impose parallel requirements."[74]

According to United, *Gobeille* "eviscerated the very reasoning upon which the Fifth Circuit relied on in [*Rapides Healthcare*] in declining to hold La. R.S. 40:2010 was preempted."[75] United's challenge to the *Rapides Healthcare* decision, however, is not an original one. In fact a similar argument was made in and rejected by the United States District Court for the Southern

---

[70] *Id.* at 945. (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 148)).
[71] *Id.* at 945.
[72] *Id.*
[73] *Id.*
[74] *Id.* at 947.
[75] Doc. 67-1, p. 17.

District of Texas in *Dialysis Newco Inc. v Community Health Systems Trust Health Plan* (hereinafter "*Dialysis Newco Inc.*"). [76]

In *Dialysis Newco Inc.*, the plan sponsor and administrator argued that the provider, CHS, lacked standing to sue because the plan's anti-assignment clause voided the provider's assignment. In response, the plaintiff-provider argued that Tennessee law, which governed the plan, prohibited anti-assignment clauses in insurance contracts; therefore, the plan's anti-assignment clause was invalid. After determining that Tennessee law applied to the plan, the district court considered whether Tennessee's assignment statute was preempted by ERISA. In particular, the court considered whether Tennessee's statute had a connection with an ERISA plan because the law "'interferes with nationally uniform plan administration.'"[77] Because the Fifth Circuit had never considered Tennessee's assignment statute, and due to its similarities with La. R.S. § 40:2010, the *Dialysis Newco Inc.* court referred to and relied on the *Rapides Healthcare* decision in rejecting the defendants' preemption argument.

The *Dialysis Newco Inc.* court explained:

> Here, for the same reasons as in [*Rapides Healthcare*], the Court finds that Tennessee's assignment statute does not govern a central matter of plan administration or interfere with uniform plan administration. It does not create additional obligations on the CHS Plan. The healthcare provider takes what the participant had—no more, no less. And it makes the administrative process easier by allowing the CHS Plan to deal with experienced healthcare providers instead of individual participants. Under the statute, CHS remains free to forbid assignments to non-medical third parties who lack this expertise.[78]

Like United attempts to do in this case, the defendants in *Dialysis Newco Inc.* argued that the legal framework underlying *Rapides Healthcare* was dismissed by the Supreme Court in

---

[76] *Dialysis Newco Inc. v. Community Health Systems Trust Health Plan*, Civil Action No. 15-272, 2017 WL 2591806 (S.D. Tex. June 14, 2017).
[77] *Id.* at *7.
[78] *Id.*

*Gobeille*. The *Dialysis Newco Inc.* court flatly rejected the defendants' argument stating as follows:

> Recognizing [*Rapides Healthcare's*] controlling strength, Defendants seek to weaken its pull by arguing that its framework was brushed aside by *Gobeille*, where the Supreme Court found that ERISA preempted a Vermont law. Their argument is unconvincing. *Gobeille* did not modify the framework used in *Louisiana Health Service*. The results differed because the state laws touched different subjects. In *Gobeille*, Vermont required ERISA plans to report information about claims and plan members. The Supreme Court found preemption necessary because ERISA has extensive reporting and disclosure requirements that are fundamental to its operation. Differing, or even parallel, regulations touching upon recordkeeping, such as Vermont's reporting regime, intrude upon this crucial component of ERISA and subject ERISA plans to new and wide-ranging liability. In contrast, the Tennessee statute does not intrude upon any fundamental part of ERISA because ERISA says precisely nothing about assignments. And unlike Vermont's requirements, the Tennessee statute does not expose plans to any additional liability.[79]

Subsequent to *Dialysis Newco Inc.*, two other district courts within the Fifth Circuit have reaffirmed the analysis and holding of *Rapides Healthcare* in the wake of *Gobeille*.[80]

Like the *Dialysis Newco Inc*, this Court too finds that *Gobeille* did not modify the *Rapides Healthcare* framework. The outcomes varied due to the nature of the state laws at issue. Unlike Louisiana's assignment statute, the contested Vermont statute in *Gobeille* imposed recordkeeping and reporting requirements on ERISA plans in addition to those already imposed by ERISA. La. R.S. § 40:2010, which deals expressly with assignments "does not intrude upon any fundamental

---

[79] *Id.* (internal citations omitted).
[80] *St. Charles Surgical Hosp. v. La. Health Serv. & Indemnity Co.*, Civil Action No. 17-2590, 2017 WL 2953733 (E.D.La. July 10, 2017)(court rejected BCBSLA's contention that its case fell outside of the scope of *Rapides Healthcare* because it involved a self-funded plan. The court held that "[t]he Fifth Circuit's holding in *Rapides Healthcare* that La. R.S. § 40:2010 is not preempted by ERISA therefore applies with equal force to a self-funded plan like the one at issue in this case."); *Center for Restorative Breast Surgery, L.L.C. v. Blue Cross Blue Shield of Louisiana*, Civil Action No. 11-806, 2016 WL 4208479, *13 n. 54 (E.D.La. Aug. 10, 2016)("The Court does not find that *Gobeille* 'makes clear that the Fifth Circuit . . . decided *Rapides Healthcare System* incorrectly,' as Defendants argue. Accordingly, consistent with the Fifth Circuit's decision in *Rapides*, this Court finds that La. R.S. § 40:2010 is not preempted by ERISA.").

part of ERISA," because ERISA is silent with respect to the assignability of benefits.[81]  Nor does La. R.S. § 40:2010 "expose plans to any additional liability."[82]  Accordingly, the Court hereby rejects United's argument that La. R.S. § 40:2010 has been preempted under *Gobeille*.

