# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

OMEGA HOSPITAL, LLC        CIVIL ACTION

VERSUS

UNITED HEALTHCARE SERVICES,    NO. 16-00560-JWD-EWD
INC. AND UNITED HEALTHCARE OF
LOUISIANA, INC.

## RULING

  This matter comes before the Court on Omega Hospital, LLC's ("Omega" or "Plaintiff") motion for reconsideration of the Court's September 11, 2018 ruling on United Healthcare Services, Inc. and United Healthcare of Louisiana, Inc.'s (collectively "United" or "Defendants") motion to dismiss and motion for leave of court to amend its complaint. (Doc. 92). The September 11, 2018 ruling (Doc. 90) on United's motion to dismiss (Doc. 67) dismissed all remaining claims by Omega against United for alleged violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA") and Louisiana state law. United opposes Omega's motion for reconsideration and motion for leave of court to amend. (Doc. 94). Omega filed a reply. (Doc. 99). After carefully considering the law and the parties' arguments, the Court grants Omega's Rule 15(a) motion for leave of court to amend and denies Omega's Rule 59(e) motion for reconsideration.

## I. Relevant Facts and Procedural History

  Omega filed its complaint on August 24, 2016. (Doc. 1). Omega is a hospital and surgical center that treats patients whose healthcare benefit plans are insured and/or administered by United. Omega treats United's insureds on an out-of-network basis, which means that Omega does not have a pre-existing provider contract with United. Omega, as the assignee of a class of

its patients, alleged that United violated ERISA and Louisiana state law in an alleged scheme for reimbursement and recoupment of alleged overpayments made by United. (Doc. 1). United responded with a motion to dismiss under Rule 12(b)(1) and 12(b)(6) on November 1, 2016. (Doc. 11). United's initial motion to dismiss was opposed by Omega (Doc. 20), and oral argument was heard[1] on August 10, 2017. (Doc. 35).

The ruling on United's initial motion to dismiss was issued by Judge Brady on September 22, 2017. (Doc. 37). This Court denied United's motion under Rule 12(b)(1) and found that Omega had standing to proceed with its claims of violation of ERISA and state law. Specifically, the Court found that Omega had sufficiently plead a valid assignment. (Doc. 38 at 4-6). Under Rule 12(b)(6), the Court found that "Omega's Complaint lack[ed] necessary specificity and fail[ed] to provide proper factual support of certain allegations." (Doc. 38 at 6-7). The Court allowed Omega time to "amend its Complaint to allege with specificity the dates of service and claim numbers at issue with respect to the identified patients". (Doc. 38 at 7). United was, in turn, ordered to provide all plan information within a designated time period. Omega was then further ordered to amend its Complaint to "clarify and specify the class it purports to represent". (Doc. 38 at 7). Finally, with regard to Omega's claims pursuant to state law, the Court dismissed the state law claims brought on behalf of ERISA-plan participants. The Court also dismissed the state law claims brought on behalf of non-ERISA plan participants without prejudice subject to Omega's leave to amend those allegations. (Doc. 38 at 9).

On October 20, 2017, Omega amended its Complaint pursuant to the Court's Order. (Doc. 41).

---

[1] Chief Judge Shelly D. Dick was assigned to the instant matter at the time of oral argument and conducted oral argument on August 10, 2017. Chief Judge Dick expressed at oral argument that the Court ordered oral argument because the motion was a "close" call for the Court. (Doc. 46 at 4). She later recused herself from the matter on August 22, 2017, and this matter was re-assigned to Judge James Brady. (Doc. 37).

Following a re-assignment of this matter to Judge deGravelles, United filed its second motion to dismiss. (Doc. 67). United sought dismissal based on the following grounds: (1) Omega lacked standing to bring this case; (2) Omega failed to exhaust administrative remedies; (3) Omega failed to state plausible ERISA claims; (4) the Court lacked supplemental jurisdiction over Omega's state law claims; and (5) alternatively, Omega's state law claims were implausible and the breach of contract claim was preempted by ERISA. (Doc. 67-1). Omega opposed the motion and did not seek leave of court to amend its Complaint a second time. (Doc. 76).

After an analysis of Omega's amended Complaint, the arguments of the parties, and the law, the Court granted United's second motion to dismiss in part and denied it in part. (Doc. 90). The Court found that: (1) United's anti-assignment provisions were invalidated by La. Rev. Stat. § 40:2010, (Doc. 90 at 14), and La. Rev. Stat. § 40:2010 was not preempted by *Gobeille v. Liberty Mutual Ins. Co*., 136 S.Ct. 936 (2016), (Doc. 90 at 18); (2) an assignment may confer both authorized representative and assignee status to a provider, such as Omega, (Doc. 90 at 20); (3) Omega lacked standing to assert any ERISA claims on LL's behalf and those claims were dismissed without prejudice, (Doc. 90 at 22); (4) Omega lacked derivative standing to assert its Section 502(a)(3)(A) breach of fiduciary duty claim seeking prospective relief and Section 502(a)(3)(B) breach of fiduciary duty claim seeking unjust enrichment due to United's failure to comply with the terms of the Plans because the assignment did not contain express reference to fiduciary duty claims or future rights, (Doc. 90 at 27); (5) Omega sufficiently alleged that exhaustion should be excused due to United's failure to provide meaningful access to administrative remedies, (Doc. 90 at 30); (6) Omega's 29 U.S.C. § 1132(A)(1)(B) claim was dismissed because Omega did not plausibly plead that it is entitled to benefits recouped by cross-plan offsetting, (Doc. 90 at 32-33); (7) Omega's Section 503 claim was dismissed because Omega

alleged that United is the "Plan Administrator", not the "Plan", (Doc. 90 at 35-36); and (8) Omega's claims of breach of contract and negligent misrepresentation were dismissed because the Court declined to exercise supplemental jurisdiction over the remaining state law claims. (Doc. 90 at 36).

Omega's current motion requests that the Court reconsider its ruling on the following grounds: (1) Omega inartfully plead the activity engaged in by United and the injury caused by United's "recoupment scheme"; (2) the Court accepted United's version of events which was contrary to Omega's contentions; (3) the United States Supreme Court decision of *Montanile v. Board of Trustees of Nat. Elevator Industry Health Plan,* 136 S.Ct. 651, 193 L.Ed. 2d 556 (2016), vindicates Omega's theory for recovery; and (4) the Court may have erred legally regarding the express assignment of the claim for breach of fiduciary duty. (Doc. 92-1 at 2). Additionally, Omega argues that it amended its Complaint in response to the Court's September 22, 2017 ruling, which included a specific scope of amendment. Omega suggests that because the ruling did not address any issue with Omega's legal theory and did not order Omega to name the assignments from patients whose accounts were used as the vehicle for United to recover the overpayments, Omega did not take the liberty of making such amendments. Therefore, Omega also moves the Court under Rule 15(a) to grant it leave of court to amend the Complaint to correct the pleading deficiencies "identified by the Court". (Doc. 92-1 at 2).