    2.  Validity of Assignment Language as Matter of Contract Law

As an alternative argument, United asserts that, in spite of the validity of the anti-assignment clauses, the assignment forms Omega claims to obtain from its patients are ambiguous, "inherently contradictory[,] and therefore invalid."[83]

United has provided copies of the patient-signed "Assignment of Benefit" forms for SJ and DB, and further concedes that the language cited by Omega in the *First Amended Complaint* corresponds to the actual Assignment language.[84]  The undisputed language of Omega's Assignment of Benefits form is as follows:

> **THIS IS A DIRECT ASSIGNMENT OF MY RIGHTS AND BENEFITS UNDER THIS POLICY TO OMEGA HOSPITAL, L.L.C., AND DIRECT PAYMENT OF THESE BENEFITS AND OTHER AMOUNTS TO OMEGA, L.L.C. AS REQUIRED BY LA. R.S. SECTION 40:2010.  I ALSO HEREBY APPOINT THE ABOVE DESIGNATED PROVIDER TO ACT AS MY AUTHORIZED REPRESENTATIVE FOR ANY HEALTH BENEFIT CLAIM FILED ON MY BEHALF FOR SERVICES RENDERED OR REQUESTED BY THIS AUTHORIZED REPRESENTATIVE.**
>
> I hereby assign to Omega Hospital, L.L.C. ("Omega"), all of my rights to benefits from <u>UHC</u> Insurance Company (the "Insurance Company") and all other insurance companies, employee benefit trusts, self-insurance plans, or other entities that are obligated to reimburse me or to pay benefits or other amounts for me or on my behalf for services rendered by Omega, as well as all of my rights to proceed against and file suits and claims against the Insurance Company with respect to these reimbursements, benefits, or other amounts, including, without limitation, my right to contest the amount of any payments made by the Insurance Company or to compel the payment of any amount.  I further hereby instruct and direct Insurance

---

[81] *Dialysis Newco Inc.,* 2017 WL 2591806, at *7.  *See also*, *Center for Restorative Breast Surgery*, 2016 WL 4208479, *13 n. 54
[82] *Dialysis Newco Inc.,* 2017 WL 2591806, at *7.
[83] Doc. 67-1, p. 18.
[84] Doc. 67-1, p. 19 n. 7.  United further notes and reiterates in its *Memorandum* and *Reply* that it has been unable to "locate any record that Omega transmitted an assignment of benefits form in connection with patient LL's claim." Doc. 67-1, p. 19 n. 7, and p. 20; Doc. 80, p. 5.

Company to pay directly to Omega all such reimbursement, professional or medical expense benefits, and other amounts allowable and otherwise payable under my current insurance policy by reason of services rendered by Omega, as payment toward Omega's total charges, by check made out and mailed to . . . .[85]

It is United's position that Omega's Assignment of Benefits form is unenforceable as a matter of law, because Omega cannot simultaneously serve as an assignee of a plan member's rights and an authorized representative as to those same rights. According to United, this is because "[a]n 'authorized representative' . . . works on behalf of the patient with respect to a benefit decision or appeal, and an assignee . . . acts on its own behalf as if it was the assignor."[86]

While it is true that authorized representatives must sue "on behalf of" patients, and only assignees may file suit in their own names, United has not adequately explained to the Court why an assignment cannot do both. When faced with a similar argument, the United States District Court for the Southern District of Texas in *Outpatient Specialty Surgery Partners, Ltd. v. Unitedheathcare Insurance Co.* explained how it actually "makes sense that healthcare provider would ask patients to convey both statuses."[87] The court reasoned that,

While healthcare providers must be assignees of participants or beneficiaries to have standing under ERISA's civil enforcement provision, ERISA regulations require that an employee benefit plan's 'claims procedures do not preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination.'[88]

---

[85] Doc. 58-7, p. 11 (Assignment for SJ) (under seal)(bold emphasis original; italicization emphasis added); *see also*, 58-6, p. 14 (Assignment for DB)(under seal)("**This is a direct assignment of my rights and benefits under this policy to Omega Hospital, LLC, and direct payment of these benefits and other amounts to Omega Hospital, LLC as required by LA R.S. Section 40:2010. I also hereby appoint the above designated provider to act as my authorized representative for any health benefit claim filed on my behalf for services rendered or requested by this authorized representative**."(emphasis original)(the remainder of DB's Assignment mirrors the language of SJ's Assignment)).

[86] Doc. 67-1, p. 19. United quoting *Almont v. Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp.*, 99 F. Supp. 3d 1110, 1145 (C.D. Cal. 2015).

[87] *Outpatient Specialty Surgery Partners, Ltd. v. Unitedhealthcare Ins. Co. d/b/a Unitedhealthcare Community Plan, et al.*, Civil Action No. 15-2983, 2016 WL 3467139 (S.D. Tex. June 24, 2016).

[88] *Id.* at *4 (quoting 29 C.F.R. § 2560.503—1(b)(4))(emphasis omitted).

Ultimately, the *Outpatient* court concluded that a healthcare provider might want the authority to proceed in both capacities on behalf of a patient in order to pursue a full range of legal and administrative remedies. [89]

The Court finds the *Outpatient's* court's reasoning to be persuasive and similarly concludes that an assignment may confer both authorized representative and assignee status to a provider. Accordingly, the Court denies United's *Motion* on this ground.