United opposes Omega's motion under Rule 59(e) and under Rule 15(a). (Doc. 94). United argues that *Montanile* has "no bearing" on United's offsetting practices, and offsetting is permissible under ERISA and upheld by the courts. (Doc. 94 at 3-4). United also argues that no one is injured when United recoups overpayments; therefore, Omega's claims are implausible. (Doc. 94 at 4-5). United maintains that Omega has no standing for fiduciary breach claims. (Doc.

4

94 at 5-7). Finally, United opposes Omega's motion to amend its complaint as any amendment would be futile. (Doc. 94 at 7-10).

Omega filed a reply arguing that: (1) United has mischaracterized Omega's claims in order to support United's position that Omega lacks standing. Omega's benefit claim seeks simply to recover benefits once paid on behalf of its representative patients but now taken away through a retroactive benefit redetermination. Omega's assignments provide derivative standing in the same manner that Omega could have pursued if United had issued the retroactive explanation of benefits initially. Omega cites to *Peterson v. Unitedhealth Group, Inc*., 242 F.Supp.3d 834 (D.Minn. Mar. 14, 2017), which is almost identical to the instant matter, but has previously been distinguished by this Court in its September 11, 2018 ruling. (Doc. 99 at 1-2). (2) The Fifth Circuit Court of Appeals, in *Manuel v. Turner Industries Group, L.L.C*., 905 F.3d 859 (5th Cir. 2018), recognized *Montanile* in its decision. *Manuel* suggests that United cannot pursue equitable relief to recoup overpayments absent an ability to trace the overpaid funds to their source. Omega argues that United recouped against Omega's general assets and not the specific traceable funds it allegedly overpaid. Omega urges the Court to reconsider its prior analysis in light of *Montanile*, *Manuel*, and *Estate of Barton v. ADT Sec. Services Pension Plan,* 837 F.3d 1014 (9th Cir. 2016). (Doc. 99 at 3-6). (3) The Court improperly construes 29 U.S.C. § 1133 in finding that claims under this section only apply to the plan, and not to plan administrators. Omega argues that this is contrary to legal authority from the Fifth Circuit Court of Appeals. (Doc. 99 at 8). (4) Omega argues five specific amendments that it is prepared to make that will "easily cure" the remaining defects, and this amendment is "favored in the interest of justice". (Doc. 99 at 7-8 and 10).

## II.     Discussion

### A.     Standard for Motion for Reconsideration under Rule 59(e)

While the Federal Rules of Civil Procedure do not formally recognize the existence of motions for reconsideration (*e.g., Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991)), courts customarily consider such motions under Rule 60(b) or Rule 59(e).  *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991).  Rule 59(e) of the Federal Rules of Civil Procedure allows a party to move to alter or amend a judgment within twenty-eight (28) days of its entry. Fed. R. Civ. Proc. 59(e).

District courts have considerable discretion in deciding whether to grant a Rule 59(e) motion.  *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.,* 6 F.3d 350, 355 (5th Cir. 1993).  The factors to be considered in a Rule 59(e) analysis are: (1) the judgment is based upon a manifest error of fact or law; (2) newly discovered or previously unavailable evidence exists; (3) the initial decision was manifestly unjust; (4) counsel engaged in serious misconduct; and (5) an intervening change in law alters the appropriate outcome.  *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F.Supp.2d 471, 475-76 (M.D. La. 2002) (citing *Metairie Bank & Trust Co. v. Payne*, 2000 WL 979980 (E.D. La. July 17, 2000); *Campbell v. St. Tammany Parish School Bd.*, 1999 WL 777720 (E.D. La. Sept. 29, 1999)).  However, a motion for reconsideration is an extraordinary remedy and should be used sparingly in the interest of finality and conservation of judicial resources.  *Carroll v. Nakatani*, 342 F.3d 943, 945 (9th Cir. 2003).  The court should deny a motion for reconsideration when the movant rehashes legal theories and arguments that were raised or could have been raised before the entry of the judgment.  *See Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004).  A motion for reconsideration does not support old arguments that are reconfigured.  *Resolution Trust Corp. v. Holmes*, 846 F.Supp. 1310, 1316, n.18

(S.D. Tex. 1994). Mere disagreement with a prior ruling does not support a Rule 59(e) motion. *See e.g., Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993).

Courts in the Fifth Circuit are directed to take motions under Rule 59(e) seriously. Two cases note that Rule 59(e) does not place any particular limitations upon the possible grounds for relief. *Ford v. Elsbury*, 32 F.3d 931, 937 (5th Cir. 1994); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990), *cert. denied*, 510 U.S. 859, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(*en banc*). The Court notes the Fifth Circuit's general principle that "the district court must strike a proper balance between two competing interests: 'the need to bring litigation to an end and the need to render just decisions.'" *Ford v. Elsbury*, 32 F.3d at 937 (quoting *Lavespere, supra*).

### B.     Standard for Motion for Leave of Court to Amend under Rule 15(a)

Omega also seeks leave of Court to amend the Complaint a second time under Rule 15(a). "The court should freely give leave when justice so requires". FRCP 15(a)(2). Omega highlights that it has only amended its Complaint one prior time pursuant to the instructions of Judge Brady in the Court's ruling on United's first motion to dismiss. The ruling grants Omega leave of court to amend its complaint a first time to "cure the deficiencies noted by the Court". (Doc. 38 at 90). Omega strictly adhered to the ruling and amended the Complaint solely to "allege with specificity the dates of service and claim numbers at issue with respect to the identified patients" and to "clarify and specify the class it purports to represent". (Doc. 38 at 7). With this one limited amendment in mind, Omega urges the Court to grant it leave to amend the Complaint in whole to address all deficiencies under Rule 15(a).