### 3. Assignment for Patient LL

United argues that it is no longer plausible that Omega is an assignee of patient LL, and, therefore, those claims should be dismissed. As previously discussed, United has come forward with the "Assignment of Benefit" forms for SJ and DB that were in its possession. However, United claims that it has no such form for LL in its files, and the form that it does have for LL bears no similarity to either the language in the Assignment of Benefit forms for SJ and DB, or as alleged in the pleadings. United argues that LL's form only conferred authorized representative status to Omega. Additionally, LL's form expired in April of 2015, more than sixteen months before Omega filed the instant lawsuit.

Omega fails to address United's argument head-on. Instead, Omega suggests in a footnote that "United could not have and would not have reimbursed Omega in the first instance had Omega failed to submit to it the proper from assigning 'LL's claims to Omega.'"[90] In reply, United has also provided LL's Certificate of Coverage, which is considered part of LL's Policy.[91] It provides

---

[89] *Id.*
[90] Doc. 76, p. 10, n. 3.
[91] Doc. 67-10, pp. 102-103. ("Policy—the entire agreement issued to the Enrolling Group that includes all of the following: The Group Policy; This Certificate; The Schedule of Benefits; The Enrolling Group's application; Riders; Amendments. These documents make up the entire agreement that is issued to the Enrolling Group.").

that regardless of any assignment, United may, in its discretion, "pay a non-Network provider directly for services rendered to you."[92]

As this is a factual challenge to standing, and the assignments are central to the claims asserted in the *First Amended Complaint*, the Court shall consider the form submitted by Omega on behalf of LL. The form, which was signed and dated by LL on April 2, 2014, is captioned as a "Member Authorization Form for a Designated Representative to Appeal a Determination," ("Authorization Form") and provides, in pertinent part, as follows:

> I hereby authorize Omega Hospital, L.L.C. to appeal United Healthcare's Determination concerning [L.L.], on my behalf, as my Designated Representative, and, as part of the appeal, I hereby authorize United Healthcare in its decision letter and in connection with the processing of my appeal, to communicate with my Designated Representative in all aspects of the appeal. I understand that these communications may contain the following: All medical and financial information contained in my insurance file . . . I understand this information is privileged and confidential and will only be released as specified in this Authorization, or as required or permitted by law. This authorization is valid for a period of one year.[93]

Omega has alleged that LL executed an Assignment of Benefits from on November, 27, 2013, which contains the same language as the Assignment of Benefits forms for SJ and DB.[94] After comparing the language of LL's Authorization Form produced by United with the actual language of the Assignment of Benefits forms for SJ and DB, it is clear to the Court that the former does not confer any assignment of benefits or rights to Omega.[95]

For instance, not only is the Authorization Form captioned differently than the Assignment of Benefits forms, but the Authorization Form is devoid of any language assigning to Omega the benefits or right to sue or bring claims for services rendered on behalf of patient LL. Instead, the

---

[92] Doc. 67-10, p. 77.
[93] Doc. 58-4, p. 16. (under seal).
[94] Doc. 41, pp. 8-9.
[95] Again the Court notes that, for the purposes of this *Motion*, United acknowledges that the actual language of the Assignment of Benefits forms for SJ and DB is accurately captured in the *First Amended Complaint*. Doc. 67-1, p. 19, n. 7; p. 20.

Authorization Form allows Omega to serve in the limited capacity as LL's authorized representative for one year, or until April 2, 2015, for the sole purpose of appealing United's decision regarding payment for medical services. LL's Authorization Form actually corresponds with Omega's allegations that it filed a "second level appeal" on behalf of LL on April 2, 2014 "through the enclosed Authorization and/or Assignment."[96] As Omega has repeatedly argued, however, the benefits sought through the initial appeals process, which includes the second level appeal, are not at issue in this case.[97]

While it was Omega's burden to submit facts through some evidentiary method to establish that the Court has subject matter jurisdiction over its claims, Omega failed to do so. Instead, Omega suggests that the Court infer that an Assignment of Benefits form for LL exists. Initially, the Court finds that an inference, without more, will not carry Omega's evidentiary burden on this factual challenge to standing. Furthermore, the Court finds that such an inference is unwarranted, because LL's Plan documents allow United to pay providers directly at its discretion, regardless of any Assignment. Based on the foregoing, the Court finds Omega has failed to demonstrate that it is an assignee of patient LL. Accordingly, the Court further finds that Omega lacks standing to assert any ERISA claims on LL's behalf, and those claims shall be dismissed without prejudice.

4.  Breach of Fiduciary Claims

In Count III of its *First Amended Complaint*, Omega reurges what purports to be a Section 502(a)(3)(A) breach of fiduciary duty claim seeking prospective equitable relief. Omega seeks declaratory and injunctive relief that would prohibit United from recovering future or prospective overpayments in a manner that Omega claims violates the terms of its patients' Plans. Relying on

---

[96] Doc. 41, p. 9.
[97] Doc. 76, pp. 16-17. ("Once again, the referenced second level of appeal was from United's initial claim determination. The initial claim determination is not the issue in this case.").

the language of the Assignment of Benefits form, United argues that because Omega's assignments are narrow in scope, Omega lacks standing to pursue claims seeking prospective relief, such as its claims for breach of fiduciary duties. In response, Omega asserts that the Court resolved this issue in its prior *Ruling* when it found that Omega had Article III standing.