The Rule 15(a) standard is "more permissive" than the standard of Rule 59(e). *DeGruy v. Wade,* 586 Fed.Appx. 652, 655 (5th Cir. 2014). When a court is faced with a motion under both Rule 59(e) and Rule 15(a), the Fifth Circuit has stated that it is proper to analyze the motion under each rule. *Id.* While Rule 59(e) motions "must clearly establish either a manifest error of law or fact or must present newly discovered evidence," *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003), a motion to amend under Rule 15(a) "permit[s] liberal amendment to facilitate determination of claims on the merits." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). Where a district court has entered a judgment on the pleadings and the plaintiff moves under Rule 59(e) to vacate the judgment and amend the complaint, the court should also analyze the motion under the more liberal Rule 15(a) standard. *Rosenzweig,* 332 F.3d at 864; *Dussouy,* 660 F.2d at 597, n.1; *Jumonville v. Department of Treasury*, 50 F.3d 1033, *2 (5th Cir. 1995) (citing *Southern Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993)).

Although leave to amend under Rule 15(a) is to be freely given, that generous standard is tempered by the necessary power of a district court to manage a case. *See Shivangi v. Dean Witter Reynolds, Inc.*, 825 F.2d 885, 891 (5th Cir. 1987). In deciding whether to grant leave to amend, the district court may consider a variety of factors in exercising its discretion, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment. *Id.* at 891; *DeGruy,* 586 Fed.Appx. at 656.

It is with these principles in mind that the Court addresses Omega's motion for reconsideration and for leave of court to amend its Complaint.

## C.    The Parties' Arguments

There were two general, over-arching issues for Omega on the underlying motion to dismiss: (1) standing; and (2) whether Omega plausibly plead United's "recoupment scheme"[2] and how/whether it injured the Plaintiffs.  Based on the record that was before the Court at the time of ruling on United's motion, the matter was dismissed.  (Doc. 90).  Omega now comes before this Court urging a reconsideration of this ruling because, in general, Omega believes that the Court misunderstood Omega's case as a whole, resulting in an incorrect ruling.  Omega argues that this misunderstanding arose not only from the Court subscribing to United's mischaracterization of the "recoupment scheme", but also due to Omega's "inartful pleading" which Omega admits did not assist the Court in properly considering the motion or the record before it.  (Doc. 92-1 at 2; Doc. 99 at 7).  Omega attempts to better explain its case and allegations, suggesting that clarity will render a more just result. (Doc. 99 at 8).

### 1.    Explanation of the "Recoupment Scheme"

Omega argues that the ruling on the motion to dismiss stemmed from a misunderstanding that Omega alleges a breach of fiduciary duty claim, and, therefore, the customary derivative standing analysis should be applied.  Omega suggests that a proper understanding of its claims should result in a different analysis of standing as well as whether Omega has plausibly plead its claims.

Omega explains that it is United that "unilaterally decides" it has overpaid a patient's claim on a particular plan, called Plan A.  In an effort to recoup the amount paid in error, United offsets

---

[2] Throughout its motion for reconsideration and motion for leave to amend, Omega refers to the process of United overpaying a provider, explanation or lack of explanation of benefits, and offsetting of the overpayment from a different claim in order to recoup the amount of overpayment as United's "recoupment scheme".  The process as a whole has been referred to as "offsetting", "recoupment", "cross-plan offsetting" and "reimbursement" interchangeably by both parties in briefing and other court decisions.  For purposes of consistency and to avoid confusion, the Court refers to the overall process at issue as the "recoupment scheme".

a separate claim from a different patient on a different plan, called Plan B. For example, United should have paid the first patient's claim in the amount of $100 under Plan A. Instead, United paid the first patient's claim in the amount of $200. When United realizes its error, it turns to the claim by the second patient under Plan B for $200 and only pays $100, thereby recouping the $100 that United paid in error under Plan A. However, in this example, if Plan B is an employer self-insured plan, then $100 of its money has been redirected to United without any benefit gained. Another potential problem, suggests Omega, is if Plan A is an employer self-insured fund. In this example, when the $100 is recouped by United, it remains with United and is not returned to the employer fund. In other words, it is the employer's money that funded the overpayment by its administrator, United. Although United attempted to correct its error, the recouped funds are not returned to the original payor, and the full intended benefit is not realized. Because there is a difference between self-insured plans and fully-insured plans, United's blanket "recoupment scheme" does not benefit the beneficiary; Omega argues that it only benefits United. Further, the "injury" is not only the loss of benefits, but also the lack of notice and time to appeal United's explanation of benefits. (Doc. No. 92-1 at 3). This "recoupment scheme" is referred to as "cross-plan offsetting" and well-explained in *Peterson*, 242 F.Supp.3d at 836-41.

Here, Omega is the health care provider and the assignee of the patients' rights. Omega stands in the shoes of the patient/beneficiary. As the common provider in the various benefit claims at issue, Omega purports to stand in the shoes of Plan A patients.[3] United acts as the insurer on fully-insured plans and as the claims administrator for self-insured plans (where the plan sponsor is usually the employer for ERISA-governed plans). United argues that Omega is never

---

[3] Omega acknowledges this Court's previous distinction of *Peterson* in its September 11, 2018 ruling in its reply. (Doc. 99 at 1-3). However, while agrees that *Peterson* involved claims on behalf of Plan B patients and Omega is seeking to bring claims on behalf of Plan A patients, *Peterson* is (1) still instructive, and (2) there is injury on both sides of the offset (Plan A and Plan B participants are harmed). (Doc. 99 at 1-3, n. 1, 3, and 4).

injured or at a loss. United argues Omega is invoicing United for $300 (by extension of the above example) and is being paid $300. (Doc. 94 at 9). United also states, "United then credits the overpaying plan by the amount of recouped funds". (Doc. 94 at 4). United's offset does not injure or "rob" anyone. In fact, United clearly states in opposition to Omega's motion that Omega's argument that funds are never returned to their respective plans is an "outright fabrication". (Doc. 94 at 5). United threatens that it "intends to seek appropriate remedies" under Rule 11 if Omega is permitted leave to amend and Omega alleges such a claim without a good faith basis to do so. (Doc. 94 at 5, n. 4).

Omega disagrees with United. Omega states that its claim is a benefits claim, seeking to recover benefits once paid and then taken away through a retroactive benefit redetermination "with no administrative hearing or notice to the patient or Omega". Omega states that it has derivative standing for these benefits claims, because they are benefits claims, not a fiduciary breach claim. (Doc. 99 at 1-3). Omega maintains that there is "no need" to name the patients for the plans that execute the offsets. Those patients are simply the vehicles that United utilizes to execute its "recoupment scheme". Only United benefits, argues Omega. It is for this reason that Omega only named the Plan A patients as Plaintiffs. Omega argues that this is a Section 502(A)(1)(b) claim for benefits, not for breach of fiduciary duty, which falls under the assignment of benefits already plead. For these reasons, Omega believes that standing has been properly alleged and argued, but it was United's mischaracterization of the claims and the misunderstanding of the Court that applied a standing analysis to a breach of fiduciary claim instead. (Doc. 92-1 at 3-4).