As an initial matter, and for those reasons previously discussed, the Court finds that Omega's argument lacks merit because United has now raised a factual attack to standing by submitting the Assignment of Benefits forms for SJ and DB. Because Omega refers to the assignments in its *First Amended Complaint*, and these assignments are central to the predicate question of whether Omega has standing to bring its claims, the Court deems it appropriate to consider the Assignment of Benefits forms in determining whether Omega has standing to assert its Section 502(a)(3) breach of fiduciary duty claim seeking prospective relief.

The Court finds the New Jersey District Court decision, *Premier Health Center, P.C. v. Unitedhealth Group* ("*Premier Health*") to be instructive on this point.[98]

One of the issues raised in the *Premier Health* decision was whether a medical care provider, who receives an assignment of benefits from a patient, is a beneficiary under ERISA with standing to pursue all of the remedies afforded under ERISA, including prospective injunctive relief. The relevant patient assignments provided that the patient:

> assign[s] directly to Dr. Rodgers all insurance benefits, if any, otherwise payable to me for the services rendered. I understand that I am financially responsible for all charges whether or not paid by insurance. I hereby authorize the doctor to release all information necessary to secure payment of benefits.[99]

In its reasoning, the court acknowledged its prior holdings where it found that "an assignment of benefits to a provider logically gives the provider standing to bring claims under

---

[98] 292 F.R.D. 204 (N.J.D.C. 2013).
[99] *Id.* at 217.

ERISA for the benefits it was assigned."[100] Even so, the *Premier Health* court explained how such an "assignment of benefits from a patient for services by a given healthcare provider cannot logically imply the right to assert ERISA claims for injunctive relief on behalf of that patient for services that he or she may receive from other providers in the future."[101] To allow a healthcare provider to assert such claims "would unknowingly deprive the subscriber of standing to assert those claims in the future."[102] The *Premier Health* court concluded that the patient assignments which assigned to the provider "all insurance benefits . . . otherwise payable to [the patient] for the services rendered" was not sufficient to provide standing to assert ERISA claims to enjoin the plan's future application of its utilization review procedures, because those claims exceeded the scope of the assignments.[103]

Relying on the reasoning of *Premier Health*, the Court finds that Omega's assignments fail to encompass prospective claims for injunctive relief. In this case, Omega's "Assignment of Benefits and Designation" forms provide in part as follows:

> **THIS IS A DIRECT ASSIGNMENT OF MY RIGHTS AND BENEFITS UNDER THIS POLICY TO OMEGA HOSPITAL, L.L.C., AND DIRECT PAYMENT OF THESE BENEFITS AND OTHER AMOUNTS TO OMEGA, L.L.C. AS REQUIRED BY LA. R.S. SECTION 40:2010. I ALSO HEREBY APPOINT THE ABOVE DESIGNATED PROVIDER TO ACT AS MY AUTHORIZED REPRESENTATIVE FOR ANY HEALTH BENEFIT CLAIM FILED ON MY BEHALF FOR SERVICES RENDERED OR REQUESTED BY THIS AUTHORIZED REPRESENTATIVE.**
>
> I hereby assign to Omega Hospital, L.L.C. ("Omega"), all of my rights to benefits from <u>UHC</u> Insurance Company (the "Insurance Company") and all other insurance companies, employee benefit trusts, self-insurance plans, or other entities that are obligated to reimburse me or to pay benefits or other amounts for me or on my behalf for services rendered by Omega, as well as all of my rights to proceed against and file suits and claims against the Insurance Company with respect to these reimbursements, benefits, or other amounts, including, without limitation, my right

---

[100] *Id.* at 218.
[101] *Id.* at 218-19.
[102] *Id.* at 219.
[103] *Id.*

to contest the amount of any payments made by the Insurance Company or to compel the payment of any amount. I further hereby instruct and direct Insurance Company to pay directly to Omega all such reimbursement, professional or medical expense benefits, and other amounts allowable and otherwise payable under my current insurance policy by reason of services rendered by Omega, as payment toward Omega's total charges, by check made out and mailed to . . . .[104]

The Court finds that the scope of the assignments in this case far exceeds the scope of the assignments at issue in the *Premier Health* decision. Here, the assignments clearly assign to Omega the right to file suits and pursue claims against the patient-assignee's insurance company to seek reimbursements, benefits, and recover other amounts for "services rendered" by Omega. Importantly, however, this assignment does not give Omega the right to pursue prospective injunctive or declaratory relief for its patients on future claims for reimbursement and benefits. The assignment specifically qualifies the assignment of rights to those for past services provided by Omega (i.e., "services rendered").

United also correctly argues that within the Fifth Circuit, a health care provider can obtain derivative standing to assert an ERISA claim for a breach of fiduciary duty under Section 502(a)(3), if the claim is expressly and knowingly assigned.[105] "Assignments that do not refer specifically to fiduciary duty or other non-benefits ERISA claims do not assign non-benefits claims to the plaintiff."[106] The Fifth Circuit held in *Texas Life, Accident, Health & Hospital Service Insurance Guaranty Association v. Gaylord Entertainment Company*, that:

Because an assignment of a fiduciary breach of duty claim affects all plan participants, and unsuccessful claims can waste plan resources that are meant to be available for employees' retirements, these claims are not assigned by implication

---

[104] Doc. 41, pp. 3-4 (*First Amended Complaint*); Doc. 58-7, p. 11 (Assignment for SJ) (under seal)(bold emphasis original; italicization emphasis added); *see also*, 58-6, p. 14 (Assignment for DB)(under seal).
[105] Doc. 80, p. 4
[106] *Grand Parkway Surgery Center, LLC v. Health Care Service Corp.*, Civil Action No. 15-0297, 2015 WL 3756492 (S.D. Tex. June 16, 2015)(citations omitted). *See also, Houston Home Dialysis*, 2018 WL 2562692, at *3 (discussing cases within the Fifth Circuit that lend support for *Grand Parkway's* legal position).