>        2.      *Montanile* and *Manuel*

Despite the fact *Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan* was decided almost eight months before Omega filed its complaint, Omega argues,

for the first time, that *Montanile* "vindicates" its theory of its case, supporting reconsideration. (Doc. 92-1 at 1).  United completely disagrees, stating that *Montanile* "has no bearing" on this matter.  (Doc. 94 at 3).  No party argued *Montanile* on the underlying motion to dismiss, and the Court considers *Montanile* only to determine whether the decision favors reconsideration of United's motion or amendment of the complaint.

In *Montanile*, a drunk driver  collided with Montanile in a motor vehicle accident injuring him.  Montanile was a participant in an employee benefits plan under ERISA.  The benefits plan paid his medical expenses.  Montanile then settled with the drunk driver.  The settlement did not cover all of Montanile's medical expenses.  Since Montanile recovered from a third party at fault, the plan sought reimbursement from Montanile for benefits paid.  Montanile spent the settlement funds on nontraceable items.  The plan attempted reimbursement from Montanile's general assets. The United States Supreme Court held that the plan could not attach Montanile's general assets because the Section 502 claim was one for "equitable relief", not legal relief.  *Montanile*, 136 S.Ct. at 655.

The Supreme Court explained that the express language of Section 502 of ERISA authorizes fiduciaries to bring civil suits to obtain "other appropriate equitable relief".  Whether the remedy that a plaintiff seeks is legal or equitable depends on "(1) the basis for the plaintiff's claim and (2) the nature of the underlying remedies sought."  *Montanile*, 136 S.Ct. at 657 (citing *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356, 363, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006)).  The Supreme Court continued by explaining that equitable remedies are "directed against some specific thing … rather than a right to recover a sum of money generally out of the defendant's assets".  Equitable liens are enforceable only against a "specifically identified fund". If a fund is dissipated on "nontraceable items, that complete dissipation eliminated the lien", and

the plaintiff cannot "attach the defendant's general assets instead". *Montanile*, 136 S.Ct. at 658-59 (internal citations omitted).

Applying *Montanile* to this matter, Omega argues that *Montanile* "limits and prohibits" United from offsetting self-insured plan claims and converting them into United's fully-insured accounts. Omega equates this with recouping monies from providers' general assets. (Doc. 92-1 at 4). Further, Omega argues that it is "incumbent upon United" to establish how the pursuit of recoupment fits within the parameters of "equitable relief" as defined in *Montanile*. Omega argues that since United unilaterally instituted the "recoupment scheme", then it is United's burden to prove it meets the *Montanile* standard, not Omega. (Doc. 92-1 at 4-5 and 8).

United simply argues that *Montanile* has "no bearing" on whether offsetting is permissible without additional explanation. (Doc. 94 at 3). United further argues that it is Omega who bears the burden because it is the party bringing this suit. (Doc. 94 at 3). United does not specifically address the reasoning of *Montanile* and how it does or does not apply to the "recoupment scheme" or whether the reasoning of *Montanile* would change the outcome of the string of cases to which United cites as examples of "myriad courts [that] have upheld offsetting". (Doc. 94 at 3-4).

The ruling which Omega moves the Court to reconsider was issued on September 11, 2018. (Doc. 90). On October 1, 2018, the Fifth Circuit Court of Appeals decided *Manuel v. Turner Industries Group, LLC*. Omega filed its motion for reconsideration only eight days later. (Doc. 99). In reply to United's opposition, Omega raised *Manuel* to further support its *Montanile* argument. (Doc. 99 at 3-6).

In *Manuel*, Michael Manuel was employed by Turner Industries and participated in a disability plan sponsored by his employer and insured by Prudential Insurance Company. Manuel claimed that he became unable to work and made a claim under the disability plan. His claim was

13

denied because Prudential found that he had a pre-existing condition. Additionally, Prudential determined that it paid disability benefits to Manuel in error and demanded reimbursement. *Manuel*, 905 F.3d at 862-63. This Court granted summary judgment to Prudential on its counterclaim for reimbursement of disability benefits paid to Manuel in error. *Manuel v. Turner Industries Group, LLC,* No. 14-599, 2016 WL 5699714 (M.D. La. Sept. 28, 2016).

On appeal, the Fifth Circuit noted that "the district court relied entirely on *Sereboff v. Mid Atlantic Medical Services*" (citation omitted), and it "ignored the more recent *Montanile v. Board of Trustees* … until Manuel's motion for reconsideration/new trial but distinguished the facts and continued to rely on *Sereboff*". *Manuel*, 905 F.3d at 873. After reviewing the *Montanile* decision and the basis of the district court's distinction of it, the Fifth Circuit stated, "The Supreme Court's conclusion that '*all* types of equitable liens must be enforced against a specifically identified fund in the defendant's possession' applies to the 'equitable lien' on the mistakenly paid [short term disability] benefits Prudential claims to maintain". *Manuel*, 905 F.3d at 874 (citing *Montanile*, 136 S.Ct. at 659). The Fifth Circuit then reversed this Court's grant of summary judgment to Prudential and remanded the matter to "determine whether Manuel kept his [disability] benefits separate from his general assets or dissipated the entire amount on nontraceable assets". *Manuel*, 905 F.3d at 874 (citing *Montanile,* 136 S.Ct. at 662).

Omega argues that *Manuel*, applying the reasoning of *Montanile*, clearly requires United to "execute recoupment against specific traceable funds and demonstrate their entitlement to overpayment". (Doc. 99 at 5). Omega relies upon *Estate of Barton v. ADT Sec. Services Pension Plan,* for the same argument. Omega further points out that the cases cited by United pre-date *Montanile*, *Manuel*, and *Estate of Barton*, and, therefore, should not persuade this Court. Rather,

Omega urges the Court to reconsider this matter in line with the analysis of the courts in *Montanile* and *Manuel*. (Doc. 99 at 5-6).

The Court notes that Omega argued *Manuel* in its reply memorandum; therefore, United has not had an opportunity to specifically address *Manuel* and its relevance to this matter.