or by operation of law. Instead, only an express and knowing assignment of an ERISA fiduciary claim is valid.[107]

In the recent decision, *Gilmour for Grantor Trusts of Victory Parent Co., LLC v. Aetna Health, Inc*., the district court for the Western District of Texas, which was presented with a factual attack on standing, considered the plan members' assignments in determining whether the provider had derivative standing to assert claims for breach of fiduciary duty under Section 502(a)(3). The assignments stated that the assignor

> does hereby sell, transfer, convey, grant and irrevocably and forever assign to [Victory] all known and unknown, past, present, and *future* rights, title and interest in all claims, *causes of action* (i.e., pursuant to common law, statute, or in equity and whether based upon tort, breach of contract, *breach of fiduciary duty*, or otherwise), insurance benefits, health care benefits and all other legal rights or recovery from/against . . . (ii) any and all health plans pursuant to which Assignor and/or Patient are entitled to receive health benefits and/or money to pay for medical care, hospital care, medical devices or treatment . . .[108]

Based on the foregoing language, the *Gilmour* court found that the assignments "expressly assigned" the provider "any claim for breach of fiduciary duty held by the Aetna plan member executing the assignment."[109]

Unlike the assignment in *Gilmour*, the Court finds that there is no express reference to fiduciary duty claims, or the assignment of future rights for that matter, in Omega's assignments. As previously discussed, without "an express and knowing assignment of an ERISA fiduciary breach claim," all of Omega's breach of fiduciary claims must fail for lack of standing.[110] The Court's finding affects all of Omega's breach of fiduciary claims. In other words, Count 4 of the *First Amended Complaint*—Omega's claim that United breached its fiduciary duty by failing to

---

[107] *Texas Life, Accident, Health & Hospital Service Insurance Guaranty Association v. Gaylord Entertainment Company*, 105 F.3d 210, 218 (5th Cir. 1997).
[108] *Gilmour for Grantor Trusts of Victory Parent Co., LLC v. Aetna Health, Inc*., Civil Action No. 17-00510, 2018 WL 1887296, *4 (W.D. Tex. January 19, 2018)(emphasis original and added).
[109] *Id.*
[110] *See supra* note 106.

comply with terms of the Plans by engaging in cross-plan offsetting—must also be dismissed due to a lack of standing.

Based on the foregoing, the Court finds that Omega lacks derivative standing to assert its Section 502(a)(3)(A) breach of fiduciary duty claim seeking prospective relief, and Section 502(a)(3)(B) breach of fiduciary duty claim seeking unjust enrichment due to United's failure to comply with the terms of the Plans. Accordingly, Count III and Count IV of Omega's *First Amended Complaint* shall be dismissed for lack of derivative standing.[111]

### B. Exhaustion of Administrative Remedies

United argues that even if the Court were to find that Omega had plead a plausible violation of plan terms or ERISA, it forfeited the right to bring suit for failure to exhaust administrative remedies. United contends that because it is clear from the face of the *First Amended Complaint* that Omega failed to exhaust administrative remedies by conceding that it failed to pursue an ERISA member appeal of United's overpayment determinations for SJ and LL, dismissal is appropriate. United asserts that Omega should not be afforded any equitable relief excusing it from proving exhaustion at this juncture because Omega had admittedly taken advantage of United's administrative remedies in the past. United further argues that Omega's informal attempt to appeal the reimbursements sought or Audit Findings/Overpayment Notification via letter in November 2013, is not a substitute for the formal ERISA appeals process necessary for purposes of exhaustion.

In response, Omega makes two arguments. Omega contends that it exhausted the only administrative remedies made available for challenging United's audit and recoupment process. To the extent it failed to exhaust its administrative remedies, Omega asserts that because United

---

[111] Omega argues in its *Opposition* that Count II is also a breach of fiduciary claim. The Court has considered the allegations and does not perceive it to be so. Doc. 76, p. 14.

failed to furnish Omega with notice of the ERISA appeals procedures, it was denied of meaningful access to pursue an ERISA appeal. In the alternative, Omega asserts that any failure to appeal United's overpayment determinations should be excused as being futile.

"Generally, a claimant seeking to recover plan benefits under ERISA must first exhaust available remedies under the plan before bringing suit."[112] "The primary purposes of the exhaustion requirement are to: (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*."[113] However, "[t]he Fifth Circuit has held that exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust administrative remedies would be a patently futile course of action."[114]

"[U]nder 29 C.F.R. § 2560.503-1(b), an ERISA benefit plan must 'establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations . . . .'"[115] "In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of [29 C.F.R. § 2560.503-1] . . . a claimant shall be deemed to have exhausted administrative remedies available

---

[112] *Tex. General Hosp., L.P. v. United Healthcare Servs, Inc.*, Civil Action No. 15-2096, 2016 WL 3541828, *5 (N.D. Tex. June 28, 2016).
[113] *Denton v. First Nat. Bank of Waco, Tex.*, 765 F.2d 1295, 1300 (5th Cir. 1985).
[114] *N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 782 F.Supp.2d 294, 304 (S.D. Tex. 2001)(internal punctuation and citations omitted)(applying exception where provider alleged facts indicating it was denied meaningful access to administrative remedies).
[115] *Koehler v. Aetna Health Inc.*, 683 F.3d 182, 191 (5th Cir. 2012).