### 3. Amendment of the Complaint

Against the backdrop of the more detailed explanation of United's "recoupment scheme", Omega asks the Court to reconsider the facts and law in order to "strike the proper balance" and seeks leave of court to amend its complaint to respond to "several easily remedied pleading inadequacies". (Doc. 92-1 at 6). Specifically, Omega argues the following "examples" of why the Court's ruling should be reconsidered and leave should be granted to cure the "perceived deficiencies":

*Example No. 1 – The assignment of patient "LL".* Omega suggests that the Court "accepted" United's position that it did not have an assignment for patient "LL" and dismissed the claims for lack of jurisdiction. Omega attaches the assignment for patient "LL" to its motion for reconsideration but argues that it should not be necessary because an assignment from the "offset end" is irrelevant for the reasons set forth above. Despite this, Omega argues that it can "easily" amend the complaint to address the deficiencies that have arisen and seeks leave of court to do so; Omega argues that to dismiss patient "LL"'s claims based on an underlying misunderstanding when Omega can easily correct the deficiency is an injustice. (Doc. 92-1 at 6).

*Example No. 2 – No express assignment for breach of fiduciary duty.* Both Omega and United advance the same arguments on the issue of assignment of a breach of fiduciary duty claim as previously offered in briefing the second motion to dismiss. Omega seeks reconsideration of this issue in light of the more detailed explanation of how the "recoupment scheme" operates.

Omega maintains that its claims are sufficiently plead to show proper assignment of claims and standing in this matter (*i.e.*, Omega brings a claim for benefits, not a fiduciary breach claim). However, "in the event this Court finds otherwise", Omega states that the "perceived deficiency" can be "easily remedied" by amending the complaint. Omega represents that it can show assignment of the right to bring a breach of fiduciary duty claim. (Doc. 92-1 at 8). While this is a showing that Omega could have made prior to this Court's ruling, Omega did not make that showing because it did not agree with the necessity or relevance. (Doc. 92-1 at 6-8).

*Example No. 3 – The plausibility of full and fair review.* The claim of full and fair review was "challenging" for Omega to address because, it argues, United issued Explanations of Benefits ("EOB") *en masse*. Omega attaches an example of such an EOB to its motion for reconsideration. The scope of the EOB includes numerous patients combined together, and Omega is not able to discern at this stage of the proceedings which patients and which plans are implicated. Omega suggests that only discovery will enlighten this inquiry. (Doc. 92-1 at 8-9).

Because the EOB is presented in this manner, Omega argues that patients are not on notice and given the proper opportunity to appeal any benefits decision. Omega argues that the burden should then shift to United, as the entity that institutes the recoupment process, to demonstrate that it has the right to seek recoupment. Omega argues that this "right" is one for equitable relief (recouping overpayment of benefits); therefore, United should have the burden of addressing how it meets the *Montanile* standard. Omega argues that it is "backwards" for Omega to bear the burden of making this showing, especially before discovery. (*Id.*)

In response to United's opposition, Omega agrees that it has inartfully plead its claims thus far, that it was restricted in the scope of its amendment after the first motion to dismiss, and it

suggests that is explanation in its motion better informs how it would plead the injury and claims if granted leave to do so.  (*Id*.)

United opposes a second amendment to the complaint because (1) the proposed amendment is not an amendment, but a new case; and (2) the proposed amendment would be futile.  (Doc. 94 at 7).  United first argues that Omega seeks to amend to bring suit on behalf of "entirely different patients" regarding different "benefit payments", which is a new case.  (Doc. 94 at 7-8).  In support, United highlights that this Court "determined that Omega lacked standing to pursue those claims, as it had not identified any injury that these plan participants suffered, and its assignment forms did not cover breach of fiduciary duty claims".  (Doc. 94 at 8).  United states that Omega seeks to amend its complaint "yet again" to bring "different claims" relating to "different benefit payments".  (*Id*.)  United does not address these points in light of Omega's enhanced explanation of the "recoupment scheme" or *Montanile*.  Also, United does not elaborate as to how the amendment completely changes Omega's case.

United argues that despite the amendment, Omega's claims will "fail on a motion to dismiss".  United argues that this is because Omega still has not shown an injury.  United argues that when a provider is overpaid, the funds are in its possession.  The overpayment is reallocated to pay newly submitted claims.  Nothing is "underpaid" because the "provider already possesses the funds used to pay the offset".  United concludes, "To suggest that this practice injures plan participants whose claims were paid in whole or in part by reallocating overpaid amounts is illogical and futile".  (Doc. 94 at 9).  United does not address how self-insured plans versus fully-insured plans affects this example, if at all, or how its argument here agrees with the findings involving United's "cross-plan offsetting" in *Peterson*.

United characterizes Omega's argument as "attacking United's method of recovering overpayments, without regard to Omega's legal entitlement to the offset funds". United suggests that Omega attacks the method because United's "recoupment scheme" benefits plans and participants, not the "discontented provider". (Doc. 94 at 9).

The proposed amendment by Omega includes: (1) creating a sub-class for Louisiana providers with properly crafted assignments to evidence express and knowing assignments, (Doc. 99 at 7); (2) addressing the assignment of the right to pursue breach of fiduciary duty claims by at least one patient/participant and EOBs with overpayment reduction details to support the plausibility of Omega's claims, (Doc. 99 at 7); (3) identifying patients "VM" and "LD" as exemplary members of ERISA "B" Plans "as directed by the Court", (Doc. 99 at 8); (4) naming "GM" as the exemplar for the non-ERISA "B" Plans "as directed by the Court", (Doc. 99 at 8); and (5) naming defendants "B" Plan sponsors Ernest N. Morial Convention Center, Allstate Insurance Company, and the City of Kenner. (Doc. 99 at 8). Omega concludes that this Court's ruling that claims under Section 1133 must be brought against the plan itself is not a position followed by the Fifth Circuit and specifically rejected in *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 391 (5th Cir. 2006). (Doc. 99 at 9-10).

### D.    Analysis

As set forth above, the factors to be considered in a Rule 59(e) analysis are: (1) the judgment is based upon a manifest error of fact or law; (2) newly discovered or previously unavailable evidence exists; (3) the initial decision was manifestly unjust; (4) counsel engaged in serious misconduct; and (5) an intervening change in law alters the appropriate outcome. *Livingston Downs Racing Ass'n, Inc*, 259 F.Supp.2d at 475-76. Further, the Court is mindful that reconsideration is an "extraordinary" remedy, applied sparingly, and should be exercised in pursuit

of the balance between bringing litigation to an end and achieving a just result. *Carroll*, 342 F.3d at 945; *Ford v. Elsbury*, 32 F.3d at 937.