under the plan and shall be entitled to pursue any available remedies under [29 U.S.C. § 1132(a)] [.]"[116]

As for its first argument, Omega has alleged that it contested United's unilateral cross-plan offsetting and recoupment practices through the only remedy made available to it during the audit process. For patient SJ, upon receipt of the "Audit Findings/Overpayment Notification," Omega allegedly, through written correspondence, expressed its disagreement with the audit findings within 30 days of the notification and requested that United "disclose the sources of [its] alleged information."[117] In response, United notified Omega that its request for overpayment refund remained valid.[118] While the notification contained a summary of adjustments that supported a reduced reimbursement, Omega claims that the notification failed to identify or reference the operative Plan terms that permitted such recoupment.[119] Subsequently, Omega submitted another letter objecting to United's determination.[120] For patient LL, Omega also alleged that there was no citation to any Plan terms that supported the decision or any detailed explanation for the alleged overpayment.[121] Omega further claimed that "[t]he internal rules, protocols, and supporting material data relied on for the decision were not furnished, and the United insured was not copied with the letter."[122] For both patients LL and DB, Omega has also plead that it objected to United's recoupment notification by letter.[123]

Based upon the foregoing allegations, the Court finds that Omega has plead facts indicating that that it was denied meaningful access to administrative remedies. In particular, Omega has

---

[116] *Id.*
[117] Doc. 41, p. 8.
[118] Doc. 41, p. 8.
[119] Doc. 41, p. 8.
[120] Doc. 41, p. 8.
[121] Doc. 41, p. 10.
[122] Doc. 41, p. 10.
[123] Doc. 41, pp. 9-10.

sufficiently alleged that it pursued the only available administrative remedy that United made available in order to challenge the overpayment determinations as to SJ, LL, and DB—through the submission of correspondence objecting to United's audit determination. Omega has also plead that it did not enjoy meaningful access to administrative remedies because United failed to reference the specific Plan provisions on which the overpayment determinations were made and which set forth the applicable procedures for Omega to pursue an administrative review of United's overpayment determinations.[124] Accordingly, the Court finds that Omega has sufficiently alleged that exhaustion should be excused due to United's failure to provide meaningful access to administrative remedies. In light of this finding, the Court need not reach Omega's second argument.

### C. Plausibility of ERISA Claims

United argues that even if the Court were to find that Omega has standing, its ERISA claims must fail because they are not plausible. Because the Court has already concluded that Counts III and IV must be dismissed for lack of standing, it shall only consider the viability of Omega's remaining ERISA claims asserted in Counts I and II of the *First Amended Complaint*.

1. Count I: Claim for Benefits under Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)[125]

Section 502(a)(1)(B) of ERISA authorizes a suit by a plan participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[126] "If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he

---

[124] As for these latter allegations, the Court agrees with Omega that United has conflated Omega's allegations by intertwining material that was submitted to Omega in connection with United's second level appeal process and the subsequent audit or cross-plan offsetting process. Doc. 76, p. 10.
[125] Even though the Court has determined that Omega lacks standing to assert ERISA claims on behalf of LL, the Court includes LL's plan in its analysis of Omega's claim for benefits.
[126] 29 U.S.C. § 1132(a)(1)(B).

can bring suit seeking provision of those benefits."[127]   Here, Omega seeks to recover all amounts (1) Omega and the ERISA class members paid to United in response to recoupment demands; and (2) that United allegedly "unilaterally withheld" as part of its alleged recoupment and/or cross-plan offsets.[128]

Citing to the Northern District of Texas opinion, *Innova Hospital San Antonio, L.P. v. Blue Cross and Blue Shield of Georgia, Inc*., United argues that Omega's claim must be dismissed because Omega has failed to "identify a specific plan term that confers the benefits in question."[129] In that decision, the district court dismissed the plaintiff's claims for plan benefits under ERISA because it failed to identify the specific plan provisions at issue.[130]   Recently, however, the Fifth Circuit reversed the *Innova* district court's decision on these grounds holding that "plaintiffs alleging claims under 29 U.S.C. § 1132(a)(1)(B) for plan benefits need not necessarily identify the specific language of every plan provision at issue to survive a motion to dismiss under Rule 12(b)(6)."[131]   The appellate court further explained that where a plaintiff has alleged improper reimbursement based upon representative plan provisions, the plausibility pleading requirements of *Iqbal* and *Twombly* may be satisfied "when there are enough other factual allegations in the complaint to allow a court 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"[132]   In its reasoning, the Fifth Circuit also firmly reinforced the principle that conclusory allegations alone will not suffice.

---

[127] *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)(quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).
[128] Doc. 41, pp. 25-26.
[129] Doc. 67-1, p. 26.
[130] *Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Ga., Inc.*, Civil Action No. 12-1607, 2014 WL 10212850 (N.D. Tex. July 21, 2014).  In its decision, the district court acknowledged that the Fifth Circuit had yet to determine whether a plaintiff bringing an ERISA claim had to identify the specific plan benefits in question.  *Id*. at *4.
[131] *Innova Hosp. San Antonio, L.P. v Blue Cross and Blue Shield of Ga., Inc.*, 892 F.3d 719, 729 (5th Cir. 2018).
[132] *Id.*

Therefore, in light of the Fifth Circuit's *Innova* decision, the Court finds that Omega's claim does not fail because it did not identify the specific plan language entitling it to benefits. Nevertheless, the Court finds that Omega's claim must fail because it has not plausibly plead that it is entitled to the benefits at issue—those recouped by cross-plan offsetting.[133]