Here, Omega admits that it has "inartfully" plead its case and that it likely has not shown manifest error of fact or law. (Doc. 92-1 at 2; Doc. 99 at 7). However, "inartful pleading" is not valid grounds for reconsideration. Omega conveys that it believes that the wrong result was reached in this Court's ruling, arising out of a mischaracterization of the facts and a misunderstanding of the complicated scenario at hand. *See, e.g., Eckhardt v. Qualitest Pharmaceuticals, Inc*., 889 F.Supp.2d 901 (S.D. Tex. Aug. 9, 2012)(where the plaintiffs disagreed with the court's ruling but the court was not convinced that it committed a manifest error of law or fact; "'Manifest error' is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'")(citing *Guy v. Crown Equip. Corp*., 394 F.3d 320, 325 (5th Cir. 2004)). Omega offers "new" evidence to support its motion, an assignment for "LL" and Explanation of Benefits, but Omega does not show that these items were previously unavailable. *See, e.g., Gantt v. United States Dept. of Army*, 48 Fed.Appx. 918 (5th Cir. 2002)("The unexcused failure to present evidence which is available at the time a motion is under consideration is a legitimate reason for denying a motion to reconsider.")(citing *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co*., 174 F.3d 653, 658, n. 1(5th Cir. 1999); *Russ v. International Paper Co*., 943 F.2d 589 (5th Cir. 1991)). While Omega intimates that it believes the Court's ruling to be unjust, it does not put forth a showing that it was "manifestly" unjust. *See, e.g., In re Ruben O Montelongo*, 2009 WL 5205350, *1 (U.S. Bank. Ct., W.D. Tex. Dec. 23, 2009)("Manifest injustice might be shown by either an egregious error of fact or a serious misstatement of the law."). In fact, Omega's motion exhibits an understanding as to how the Court came to the conclusion that it did and takes some accountability for contributing to that outcome. (Doc. 99 at 7; Doc. 92-1 at 1-2).

Omega does not argue that any counsel engaged in serious misconduct or that there was an intervening change in the law that alters the outcome. Therefore, none of the factors in considering a motion for reconsideration have been met which is grounds for denying the motion. *See, Templet v. HydroChem, Inc.,* 367 F.3d 473 (5th Cir. 2004); *Riddle v. Dyncorp International Inc.,* 773 F.Supp.2d 647 (N.D. Tex. Jan. 14, 2011)).

Additionally, were this Court to reconsider the underlying motion to dismiss on the current record without amendment, it would likely be an exercise in futility. *See Ferraro v. Liberty Mut. Fir Ins. Co.,* 796 F.3d 529, 534 (5th Cir. 2015)(A motion to reconsider under Rule 59(e) should be granted only if the facts discovered are of such a nature that they would probably change the outcome.). With this in mind, the Court turns to consideration of Omega's request to amend its complaint a second time.

In the Fifth Circuit, when a district court dismisses the complaint, but does not terminate the action altogether, the plaintiff may amend under Rule 15(a) with permission of the district court. *See Whitaker v. City of Houston,* 963 F.2d 831, 835 (5th Cir.1992). When a district court dismisses an action and enters a final judgment, however, a plaintiff may request leave to amend only by either appealing the judgment, or seeking to alter or reopen the judgment under Rule 59 or 60. *See Dussouy,* 660 F.2d at 597 n. 1; *see also* 3 James Wm. Moore et al., Moore's Federal Practice § 15.12[2] (3d ed.2003); 6 Charles Alan Wright, et al., Federal Practice and Procedure § 1489 (2d ed. 1990) ("Most courts ... have held that once a judgment is entered the filing of an amendment cannot be allowed until the judgment is set aside or vacated under Rule 59 or Rule 60.").

In this case, the district court dismissed all claims when ruling on United's second motion to dismiss. Nevertheless, the Fifth Circuit has held that, under these circumstances, the considerations for a Rule 59(e) motion are governed by Rule 15(a):

> Where judgment has been entered on the pleadings, a holding that the trial court should have permitted amendment necessarily implies that judgment on the pleadings was inappropriate and that therefore the motion to vacate should have been granted. Thus the disposition of the plaintiff's motion to vacate under rule 59(e) should be governed by the same considerations controlling the exercise of discretion under rule 15(a).

*Dussouy,* 660 F.2d at 597 n. 1. Following *Dussouy,* the Court analyzes Omega's motion in light of the limited discretion of Rule 15(a).

United argues that allowing Omega to amend its complaint a second time would be an exercise in futility and that Omega's claims would not survive a motion to dismiss post-amendment. (Doc. 94 at 7-10). With regard to this argument, amendment would be futile if it could not withstand a 12(b)(6) motion to dismiss. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletics Ass'n,* 751 F.3d 368, 378 (5th Cir. 2014)(citing *Briggs v. Miss.,* 331 F.3d 499, 508 (5th Cir. 2003)). To this point, United argues that this Court "ruled that patients whose overpayments were returned to their plans suffered no injury as a result of their funds being returned and that Omega's assignments do not convey standing to bring breach of fiduciary duty claims". (Doc. 94 at 7 and 8) (citing Doc. 90 at 32-33). Because Omega "has not and can not identify any injury inuring to the patients whose plans executed offsets", United argues that Omega's claims will not survive a Rule 12(b)(6) motion and leave to amend should be denied. (Doc. 94 at 8-9).

In this Court's September 11, 2018, ruling, the Court found that patient "LL" lacked standing because an assignment could not be inferred, and patient "LL"'s claims were dismissed for lack of jurisdiction. (Doc. 90 at 22). Omega attached a copy of the patient "LL" assignment to its current motion, (Doc. 92-2), and argues that, if granted leave to amend its complaint, Omega

will assert the assignment of patient "LL", "effectively mooting United's" arguments. (Doc. 99 at 7). Therefore, it appears that Omega proposes an amendment that is not frivolous and could cure the standing defect. *See Foman v. Davis*, 371 U.S. 178, 182 (1962)(a motion to amend a counterclaim cannot be granted if the proposed amendment does not remedy the deficiencies in their previous pleading); *Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Georgia, Inc*., 995 F.Supp.2d 587, 607 (N.D. Tex. Feb. 3, 2014).