Even accepting the well-plead factual allegations as true, the Court finds that Omega has failed to allege that United directly recouped any overpayments from the ERISA Plans of SJ or LL as a result of the unilateral post-payment audits. Nor has Omega alleged that the representative Plans at issue in this case—SJ's Plan, LL's Plan, or DB's Plan, for that matter—ever executed cross-plan offsets in making their payments to Omega. Rather, the allegations provide that after payments for Covered Services were initially made to Omega under the three Plans, United determined that Omega had been overpaid and requested reimbursement via audit. Critically, the *First Amended Complaint* alleges that the overpayments pertaining to these three Plans were recouped by "reducing payment for services rendered by Omega to **unrelated patient accounts**, none of which patient accounts and services were covered under the same United Group plan" as SJ, LL, or DB.[134] More simply put, Omega has alleged that the Plans of other, unrelated patients, executed offsets to Omega, that allowed United to recover for the overpayments made to Omega on behalf of SJ, LL, and DB. While such allegations may create the inference that "unrelated patients" are entitled to those benefits recouped through cross-plan offsetting, they fail to state a

---

[133] Doc. 76, pp. 21-22 (In its *Opposition*, Omega asserts that "[t]he amounts in dispute are those recouped by cross-plan offsetting, in some instances more than one year after the original benefits claim was paid and closed. There is nothing in either the Summary Plan Description or Certificate of Coverage (or presumably the complete Plan) that permits cross-plan offsetting."). In its *First Amended Complaint*, Omega alleges as follows: "As a further consequence of the Defendants' failure to comply with ERISA in the Defendants' recoupment efforts, Omega, individually and on behalf of the members of the ERISA class, is entitled to and does seek unpaid benefits, interest back to the date the claims were originally submitted to the Defendants, withdrawal of all claims for rescission or other relief asserted against Omega or the members of the ERISA Class, and repayment of any amounts paid by or withheld from Omega or from the members of the ERISA Class." Doc. 41, p. 26.

[134] Doc. 41, pp. 8, 10, and 12. (emphasis added)

plausible claim that the patients on whose behalf Omega brings this lawsuit—SJ and LL—are entitled to such benefits under ERISA.

Moreover, as correctly argued by United, in order for Omega to challenge the legality of the cross-plan offsets, it must sue using the rights of patients who are participants in the Plans that executed the offsets.[135]  Based upon the well-plead allegations of the *First Amended Complaint*, however, it is clear that Omega has failed to do so.

For the foregoing reasons, the Court finds that Omega and ERISA Plan class representative SJ has failed to allege a plausible claim for benefits under ERISA.  Accordingly, Omega's 29 U.S.C. § 1132(A)(1)(B) claim must be dismissed.

2.   Count II:  Failure to Provide Full and Fair Review Under ERISA, 29 U.S.C. § 1133

In Count II of the *First Amended Complaint*, Omega alleges that United failed to provide Omega and the ERISA Class members a full and fair review of denied claims as required under 29 U.S.C. § 1133, or Section 503 under ERISA, and the regulations promulgated thereunder. Specifically, Omega alleges that United issued claim denials that were unauthorized by the members' Plans, Evidence of Coverage, Schedule of Benefits, and Summary Plan Description. Additionally Omega asserts that United failed to disclose the "methodology and critical information relating to such claim denials" and engaged in "systematic benefit reductions without disclosure or authority under the plans."[136]

---

[135] Doc. 50-1, pp. 30-31; Doc. 80, p. 8.  Although Omega heavily relies upon *Peterson, D.C. v. Unitedhealth Grp. Inc.* for support of its claims, there is a distinct difference between the two cases.  In *Peterson*, the claims were brought on behalf of patients for whom United withheld all or some of their benefit payments in order to offset overpayments that were previously made to their providers for treatment of other patients, enrolled in different plans. 242 F.Supp.3d 834 (D. Minn.  Mar. 14, 2017).  In direct contrast, Omega has not brought its claims on behalf of any patient's plans that ever executed offsets as in *Peterson*.  Rather, Omega has brought claims on behalf of patient's plans that, in effect, actually reaped the benefit of United's use of offset.  As alleged in the *First Amended Complaint*, the plans of other unrelated patients reduced their payments to Omega in order to recapture the overpayments previously made to Omega on behalf of the representative patients SJ, LL, and DB.

[136] Doc. 41, p. 28.

Section 1133 of ERISA provides: "In accordance with regulations of the Secretary, every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."[137] ERISA defines an "employee welfare benefit plan" as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization."[138] "Section 1133 and its corresponding regulations require that the Plan: (1) provide adequate notice; (2) in writing; (3) setting forth the specific reasons for such denial; (4) written in a manner calculated to be understood by the participant; and (5) afford a reasonable opportunity for a full and fair review by the administrator."[139] Generally, the appropriate remedy for failure to comply with ERISA's procedural requirements is "[r]emand to the plan administrator for full and fair review."[140]

United contends that Omega's 29 U.S.C. § 1133 claim must be dismissed for two reasons. First, United argues that 29 U.S.C. § 1133 does not provide for a standalone cause of action. Second, United asserts that claims brought under 29 U.S.C. § 1133, and implementing regulations, 29 C.F.R. § 2560.503-1(g)[141] and (h),[142] may only be asserted against the ERISA plan itself. Omega has failed to respond to either argument.

---

[137] 29 U.S.C. § 1133.

[138] 29 U.S.C. § 1002(1).