This Court also found that Omega lacked derivative standing to assert breach of fiduciary duty claims under Section 502(a)(3)(A) and Section 502(a)(3)(B), and these claims were dismissed. (Doc. 90 at 27). Omega's position is that its claims are not breach of fiduciary duty claims, but are claims for benefits, for which Omega has shown evidence of standing to bring those claims. (Doc. 92-1 at 6-8). Regardless of this position, Omega asserts that the "perceived deficiency" can be "easily remedied by permitting Omega leave to substitute the necessary assignments and amending the Complaint to create a sub-class for Louisiana providers with properly crafted assignments". (Doc. 92-1 at 8). Further, Omega states that it will submit an "Explanation of Benefits with overpayment reduction details" supporting this position and "refuting United's contention [that] Omega's claims is 'unsupported and implausible'". (Doc. 99 at 7). Again, it appears that Omega proposes an amendment that will cure the purported defect. *Id.*

Turning to the issue of plausibly pleading an injury to the plaintiffs sufficient to withstand a Rule 12(b)(6) motion, this Court stated in its ruling, "Section 502(a)(1)(B) of ERISA authorizes a suit by a plan participant or beneficiary 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.' 29 U.S.C. § 1132(a)(1)(B). 'If a participant or beneficiary believes

that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of these benefits.' *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)(quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  Here, Omega seeks to recover all amounts (1) Omega and the ERISA class members paid to United in response to recoupment demands; and (2) that United allegedly 'unilaterally withheld' as part of its alleged recoupment and/or cross-plan offsets."  (Doc. 90 at 30-31).  This Court then found that "Omega's claim must fail because it has not plausibly plead that it is entitled to the benefits at issue – those recouped by cross-plan offsetting."  (Doc. 90 at 32).  Specifically, this Court found that "Omega has failed to allege that United directly recouped any overpayments from the ERISA Plans of SJ or LL as a result of the unilateral post-payment audits ….  Critically, the First Amended Complaint alleges that the overpayments pertaining to these three Plans were recouped by 'reducing payment for services rendered by Omega to unrelated patient accounts, none of which patient accounts and services were covered under the same United Group plan' as SJ, LL, or DB."  (Doc. 90 at 32).

Omega addresses this Court's finding in its motion.  As summarized and discussed above, Omega contends that it has "inartfully" plead its claims, that United has mis-characterized its claims and arguments, that it discerns a misunderstanding of its claims by the Court as a result both Omega's pleading and United's mischaracterization, and that it seeks leave of court to endeavor to better plead its claims.  (Doc. 92-1 at 1-5 and 8-9).  Omega sets forth in detail why it is limited pre-discovery in plausibly pleading which particular plans are implicated in the "recoupment scheme" due to the nature of the Explanation of Benefits issued by United.  Omega contends that it is prepared to more particularly plead these facts and claims, but cautions that it is only with the benefit of discovery that a specific pleading of plans can be made.  (Doc. 92-1 at 8-9).  Omega further argues that "justice demands that Plaintiff be given the opportunity to set the

record straight via amendment, both as to the available evidence to support standing and by restating in its own words – and not the words of its adversary – the nature of the substantive claims being asserted in this case, and the reasons why it is well-supported. Without addressing these issues, this Court condemns this case to premature dismissal and denies Plaintiff a proper opportunity to be heard where sufficient evidence and legal precedent fully supports its claims." (Doc. 99 at 8).

This Court finds merit in Omega's argument. The additional discussion and explanation of this complex recoupment process has enhanced the Court's understanding. The Court finds that it may have prematurely disposed of Omega's case based on an undeveloped record that would have benefitted from some limited discovery and a more artfully plead complaint of a very complicated scenario. In considering Omega's request to amend its complaint a second time and United's opposition to same, the Court revisited *Peterson v. UnitedHealth Group Inc.*, 242 F.Supp.3d 834 (D.Minn. Mar. 14, 2017), which both parties addressed in briefing the underlying motion to dismiss, in briefing the subject motion, and which this Court distinguished in its September 11, 2018, ruling. *Peterson* represents a virtually identical matter to the one at hand. There, health care providers brought an action on behalf of their patients as assignees and authorized representatives against United as the administrator of health insurance plans. The *Peterson* plaintiffs alleged that United's practice of cross-plan offsetting resulted in wrongfully failing to pay them and other providers in violation of ERISA. The March 14, 2017, decision cited by both Omega and United in this matter involved cross-motions for partial summary judgment. The plaintiff/provider's motion was granted, and United's motion was denied. The Eighth Circuit Court of Appeals affirmed this ruling on January 15, 2019. *Peterson v. UnitedHealth Group Inc.*, 913 F.3d 769 (8th Cir. Jan. 15, 2019).

Of interest to this Court at this juncture of this matter is the detailed description of the United "recoupment scheme" or "cross-plan offsetting" as described in the District Court of Minnesota's March 2017 decision. *Peterson*, 242 F.Supp.3d at 836-42. The United "cross-plan offsetting" mechanism in *Peterson* appears identical to that described, or attempted to be explained, by Omega in this matter. Interestingly, prior to the cross motions for summary judgment, the Court had previously entertained motions to dismiss, *Peterson v. Unitedhealth Group, Inc.*, 2019 WL 1578750, *2 (D.Minn. Apr. 12, 2019); allowed an amendment of the complaint, *id.*; issued a pretrial scheduling order that allowed for two months of discovery pre-motions; ordered the parties to identify the "threshold issues" for the first phase of the matter; and set a dispositive motion deadline for the first round of motions. *Id.* at *4.

Since the March 2017 ruling on the cross-motions for summary judgment, the *Peterson* court has since entertained motions for leave of court to amend the complaint a second time. *Peterson v. UnitedHealth Group, Inc.*, 2019 WL 1578750 (D.Minn. 4/12/2019). Therefore, after scheduled phases of discovery, prior amendments, and prior motions for summary judgment, the *Peterson* court is still striving to assist the parties in "cleaning-up" the complaint to better frame the classes represented and the allegations brought by the providers as assignees and representatives. *Peterson*, at *1. The *Peterson* United defendants did not oppose the second amendment based on these reasons and for these purposes. Similar to the matter presently before this Court, the *Peterson* plaintiffs had once already amended its complaint and had been met with two prior motions to dismiss. *Peterson,* at *2. In its April 12, 2019, ruling, the *Peterson* court granted the amendment on the unopposed grounds and denied the plaintiffs' motion to amend on the opposed grounds (adding new claims known at inception of matter) based on undue delay and prejudice to the United defendants. *Peterson,* at *11.