[139] *Murphy v. Verizon Communications, Inc*., Civil Action 09-2262, 2010 WL 4248845, *9 (N.D. Tex. Oct. 18, 2010)(quoting *Wade v. Hewlett-Packard Development Co. LP Short Term Disability Plan*, 493 F.3d 533, 540 (5th Cir. 2007)).

[140] *Lafleur v. La. Health Serv. & Indem. Co*., 563 F.3d 148, 157 (5th Cir. 2009).

[141] 29 C.F.R. § 2560.503-1(g)(1)(i)-(iv) provides that "the plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination . . . The notification shall set forth, in a manner to be understood by the claimant—(i) the specific reason or reasons for the adverse determination; (ii) Reference to the specific plan provisions on which the determination is based; (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review."

[142] 29 C.F.R. § 2560.503-1(h) delineates regulations governing the appeal of adverse benefit determinations. Section § 2560.503-1(h)(1) provides as follows: "In general. Every employee benefit plan shall establish and maintain a

Omega appears to concede that 29 U.S.C. § 1133 does not provide an independent basis for a claim because it fails to oppose United's contention. In conducting its own review of jurisprudence within the Fifth Circuit, the Court has determined that district courts have found that while Section 1133 does not create a private right of action for compensatory relief, it does allow for equitable relief.[143] Omega seeks relief in the form of exhaustion of its administrative remedies due to United's alleged failure to provide full and fair review, reasonable claims procedures, and necessary notices and disclosures. In the alternative, Omega claims that exhaustion should be excused as futile, and "all benefits diverted or retained by the Defendants should be returned to the putative ERISA Class member."[144] The Court finds that the relief sought by Omega is clearly equitable in nature. Accordingly, the Court further finds that United's argument fails on this ground.

As for United's second argument, Omega again appears to concede United's point for failure to oppose it. Within the Fifth Circuit, district courts have found that the ERISA Plan, itself, is the only proper defendant in a Section 503 claim.[145] In this case, Omega has not alleged that United is the "Plan." Instead, Omega has alleged that United is the "Plan Administrator" and

---

procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan, and under which there will be a full and fair review of the claim and the adverse benefit determination."

[143] *Houston Home Dialysis, LP v. Blue Cross and Blue Shield of Texas*, Civil Action No. 17-2095, 2018 WL 2562692, at *6 (S.D. Tex. June 4, 2018).

[144] Doc. 41, p. 29.

[145] *See e.g.*, *Allied Ctr. for Special Surgery, Austin, L.L.C., v Unitedhealthcare Ins. Co.*, Civil Action No. 16-1273, 2016 WL 4192059, *2 (S.D.Tex. August 9, 2016)(explaining how the "ERISA Plan is the only proper defendant in a § 503 claim because '[r]emand to the plan administrator for full and fair review is usually the appropriate remedy when the administrator fails to substantially comply with the procedural requirements of ERISA.'"(quotation omitted)); *Houston Home Dialysis, LP*, 2018 WL 2562692, at *6 (Rosenthal, L) (discussing in and out of circuit cases which support position, including, *Jordan v. Tyson Foods, Inc*., 312 Fed. App'x 726, 235 (6th Cir. 2008)("This court has previously held that 'a plan administrator cannot violate § 1133 and thus potentially incur liability under § 1132(c),' because § 1133 imposes requirements for the benefits plan rather than obligations on the plan administrator."(citations omitted); *Wilczynksi v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397 (7th Cir. 1996)("[S]ection 1133, on its face, establishes requirements for plans, not plan administrators)).

ERISA fiduciary.[146]  Accordingly, dismissal of Omega's Section 503 claim is warranted on this on this ground.

### D.  State Law Claims

The Court now turns its attention to Omega's remaining state law breach of contract and negligent misrepresentation claims.  Omega has not alleged any independent basis for federal jurisdiction over these claims.  While district courts have supplemental jurisdiction over state law claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," the court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.[147]  Because the Court has dismissed all of Omega's ERISA claims over which it had original jurisdiction, it declines to exercise supplemental jurisdiction over Omega's state law claims.  Accordingly, United's *Motion* is granted as to Plaintiff's state law breach of contract and negligent misrepresentation claims. These claims shall be dismissed without prejudice.

### IV.    CONCLUSION

For the foregoing reasons, the *Motion to Dismiss* filed by Defendants, United Healthcare Services, Inc. and United Healthcare of Louisiana, Inc. is hereby granted in part, and denied in part.[148]

Accordingly, it is hereby ordered that Omega Hospital, LLC's ERISA claims brought on behalf of patient LL are hereby dismissed without prejudice for lack of standing.

---

[146] *See, e.g.*, Doc. 41, pp. 5, 12, 18, 26, 28, and 30.
[147] *See* 28 U.S.C. § 1367.
[148] Doc. 67.

It is further ordered that Omega Hospital, LLC's claims for benefits brought on behalf of patient SJ under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)(Count I) and for failure to provide full and fair review under ERISA Section 503, 29 U.S.C. § 1133 (Count II) are hereby dismissed with prejudice for failure to state a claim.

It is hereby further ordered that Omega Hospital, LLC's breach of fiduciary claims brought on behalf of patient SJ under ERISA §§ 502(a)(3)(A) and 502(a)(3)(B)(Counts III and IV) are dismissed without prejudice for lack of standing.

It is further ordered that Omega Hospital, LLC's state law claims are hereby dismissed without prejudice.

It is so ordered.

Signed in Baton Rouge, Louisiana, on September 11, 2018.


_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**