At the heart of *Peterson*: (1) the court was presented with a "very complicated" matter without the benefit of controlling authority, *Peterson*, 242 F.Supp.3d at 836-37; and (2) an early determination and identification of all plans, plan terms, and patients implicated was necessary. The *Peterson* court had the benefit of charts of the identified plans and patients implicated prior to engaging in consideration of the claims. *Peterson*, 242 F.supp.3d at 841. This Court makes mention of the developments in *Peterson* due to the similarities in the two matters. In both, there is evidence of a complicated system that "takes a little explaining", *Peterson*, 242 F.Supp.3d at 837, and the expressed need for discovery to accurately identify the plans and participants at issue. (Doc. 92-1 at 8-9) (This Court notes that the need to properly identify the plans and participants at issue was at issue in United's first motion to dismiss and the first amendment to the complaint. It seems that this was not accomplished; however, this is unclear.). The discovery in *Peterson*, scheduled in phases, allowed the parties and the court to identify the Plan A groups and the Plan B groups as well as the language of those plans and whether the cross-plan offsetting was authorized or not. *Peterson*, 242 F.Supp.3d at 839-842. Here, this Court is presented with a similar scenario but without the development and organization of the plans and patients implicated. This matter has not moved beyond the Rule 12 motion to dismiss stage and into discovery. Further, as set forth above, the timeline for Omega's sought amendment is much shorter than in *Peterson*.

As set forth above, this Court has considered the *Montanile* and *Manuel* decisions as well as Omega's arguments regarding how these decisions "vindicate" its theory of the case. The Court is also mindful that United has not had sufficient opportunity to address Omega's pleading of the case in light of *Manuel*. The Court must consider whether *Manuel* will have any effect on Omega's claims considering it was decided after this Court's September 11, 2018, ruling.

The Fifth Circuit in *Manuel* reversed summary judgment in favor of the insurer and remanded the claim to this Court to determine whether benefits remained separate from general assets or were dissipated on nontraceable assets. This is what Omega seems to be arguing, in part, in the matter presently before the Court – that United's process of recouping funds across different types of plans may be recovering from "general assets" what should be recovered only from "traceable assets" or a particular designated fund. This seems compatible with the reasoning of *Peterson* that finds error in the recoupment of funds across different types of plans without notice, time to appeal, or benefit gained. While it is not proper for the Court to consider the merits of Omega's claims at this time, the Court is persuaded that an amendment will not be futile and is in the interest of reaching a just result. The Court is encouraged that a better pleading of the facts and claims considered in light of *Peterson*, *Montanile* and *Manuel* may survive a Rule 12(b)(6) motion. The Court can ascertain no obstacle to granting Omega leave to amend its complaint a second time to establish standing, name additional parties if necessary, and to better state the claims that it *originally* asserted. The Court will not attempt to divine which classes or sub-classes of plan participant patients/beneficiaries should be named or how Omega may attempt to better plead its claims should it be granted leave to do so, but a review of Omega's proposed amendments and further explanation of its claims suggests that Omega may be able to assert claims that may withstand a Rule 12 challenge.

Additionally, the Court does not perceive that there has been unreasonable delay or that prejudice to United will result by a second amendment. Here, in response to United's first motion to dismiss, Omega requested leave of court to amend the complaint and address any identified deficiencies. In this Court's September 22, 2017, ruling, the Court granted leave to amend with specific guidelines for same. (Doc. 38 at 7 and 9). Omega promptly amended the Complaint on

Oct. 20, 2017, and did so in strict compliance with the Court's limitations. The second motion to dismiss was filed on January 11, 2018, which Omega opposed on February 6, 2018. Omega did not seek leave of court at that time to amend the complaint a second time. The ruling was issued on September 11, 2018, and Omega urged a motion for reconsideration of the ruling and to amend its complaint on Oct. 9, 2018. While Omega could have sought an amendment in February 2018 when it opposed the second motion to dismiss, Omega seems to suggest that it was not until it reviewed the detailed September 11, 2018, ruling, that it gleaned a misunderstanding of its case and deemed a second amendment was warranted and would be helpful to the Court. While the Court is still unclear as to why Omega did not earlier seek leave of court to amend, there was certainly minimal delay between the ruling and this request to amend and the Court is persuaded that it would be in the interest of justice to allow an amendment.

The record before the Court does not present a showing of undue delay, bad faith, or dilatory motive. No party is suggesting that such a motive is driving Omega's Rule 15(a) request. The record also does not reflect Omega's repeated failures to cure deficiencies by amendments previously allowed. In fact, there has only been one prior amendment to the Complaint, which was granted in limited scope, and Omega amended the Complaint within the scope defined by the Court and without undue delay. There have not been repeated requests for amendments, nor any failures to cure deficiencies in the past. (By contrast, *see Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563 (5th Cir. 2003), where a Rule 15(a) motion, urged in conjunction with a Rule 59(e) motion, was denied due, in large part, to the fact that the plaintiffs were seeking a fourth amendment to the complaint after a one-year delay.)

United does not argue any "undue prejudice" in response to the request for an amendment; rather, United argues that a second amendment will only be futile and should, therefore, not be granted.

Considering the foregoing, the Court grants leave of court to Omega to amend its complaint a second time. In doing so, the Court does not place restrictions on the amendment or specific instructions as to the scope of the amendment; however, the Court reminds Omega of Rule 11. Omega should be thoughtful of not only the good faith grounds of its amendment, but also judicial economy. If Omega does not believe that it can amend in line with Rule 11, it is incumbent upon Omega to admit same and avoid a waste of judicial resources.

Additionally, the Court finds that it would be helpful to all parties as well as the Court to conduct a status conference before Omega amends its complaint to discuss the scope of limited discovery, the identification all plans and plan participants implicated, and a timeframe for limited discovery and amendment of the complaint. An Order will be issued noticing a date and time for a pre-amendment status conference.

## III.     Conclusion

Accordingly, **IT IS ORDERED** that Plaintiff's motion for reconsideration (Doc. 92) is **DENIED**. **IT IS FURTHER ORDERED** that Plaintiff's motion for leave of court to amend its complaint (Doc. 92) is **GRANTED**.

**IT IS FURTHER ORDERED** that all counsel participate in a pre-amendment status conference. The Court will issue an Order noticing a status conference to assess the scope of

limited discovery related to plans and plan participants implicated by Omega's claims and a timeframe for this limited discovery and a second amendment to the complaint.

IT IS SO ORDERED.

Signed in Baton Rouge, Louisiana, on _____April 29, 2019_____.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**