UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **OMEGA HOSPITAL, LLC** | * | **CIVIL ACTION NO.: 16-CV-0560** |
| **Plaintiff** | * | |
| | * | |
| **VERSUS** | * | **JUDGE JOHN W. DEGRAVELLES** |
| | * | |
| **UNITED HEALTHCARE SERVICES,** | * | |
| **INC. and UNITED HEALTHCARE OF** | * | **MAG. JUDGE ERIN WILDER-DOOMES** |
| **LOUISIANA, INC.** | * | |
| **Defendants** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**MEMORANDUM IN OPPOSITION TO
<u>DEFENDANTS' MOTION TO DISMISS</u>**

# Table of Contents

TABLE OF AUTHORITIES                                                                                    ii

**INTRODUCTION**                                                                                       **1**

**I.     United's Motion to Strike should be denied.**                                                 **3**

**II.    Omega has standing to pursue its claims**                                                     **4**

   A.    Omega obtained valid assignments                                                4

   B.    Omega's Assignment is facially valid.                                           7

   C.    United is estopped from enforcing the anti-assignment provision                 9

   D.    Omega has standing to seek injunctive and declaratory relief.                  14

**III.   Omega's claims are plausible.**                                                               **17**

   A.    United mischaracterizes Omega's Section 502(a)(1)(B) claim.                     17

   B.    Omega Plausibly Alleges an ERISA Violation                                      17

   C.    Omega's state law breach of contract claim is not preempted by ERISA.          21

      1.    Omega is entitled to assert a declaratory judgment action and to seek an injunction prohibiting further violation of ERISA                                                 22

      2.    The breach of contract claim is adequately plead and is not preempted by ERISA.    22

**IV.   Jury Trial**                                                                                   **25**

## Table of Authorities

**Cases**

*Augustus v. Board of Pub. Instruction of Escambia County*,
    306 F.2d 862 (5th Cir. 1962) ................................................................. 4

*Bd. of Miss. Levee Comm'rs v. United States EPA*,
    674 F.3d 409 (5th Cir. 2012) ............................................................... 10

*Brown & Williamson Tobacco Corp. v. United States*,
    201 F.2d 819 (5th Cir. 1953) ............................................................... 4

*Center for Restorative Breast Surgery, LLC v. Humana Health Benefit Plan of Louisiana, Inc.*,
    No. 10-4346, 2011 U.S. Dist. LEXIS 36709  (E.D. La. March 22, 2011) ........... 23

*Chase Med., LP v. CHF Techs., Inc.*,
    No. 04-2570, 2005 U.S. Dist. LEXIS 13731 (N.D. Tex. July 11, 2005) .............. 3

*CIGNA Corp. v. Amara*,
    563 U.S. 421 (2011) ........................................................................ 2

*Cousin v. Small*,
    No. 00-0069, 2000 WL 1100384 (E.D. La. Aug. 4, 2000) ......................... 3

*Crescent City Surgical Ctr. v. Cigna Health & Life Ins. Co.*,
    No. 18-11385, 2020 U.S. Dist. LEXIS 54556 (E.D. La.  March 30, 2020) ......23, 25

*Crosby v. La. Health Serv. & Indem. Co.*,
    647 F.3d 258 (5th Cir. 2011) ............................................................... 17

*Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*,
    938 F.3d 246 (5th Cir. 2019) ............................................................... 9

*Encompass Office Solutions, Inc. v. Conn. Gen. Life Ins. Co.*,
    No. 11-12487, 2017 U. S. Dist LEXIS 120212 (N.D. Tex. July 31, 2017) .......... 5, 6, 12

*Encompass Office Solutions, Inc. v. La. Health Serv. & Indem. Co.*,
    No. 11-02487, 2017 U.S. Dist. LEXIS 120212  (N.D. Tex. July 31, 2017) .......... 11

*Fla. St. Holdings, LLC v. U.S. Bank Nat'l. Ass'n.*,
    No. 15-0714, 2016 U.S Dist. LEXIS 35624 (M.D. La. March 18, 2016) ........... 5

*Gonzalez v. Denning*,
    394 F.3d 388 (5th Cir. 2004) ............................................................... 5

*Grand Parkway Surgery Ctr., LLC v. Health Care Serv. Co.*,
    No. 15-0297, 2015 U.S. Dist. LEXIS 77373 (S.D. Tex. June 16, 2015) ........... 2

*Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*,
  426 F.3d 330 (5th Cir. 2005) ......................................................................... 5, 6

*Hermann Hospital v. MEBA Medical & Benefits Plan*,
  959 F.2d 569 (5th Cir. 1992) ...................................................................... 10, 11

*Hose v. Younger, No.*
  No. 03-1046 (La.App. 1 Cir. 4/2/04), 878 So. 2d 548 ........................................ 5

*Houston Home Dialysis v. Blue Cross & Blue Shield of Tex.*,
  No. 17-2095, 2018 U.S. Dist. LEXIS 180916 (S.D. Tex. Oct. 22, 2018) ............... 11

*Houston Home Dialysis v. Blue Cross Blue Shield of Texas*
  No. 17-2095, 2018 U.S. Dist. LEXIS 180916 (S.D. Tex. Oct. 22, 2018) ............... 14

*IBEW-NECA Southwestern Health Benefit Fund v. Gurule*,
  337 F. Supp. 2d 845 (N.D. Tex. 2004) .............................................................. 15

*Infoneuro Grp. v. Aetna Life Ins. Co.*,
  2019 U.S. Dist. LEXIS 140401(C.D. CA May 13, 2019) ..................................... 8

*Koehler v. Aetna Health Inc.*,
  683 F.3d 182 (5th Cir. 2012) ........................................................................... 2

*La. Health Serv. & Indem. Co. v. Rapides Parish Healthcare Sys.*,
  461 F.3d 529 (5th Cir. 2006) .......................................................................... 10

*La. Mobile Imaging, Inc. v. Abraham, No.*
  44 (La.App. 2 Cir. 10/14/09); 21 So. 3d 1079 ..................................................... 5

*Lone Star OB/GYN Assocs. v. Aetna Health, Inc.*,
  579 F.3d 525 (5th Cir. 2009) .......................................................................... 24

*Manuel v. Turner Industries, et al*,
  905 F.3d 859 (5th Cir. 2018) ..................................................................... 2, 21

*Memorial Hermann Hospital Sys. v. Aetna Health, Inc.*,
  No. 11-267, 2011 U.S. Dist. LEXIS 94158 (S.D. Tex. Aug. 23, 2011) ................. 24

*Omega Hosp., LLC v. United HealthCare Ins. Co.*
  No. 15-561, 2015 U.S Dist. LEXIS 56905 (E.D. La. April 30, 2015) ................... 24

*Peterson v. UnitedHealth Grp., Inc.*,
  242 F. Supp. 3d 834 (D. Minn. March 14, 2017) ......................................... 18, 19

*Peterson v. UnitedHealth Grp., Inc.*,
  913 F.3d 769 (8th Cir. 2019) .......................................................................... 18

*Pontchartrain Gardens, Inc. v. State Farm Gen. Ins. Co.*,
  No. 07-7965, 2009 U.S. Dist. LEXIS 3734 (E.D. La. Jan. 13, 2009) ...................... 5

*Premier Health Ctr. v. UnitedHealth Group*,
   No. 11-425, 2014 U.S. Dist. LEXIS 172740 (D. N.J. Dec. 15, 2014) ................ 12, 13, 15, 16

*Quality Infusion Care, Inc. v Health Serv. Corp.*,
   628 F. 3d 725 (5th Cir. 2010) ................................................................ 18

*Rand v. Sim*,
   355 So. 2d 591 (La. Ct. App. 4th Cir. 1978) .......................................... 5

*Shelby County Health Care Corp. v. Genesis Furniture Indus., Inc.*
   No.13-00245, 100 F. Supp. 3d 577 (N.D. Miss. 2015) .......................... 11

*Univ. Spine Ctr. v. Anthem Blue Cross Blue Shield*,
   No. 17-9108, 2018 U.S. Dist. LEXIS 111555 (D. N.J. July 5, 2018) ...................... 9

*Univ. Spine Ctr. v. Anthem Blue Cross of California*,
   No. 19-12639, 2020 U.S. Dist. LEXIS 27549 (D. N.J. Feb. 18, 2020) .............. 8, 9

*White v. Life Ins. Co. of N. Am.*,
   892 F.3d 762– 70 (5th Cir. 2018) ...................................................... 17

## Statutes

29 U.S.C. § 1104 ................................................................................ 19

29 U.S.C. § 1106 ................................................................................ 19

La. Civ. Code art. 2642 ...................................................................... 5

ERISA Section 501(a)(1)(B) .............................................................. 21

ERISA Section 503 ............................................................................ 17

ERISA Section 502 ....................................................................2, 17, 18, 24

## Rules

Fed. R. Civ. P. 12 .............................................................................. 3

## Other

29 C.F.R. § 2560.503-1 ...................................................................... 17

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **OMEGA HOSPITAL, LLC** | * | **CIVIL ACTION NO.: 16-CV-0560** |
| **Plaintiff** | * | |
| | * | |
| **VERSUS** | * | **JUDGE JOHN W. DEGRAVELLES** |
| | * | |
| **UNITED HEALTHCARE SERVICES,** | * | |
| **INC. and UNITED HEALTHCARE OF** | * | **MAG. JUDGE ERIN WILDER-DOOMES** |
| **LOUISIANA, INC.** | * | |
| **Defendants** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**

**MAY IT PLEASE THE COURT:**

This memorandum is filed by plaintiff Omega Hospital, LLC ("Omega") in opposition to the Motion to Dismiss the Second Amended Complaint and Motion to Strike Certain Portions of the Second Amended Complaint (the "Motion") filed by defendants United Healthcare Services, Inc., and United Healthcare of Louisiana, Inc. (collectively "United"). As more particularly set forth below, the Motion should be denied.

### *Introduction*

The Second Amended Complaint (the "Complaint") asserts the claims approved by this Court in its decision denying Omega's Motion for Reconsideration, but granting Omega the opportunity to amend the complaint. Far from wasting judicial resources, Omega's Complaint seeks to preserve them, shedding its breach of fiduciary duty claims, and the attendant need to join the patient members and to sue plan sponsors in favor of a more streamlined approach where the two central claims are distilled down to: (1) a simple benefits claim under *Montanile/Manuel*[1] asserted on behalf of the A-patients, questioning the right of a health insurer or ERISA fiduciary

---

[1] *Montanile v. Bd of Trustees*, 136 S. Ct. 651 (2016); *Manuel v Turner Industries et al.*, 905 F.3d 859 (5th Cir. 2018)

to engage in unilateral self-help to claw back previously paid health benefits; and (2) a more detailed benefits claim under the *Peterson* rationale asserted on behalf of the B-patients, questioning whether the pertinent plans, which still have never been produced, permit cross-plan offsetting, and whether United's cross-plan offsetting practices violate ERISA.

At every turn United attempts to inject complexity and create controversy where none exists. First, United repeatedly insists that Omega asserts no A-patient claims, and even moves to strike any reference to the A-patients. This false narrative was no doubt created because United understands unilateral self-help is not a permissible means of retrieving previously disbursed ERISA benefits, even if those funds represent, as United contends, actual overpayments. Second, United cites to Omega's several references in the Complaint regarding United's failure to produce the underlying plans despite at least twice being ordered to do so, claiming that courts accept the Summary Plan Descriptions ("SPD") and Certificates of Coverage ("COC") it has produced "as binding" in lieu of the actual plan. This is an incorrect overstatement of the applicable law. It is in fact well-settled that SPDs inform beneficiaries about the plan, but do not constitute the plan terms,[2] and United's own documents establish that a COC is merely one part of the plan.[3] The case law cited by United changes nothing, mostly pre-dating *Amara* and otherwise distinguishable as there is no assertion here by United that plan documents do not exist. Indeed, Omega referenced United's failure to produce the underlying plans to

---

[2]  *See CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011)("For these reasons taken together we conclude that the summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B)."); *Koehler v. Aetna Health Inc.*, 683 F.3d 182 (5th Cir. 2012). This is confirmed by one of the SPDs in the record of this case, which states that it "presents an overview of your Benefits. In the event of any discrepancy between this Summary Plan Description and the official Plan Document, the Plan Document shall govern." Doc. 57(12) Exhibit 7, Summary Plan Description for VSC Fire & Security, Inc., at 85 of 129. See also, *Manuel v. Turner Industries*, et al, 905 F.3d 859 (5th Cir. 2018).

[3]  *See e.g.* Doc. 57(13) United Exhibit 8, at pp. 102-03 of 177 defining the "Policy" to include: (1) The Group Policy; (2) This Certificate; (3) The Schedule of Benefits; (4) The Enrolling Group's application; (5) Riders; and (6) Amendments.

demonstrate not only that no plan authorization of cross-plan offsetting has been shown to exist but also that the excerpted SPD and COC provisions, also fail remotely to support United's claim that the plan terms permit cross-plan offsetting. Similarly, United should not be allowed to rely on anti-assignment clauses from a SPD or COC without first proving that those clauses are contained in the underlying plans.[4]

United also engages in an unproductive "he said, she said" debate concerning Omega's intentions regarding the so-called "A-patients." Omega has framed its Complaint precisely as it represented it would and as this Court allowed in its decision on the Motion for Reconsideration. United also seeks to preclude Omega from asserting any claims on behalf of the A-patients based on verbal representations allegedly made by counsel and documents produced during the limited discovery phase allowed by the Court. United's own exhibits reveal that while United self-servingly "presumed" the A patient claims were out of the case, Omega's counsel never agreed.[5]

## I.    United's Motion to Strike should be denied.

United wastes few assets on its motion to strike from the Complaint references to the A-patients treated by Omega. For a good reason.  Fed. R. Civ. P. 12(f) provides that the Court may strike from a pleading "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter."[6] "However, motions to strike are disfavored, and when the contents of a pleading are legally sufficient, but improper for some other reason, a motion to strike should be

---

[4]      *See Grand Parkway Surgery Ctr., LLC v. Health Care Serv. Co.*, No. 15-0297, 2015 U.S. Dist. LEXIS 77373, *6 (S.D. Tex. June 16, 2015)(denying motion to dismiss based on an anti-assignment clause on the grounds it was "necessary and appropriate to consider the effect of the anti-assignment clauses and the waiver and estoppel issues on a Motion for Summary Judgment **when the plans, the assignments, and evidence regarding the parties' dealings are in the record**.")(emphasis added).

[5]      *See* Doc 135(7), st 2, August 26, 2019 email from P. Lea and Doc. 135(13), at 2, November e, 2019 email from P. Lea.

[6]      Fed. R. Civ. P. 12(f).

granted only when the moving party shows that the inclusion of the disputed claims or defenses would cause it prejudice."    "If the moving party does not show prejudice, the Court should "defer action on the motion and leave the sufficiency of the allegations for determination on the merits."[7] A motion to strike under Rule 12(f) "is a drastic remedy to be resorted to only when required for the purposes of justice" and "should be granted only when the pleading to be stricken has no possible relation to the controversy."[8]

Omega made clear in its motion for reconsideration it intended to assert a benefits claim under *Montanile/Manuel* on behalf of the A-patients, testing whether a health insurer may exercise unilateral self-help by offsetting previously paid benefits against amounts owed for claims under different health plans, after those amounts were deposited in the provider's general fund and disbursed, rather than tracing and recovering the allegedly overpaid benefits.  Contrary to United's claim, the court has not yet ruled on the viability of these claims, and Omega is confident the Court will uphold its right to assert these claims.  Moreover, the A-patient claims are intertwined with the B-patient claims — the other side of the same coin.[9]  Thus, discussion of the A-patient claims serves a legitimate purpose even beyond supporting those claims. Finally, the Magistrate Judge offered United the chance to brief why it believed the A patient claims were out of the case.  United filed nothing, and has otherwise failed to assert much less to demonstrate that it has suffered prejudice from Omega including references to the A-patients in the

---

[7]     *U.S. v. Cushman & Wakefield, Inc.*, 275 F. Supp.2d 763, 768, n. 3 (N.D. Tex. 2002) citing *Augustus v. Board of Public Instruction of Escambia County, Fla.*, 306 F.2d 862 (5th Cir. 1962).

[8]     *Augustus v. Board of Pub. Instruction of Escambia County*, 306 F.2d 862, 868 (5th Cir. 1962), quoting *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (5th Cir. 1953).

[9]     Typically, United would send to Omega a remittance advice listing the "A" patients whose previously paid claims were being recouped, ostensibly to pay the claim of a "B" patient.  See remittance advices for Patient "B" exemplar patients JF and JC, Exhibit 3.

4

Complaint, an impossible task where the case remains in its nascent stages. Accordingly, the motion to strike should be denied.

## II.       Omega has standing to pursue its claims

### A.       Omega obtained valid assignments

"In determining whether [Omega] obtained valid assignments, the court interprets the assignments in accordance with [Louisiana] contract law principles and any ERISA plan documents in accordance with ERISA principles."    "For any written assignment that [Omega] received from patients, the court examines and considers the entire writing and gives effect to all provisions of the assignment so that 'none [is] rendered meaningless.'"[10]

Under Louisiana law, "all rights may be assigned, with the exception of those pertaining to obligations that are strictly personal. The assignee is subrogated to the rights of the assignor against the debtor."[11]   When an obligee's rights are assigned to another, the assignee "steps into the shoes" of the obligee.[12]   The assignee "acquires only those rights possessed by its assignor at the time of assignment." [13] An assignment is a valid transfer of rights which may be done orally, and it may be proved like any other fact.[14] "There is no requirement in [La. Civ. Code art. 2642]

---

[10]      *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 334 (5th Cir. 2005) quoting *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cie. 2004).

[11]      La. Civ. Code art. 2642.

[12]      *Pontchartrain Gardens, Inc. v. State Farm Gen. Ins. Co.*, No. 07-7965, 2009 U.S. Dist. LEXIS 3734, *8 (E.D. La. Jan. 13, 2009), citing *Hose v. Younger*, No. 03-1046 (La.App. 1 Cir. 4/2/04), 878 So. 2d 548, 550.

[13]      *Pontchartrain Gardens, Inc. v. State Farm Gen. Ins. Co.*, No. 07-7965, 2009 U.S. Dist. LEXIS 3734, *8 (E.D. La. Jan. 13, 2009).

[14]      *La. Mobile Imaging, Inc. v. Abraham*, No. 44,600 (La.App. 2 Cir. 10/14/09), 21 So. 3d 1079, 1082, citing *Rand v. Sim*, 355 So. 2d 591 (La. Ct. App. 4th Cir. 1978).

that the assignment be in authentic form before a notary and two witnesses."[15] The ultimate

debtor cannot question the validity of an assignment of a debt unless he can show prejudice.[16]

In *Encompass Office Solutions, Inc. v. Conn. Gen. Life Ins. Co.*,[17] the defendant insurer

Cigna filed a motion for summary judgment contending the health care provider plaintiff

Encompass lacked prudential standing because it was unable to produce assignments for 169

patients out of "as many as 1,245 claims for benefits." Encompass filed its own motion for

summary judgment on standing arguing "that proof of a written assignment of benefits is not

required under federal law or Texas law (which mirrors Louisiana law) to effectively assign

healthcare benefits."[18] Encompass offered evidence demonstrating that it routinely received

executed "Assignment of Benefits" forms from its patients, that it was its standard practice to

require each of its patients, prior to their surgical procedure, to execute such a form, that

Encompass personnel fully explained to each patient what Encompass was, what its role in the

patient's surgery would be, and how it would bill the patient's health insurance directly.   The

district court agreed such evidence established standing and supported summary judgment for the

provider on the standing issue even where the written assignments could not be produced:

> Cigna's contention that Encompass lacks prudential standing because it did not
> produce copies of all the approximately 1,200 "Assignment of Benefits" forms
> signed by patients is unavailing because, as previously explained, an assignment
> of benefits may be established by direct or circumstantial evidence, and, unlike an
> assignment of a fiduciary duty claim under ERISA, an assignment of a claim for

---

[15]    *Id*., citing *Meyer v. Ullo*, 627 Soo. 2d 226 (La. Ct. App. 4th Cir. 1993).

[16]    *Fla. St. Holdings, LLC v. U.S. Bank Nat'l. Ass'n.*, No. 15-0714, 2016 U.S Dist. LEXIS 35624, *9 (M.D. La. March 18, 2016).

[17]    No. 11-12487, 2017 U. S. Dist LEXIS 120212 (N.D. Tex. July 31, 2017).

[18]    2017 U. S. Dist LEXIS 120212, at *20.

benefits need not be in writing to be effective unless required by contract or statute.[19]

Fundamentally, the particular claims outlined in the Complaint are merely exemplars of how United has exercised self-help or engaged in cross-plan offsetting in its dealings with Omega. It is sufficient to establish prudential standing to bring these claims on behalf of the putative class for Omega to produce an assignment from a single A-patient and from a single B-patient.  The actual number of assignments that Omega is able to produce is potentially relevant only to the issue of Omega's damages, an issue for another day. That said, Omega attaches hereto 80 Assignment of Benefits forms executed by the A and B patient/members Omega represents in this case.[20]   Omega further attaches hereto the Declaration of Karen Rousselle, its Director of Operations & Compliance.  Rousselle declares that it is Omega's routine to obtain signed Assignment of Benefits forms from all patients prior to the patient's procedure, that it is standard practice to require all patients execute the Assignment of Benefits form before surgery, that Omega personnel make a copy of the patient's insurance card, verify coverage and payment terms from the patient's insurer prior to surgery, and explain that Omega will bill the patient's health insurer directly.[21]   Rousselle further declares that, as reflected in the Complaint, all of the United A-patient self-help "claw backs" and B-patient offsets were appealed, and that the appeal package provided to United for each Omega claim routinely included a copy of the patient's executed Assignment of Benefits.[22] An exemplar of the appeal letter, with the attached Authorization to Appeal and Assignment of Benefits executed by the patient/member, is

---

[19]    2017 U. S. Dist LEXIS 120212, at *29, citing *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 335 (5th Cir. 2005).

[20]    Redacted Assignment of Benefits forms for the patient/members are attached hereto as Exhibits 1A and 1B.

[21]    Declaration of Karen Rousselle, at ¶¶ 5-11.

[22]    Declaration of Karen Rousselle, at ¶¶ 12-14.

attached.[23] If substantially lesser proof was sufficient for the provider in *Encompass* to obtain summary judgment on the standing issue, it follows that the proof offered by Omega should be more than adequate to defeat United's motion to dismiss here.

B. **Omega's Assignment is facially valid.**

 The terms of Omega's assignment(s) clearly express the patient's desire to transfer and assign to Omega "all of my rights to benefits from [United] … or other entities that are obligated to reimburse me or to pay benefits or other amounts for me or on my behalf for services rendered by Omega, as well as all of my rights to proceed against and to file suits and claims …." Moreover, the assignment of "all of my rights to benefits … for services rendered by Omega" is not date specific; rather, it assigns rights for all services rendered by Omega.  An assignment is a contract, so the date of service is of no import so long as the agreement made assigns the right to collect benefits.  Here, it does.

The cases cited by United in support of its contention are factually inapposite. *Infoneuro Grp. v. Aetna Life Ins. Co.*, involved multiple claims asserted by three different providers.  At issue were 23 claims asserted by provider Playa where "the purported assignments relate to medical services performed on dates that are not at issue in this litigation."[24] The court did in fact dismiss the 23 claims, but only because "unlike Infoneuro and Urgent Care, which 'obtain[ed] the assignment of benefits on the [member's] first visit' and did not require that members sign AOBs on their subsequent visits, patients of Playa signed AOBs for each date of service."[25]  Omega does not require patients to execute a new assignment for each date of service.  Omega requires a

---

[23]     Exhibit 2, Correspondence dated December 15, 2015, from Eric George, MD, to United Re: Patient "UM"; Account No. 364740-01; Policy 966683883; Treatment Date 09/22/2015; Claim # 5239459995.

[24]     2019 U.S. Dist. LEXIS 140401, at *17.

[25]     2019 U.S. Dist. LEXIS 140401, at *18.

8

single assignment, which covers all services rendered by Omega to the plan member. Similarly, in *Univ. Spine Ctr. v. Empire Blue Cross Blue Shield*, close scrutiny shows that the contested assignment failed for numerous reasons, including that it "does not identify the insurer, and does not specify the scope of the assignment or the benefits assigned."[26]  Thus, the agreement was deemed "insufficient to show a valid assignment from Patient to Plaintiff"[27] for multiple reasons, and not just because the date was non-specific.

Notably, the several requirements for a valid assignment imposed by *Univ. Spine Ctr.* has within its own district court twice been found to be inconsistent with decisions rendered by the governing Third Circuit Court of Appeal,[28] and United cites no case within this circuit or this district imposing a similar date-specific mandate.  Moreover, the Omega Assignment of Benefits identifies the insurer and articulates the scope of the assignment given by its patients, and the Declaration furnished by Karen Rousselle demonstrates that Omega routinely obtains an executed Assignment of Benefits before the particular procedure is performed and provides United a copy of the assignment when appealing what Omega considers to be an adverse benefits determination.  Thus, the Omega assignments are valid.

### C. United is estopped from enforcing the anti-assignment provision

United contends that the Fifth Circuit's recent decision in *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246 (5th Cir. 2019) mandates the Court enforce the anti-assignment provisions contained in the SPDs United has produced.  This is incorrect. The *Dialysis Newco* panel determined two things: (1) the relevant plan provision unambiguously

---

[26]      2018 U.S. Dist. LEXIS 14023, at *4.

[27]      2018 U.S. Dist. LEXIS 14023, at *5.

[28]      *See Univ. Spine Ctr. v. Anthem Blue Cross Blue Shield*, No. 17-9108, 2018 U.S. Dist. LEXIS 111555, at *8, n. 2 (D. N.J. July 5, 2018);  *Univ. Spine Ctr. v. Anthem Blue Cross of California*, No. 19-12639, 2020 U.S. Dist. LEXIS 27549, at *9-10  (D. N.J. Feb. 18, 2020).

prohibited the member from assigning the rights at issue; and (2) the Tennessee law invalidating anti-assignment provisions was preempted by ERISA. Neither finding is novel. But more to the point, *Dialysis Newco* left standing the principal that United, by the passage of time or its actions or inaction, may be estopped from asserting the anti-assignment provision(s) in this case.[29]

Unlike constitutional standing, a defendant may be estopped from asserting a challenge based on prudential standing "if not asserted timely."[30] In *Hermann Hospital v. MEBA Medical & Benefits Plan*,[31] the Fifth Circuit considered whether an insurer was estopped from enforcing an anti-assignment clause. The case concerned a hospital patient who assigned her insurance benefits to the hospital in a written agreement. The hospital told the patient's insurer that she had assigned her benefits, and the insurer confirmed that her plan covered the treatment. During the patient's six-month stay, the hospital and insurer continuously communicated about payment, but the insurer declined to pay pending an investigation. After the insurer's "investigation" dragged on for three years, the hospital sued. At trial, the insurer claimed that an anti-assignment clause in the patient's plan precluded the hospital from recovering.

The Fifth Circuit estopped the insurer from enforcing the anti-assignment clause "because

---

[29]    This Court previously addressed and rejected United's anti-assignment argument relying principally not on *Dialysis Newco* but on the Fifth Circuit's decision in *La. Health Serv. & Indem. Co. v. Rapides Parish Healthcare Sys.*, 461 F.3d 529 (5th Cir. 2006). *Dialysis Newco* distinguished *Rapides Parish*, but expressly did not overrule it. And for good reasons crucial to the Court's analysis here. *Dialysis Newco* addresses the enforceability of an anti-assignment provision in the context of the assignment of a litigation claim. Analytically, the assignment of a litigation claim potentially conflicts with ERISA's enforcement provision, and thus the presumption against preemption is unwarranted. Conversely, this case, as did *Rapides Parish*, concerns the assignment of a claim to benefits, which cannot conflict with ERISA's enforcement provision. As *Rapides* reasoned, the Louisiana statute, which required insurers to honor direct payment authorizations, did not impermissibly interfere with nationally uniform plan administration because: (1) it did not create any new obligations, it merely changed who the benefits flowed to; and (2) the burden on plan administrators would be minimal because healthcare providers would likely be more efficient in processing claims than would be the average plan participant. Id. at 539. Similarly, the assignment of a claim to benefits in this case merely redirected who the benefits flowed to. The reasoning of *Rapides Parish* remains a compelling basis for rejecting United's argument.

[30]    *See e.g. Bd. of Miss. Levee Comm'rs v. United States EPA*, 674 F.3d 409, 417-418 (5th Cir. 2012).

[31]    959 F.2d 569, 574 (5th Cir. 1992).

of [the insurer's] protracted failure to assert the clause when [the hospital] requested payment pursuant to a clear and unambiguous assignment of payments for covered benefits."[32] In the Fifth Circuit's view, "it was unreasonable for [the insurer] to lie behind the log for three years without once asserting the anti-assignment clause, of which [the hospital] had no knowledge, while duplicitously dragging out the ongoing negotiations to liquidate the claim."[33] The insurer was responsible for "notify[ing the hospital] of [the anti-assignment clause] if it intended to rely on it to avoid any attempted assignments."[34]

Following *Hermann Hospital*, courts within this circuit have equitably estopped insurers from asserting anti-subrogation clauses where the treatment provider obtained a clear and unambiguous assignment from the member/patient, confirmed coverage with the insurer, and the insurer failed to inform the provider of the anti-subrogation clause after it became clear that the provider was relying on the assignment.[35] For example, in *Shelby County Health Care Corp. v. Genesis Furniture Indus., Inc.,*[36] the court found the insurer was equitably estopped where it failed to raise the anti-assignment clause as a defense until four years after the initial payment request and two years after the provider notified it of the assignment, and "[n]othing in the record indicates that [plan] objected to [provider's] claim for benefits on the basis of the non-assignment clause until [defendant] filed its response in opposition to the current motion"[37]

---

[32]    959 F.2d at 575.

[33]    959 F.2d at 574.

[34]    *Id*.

[35]    *See e.g. Houston Home Dialysis v. Blue Cross & Blue Shield of Tex.*, No. 17-2095, 2018 U.S. Dist. LEXIS 180916, *16 (S.D. Tex. Oct. 22, 2018)(collecting cases).

[36]    No.13-00245, 100 F. Supp. 3d 577 (N.D. Miss. 2015).

[37]    100 F. Supp. 3d at 581.

Similarly, in *Encompass Office Solutions, Inc. v. La. Health Serv. & Indem. Co.*,[38] the insurer never once raised the anti-assignment clause during the four year period that it processed the claims for payment submitted by the plaintiff provider, and then waited an additional two years after suit was filed before raising the anti-assignment provision as a defense to the suit. The court observed that the Fifth Circuit "has held that a plan is precluded or estopped from raising the existence of an anti-assignment clause if it fails to assert and delays unreasonably in asserting the existence of the anti-assignment clause in response to a request for payment pursuant to an unambiguous assignment."[39] Thereafter, the court held the insurer was estopped from asserting the anti-assignment provision as a defense, as follows:

> As noted, Encompass contends, and Cigna does not dispute, that it never asserted the existence of anti-assignment language in the plans during the several years from approximately 2007 to 2011 that it processed the benefits claims for payment submitted by Encompass pursuant to assignments obtained from plan beneficiaries. Moreover, Cigna waited an additional two years after this action was filed in September 2011 before asserting that Encompass lacked standing because of the existence of anti-assignment language in the plans. The court, therefore, concludes that Cigna waived this argument or is estopped from asserting it as a result of its "protracted failure" in waiting several years to assert the existence of the anti-assignment language in the plans after Encompass requested payment for benefits pursuant to the assignments of benefits.[40]

Notably, United's multiple iterations of the same anti-assignment clauses at issue here were each deemed waived in the *Premier Health* series of cases which also involved claims by United of overpayments followed by unilateral offsets. In particular in *Premier Health Ctr., PC v. UnitedHealth Group*,[41] the court stated:

> The Court has rejected the notion that anti-assignment provisions are an

---

[38]    No. 11-02487, 2017 U.S. Dist. LEXIS 120212  (N.D. Tex. July 31, 2017).

[39]    2017 U.S. Dist. LEXIS 120212 , at 38-39.

[40]    2017 U.S. Dist. LEXIS 120212 , at 39.

[41]    No. 11-425, 2014 U.S. Dist. LEXIS 172740 (D. N.J. Dec. 15, 2014).

impediment to establishing standing in this case on three separate occasions, and it will do so again here. At the pleading stage, the Court held that anti-assignment provisions were not an impediment to provider standing because "the Amended Complaint alleges a course of conduct beyond direct reimbursement for medical services," including overpayment notifications and one or more repayment demands. Premier Health Ctr., P.C. v. UnitedHealth Grp., Civ. No. 11-425, 2012 U.S. Dist. LEXIS 44878, 2012 WL 1135608, at *9 (D.N.J. Apr. 4, 2012). The Court reaffirmed this holding in addressing certification of the ERISA Recoupment Class. *See Premier Health Ctr., P.C. v. UnitedHealth Grp*., 292 F.R.D. 204, 221 (D.N.J. 2013).

The Court articulated this holding for a third time in ruling on Plaintiffs' Motion to Certify the ONET Repayment Demand **C**lass. *See Premier Health Ctr., P.C. v. UnitedHealth Grp*., Civ. No. 11-425, 2014 U.S. Dist. LEXIS 120589, 2014 WL 4271970, at *15 (D.N.J. Aug. 28, 2014). The Court also rejected Defendants' contention that one must individually scrutinize the language of the anti-assignment provisions in this case because United's direct payment to a provider and subsequent repayment demand may at times be consistent with the language of an anti-assignment provision. The Court noted that an anti-assignment provision that allows United to pay a non-network provider directly for services rendered "merely makes clear that United may, in its discretion, unilaterally waive the anti-assignment provision and pay benefits directly to the provider." Id. "Thus, whether United, in accordance with, or in spite of, an anti-assignment provision, (1) issued a direct payment to a provider in response to a claim for benefits; and (2) issued one or more subsequent repayment demands directly to the provider regarding that claim for benefits, the contention that United waived its right to assert an anti-assignment provision is subject to common proof." Id.

… This language does nothing to defeat an assignment to Integrated Orthopedics because United previously issued directly to Integrated Orthopedics (1) payment of benefits on the corresponding claim; and (2) repayment demand letters on two occasions. Thus, United waived its right to enforce the anti-assignment provision, either through the patient-insured's plan, or in accordance with the assignment form submitted by Integrated Orthopedics.[42]

In the instant case, the Complaint and the Declaration of Karen Rousselle outline how United paid (or typically, underpaid) the A-patient claims, followed by multiple appeals over a period of years, without United ever raising the anti-assignment clauses in defense. Similarly, the anti-assignment clauses were never cited when United alleged that the A-patient claims were

---

[42]    *Premier Health*, 2014 U.S. Dist. LEXIS 172740, at *11-14.

improperly paid or when it engaged in cross-plan offsets against the B-patient claims. The defense was not even raised in response to the original Complaint. Indeed, the anti-assignment clauses were first raised in United's second motion to dismiss,[43] filed 4 or more years after the majority of the A-patient claims and many of the B-patient claims were closed.

The equitable estoppel doctrine is sensibly applied to thwart the use of anti-assignment clauses where, as here, the plan or insurer fails to raise the anti-assignment clause(s) timely. The case law cited by United can easily be distinguished as *not* involving "a course of conduct beyond direct reimbursement for medical services, including overpayment notifications and one or more repayment demands." Moreover, several courts have recognized that whether to enforce an anti-assignment clause or to apply the equitable estoppel doctrine is a fact intensive inquiry and thus inappropriate for resolution without complete development of the record.[44]   Thus, the Court should apply the doctrine of equitable estoppel based on United's protracted delay in raising the issue, or, alternatively, deny the motion without prejudice to United's raising the issue after the record is completely developed.

**D.  Omega has standing to seek injunctive and declaratory relief.**

ERISA provides Omega, as the assignee of a plan beneficiary, may "enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan," and may also assert a

---

[43]      Doc. 50.

[44]      *See e. g Houston Home Dialysis v. Blue Cross Blue Shield of Texas*, No. 17-2095, 2018 U.S. Dist. LEXIS 180916, *18 (S.D. Tex. Oct. 22, 2018)(" While Patient 6's plan contains a presumably enforceable anti-assignment clause, discovery could reveal that Blue Cross knew of Patient 6's assignment but failed to tell Home Dialysis about the anti-assignment clause. If so, an equitable remedy might be warranted. The court denies the motion to dismiss, without prejudice, so that the parties may raise this issue at summary judgment or at trial, on a more complete record."); *Grand Parkway Surgery Ctr., LLC v. Health Care Serv. Corp.*, No. 15-0297, 2015 U.S. Dist. LEXIS 77373, 2015 WL 3756492, at *6 (S.D. Tex. June 16, 2015) ("It is necessary and appropriate in this case to consider the effect of the anti-assignment clauses and the waiver and estoppel issues on a Motion for Summary Judgment when the plans, the assignments, and evidence regarding the parties' dealings are in the record. At the current stage, the Court concludes that Plaintiff has adequately alleged that it obtained a valid Assignment of Benefits from each patient and, as a result, the Court denies the Motion to Dismiss for lack of jurisdiction.").

request for declaratory judgment to obtain "appropriate equitable relief (i) to redress [ERISA plan] violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]"[45] There are "two instances in which 'a declaratory judgment may be said to 'enforce'. . . the terms of an ERISA plan.  First, if the action attempts to establish "the primacy of an ERISA obligation over some independent, potentially conflicting state law duty," and secondly, if the action seeks to establish "that the party against whom it is brought has an obligation under ERISA which it is allegedly disregarding."[46] Here, Omega seeks to obtain a declaration that United has an obligation under ERISA which Omega claims it is disregarding.[47]  Omega asserts legal rights, i.e., enforcing a claim to benefits, the plan terms, and ERISA requirements. This is a proper basis for a declaratory judgment action under ERISA.[48]

United contends Omega lacks standing to seek prospective relief based on the district court's ruling in *Premier Health Ctr. v. UnitedHealth Group*.[49]  Indeed, the cited opinion, the first of at least three opinions considering class certification, does stand for the proposition that a bare assignment of benefits does not confer standing to seek prospective relief.  However, on reconsideration of the cited ruling the district court changed course, ruling that since the putative class member's patient-assignors were subjected to United's recoupment procedures the right to challenge those procedures was a logical extension of the assignment of benefits, and included the right to seek injunctive and declaratory relief under ERISA:

---

[45]    29 U.S.C. § 1132(a)(3)(B).

[46]    *KLLM, Inc. Employee Health Protection Plan v. Ontario Community Hosp.*, 947 F. Supp. 262, 266-67 (S.D. Miss. 1996).

[47]    *IBEW-NECA Southwestern Health Benefit Fund v. Gurule*, 337 F. Supp. 2d 845, 860 (N.D. Tex. 2004).

[48]    *See e.g. Connecticut General Life Ins. Co. v. Cole*, 821 F. Supp. 193, 197 (S.D.N.Y. 1993) (stating that "A declaratory judgment is not always a form of 'equitable' relief. If the underlying controversy is 'legal' rather than 'equitable', a declaratory judgment will be considered a form of legal relief.").

[49]    292 F.R.D. 204 (D.N.J. 2013).

Defendants argue that, even if an assignment of benefits allows a healthcare provider to bring ERISA claims for the benefits that it was assigned, "that principle does not help Plaintiffs establish standing across the proposed class because Plaintiffs seek (among other things) declaratory and injunctive **r**elief related to future claims for benefits that have not yet been assigned." (Def.'s Br. Opp. Mot. Cert. 23.) In doing so, Defendants point to the Court's previous holding that evidence of a direct payment of benefits to a healthcare provider "only creates the inference that the patient assigned to [the provider] the right to receive reimbursement for the care rendered [by the provider], not the right to assert a full array of ERISA claims." *Premier Health Ctr.*, 292 F.R.D. at 219.

This ruling, however, was specific to where providers sought injunctive relief regarding conduct to which their patient-assignors were not subject and might encounter only when seeking treatment from other providers in the future. *See id*. Consequently, the injunctive relief sought was well-outside the logical scope of those patient assignments.

Here, however, the ONET Repayment Demand Class members' patient-assignors were subject to Defendants' overpayment recoupment procedures. Therefore, as the Court previously held, a "challenge to the procedures used to recover overpayments of benefits assigned to [healthcare providers] is a logical extension of their right to receive those benefits." *Id*. at 221. And a challenge to these procedures under ERISA may undoubtedly include declaratory and prospective injunctive relief against "any act or practice which violates any provision" of ERISA. 29 U.S.C. § 1132(a)(3)(A).[50]

Here, the putative class members' patient-assignors also were "subject to [United's] overpayment recoupment procedures," and the provider assignees challenges those procedures as an "act or practice which violates" ERISA. Thus, as the *Premier Health* court determined, seeking injunctive or declaratory relief is "a logical extension of [the providers'] right to receive those benefits" and is thus permissible under both the terms of the Assignment of Benefits and ERISA.   Moreover, Omega and the putative class simply seek to enforce legal rights, i.e., to enforce a claim to benefits, to enforce the plan terms, and to enforce ERISA requirements.

---

[50]    N0. 11-425, 2014 U.S. Dist. LEXIS 120589, *40-42 (D. N.J. August 28, 2014).  The cited decision was ultimately vacated on other grounds in *Premier Health Ctr. v. UnitedHealth Group*, No. 11-425, 2014 U.S. Dist. LEXIS 172740 (D. N.J. Dec. 15, 2014), cited above.  Notably, that decision affirmed the right of the class to pursue claims for injunctive and declaratory relief. 2014 U.S. Dist. LEXIS 172740, at *16-17 ("This argument is a red herring … in challenging United's overpayment recoupment procedures, those patient-assignors would necessarily seek prospective relief because the repayment demands on their claims have yet to be resolved. That such relief may also apply to benefit claims of other United-insureds is of no moment, as it would not in any way restrict those individuals' rights or ability to sue under ERISA.").

Omega has standing to pursue such claims.

### III.    Omega's claims are plausible.

Part III of United's Motion to Dismiss narrates a series of brief arguments predicated

upon mischaracterizations of Omega's claims.

### A.  United mischaracterizes Omega's Section 502(a)(1)(B) claim.

First, United suggests that Omega's citation of 29 C.F.R. § 2560.503-1's provisions in the

context of its Section 502(a)(1)(B) claims constitutes a "dressed-up" effort to assert a Section

503 claim against an entity other than the Plan itself.  Contrary to United's assertion, Omega does

not seek damages in a separate count for procedural violations of ERISA's regulatory

requirements.  Rather, as discussed in the *Manuel v Turner Industries*, *supra*, Omega makes

these assertions in the context of its benefit claims under Section 502(a)(1)(B).  As the *Manuel*

court noted:

> In an ERISA action under ERISA § 502(a)(1)(B), a claimant may question … whether
> the plan administrator complied with ERISA's procedural regulations; and the existence
> and extent of a conflict of interest … *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d
> 258, 263 (5th Cir. 2011) (footnotes omitted).  And in an unbroken line, even after
> *Singletary*, this court has allowed claims administration issues to be raised in ERISA §
> 502(a)(1)(B) causes of action. See, e.g., *White v. Life Ins. Co. of N. Am.*, 892 F.3d 762,
> 769– 70 (5th Cir. 2018). *Id*., at 873-874.

In this action, United has repeatedly characterized its remittance advices as claims benefits

decisions necessitating review; United's procedural violations of ERISA's claims review process

are relevantly pleaded to address this assertion and to establish the time period for permissible

review of United's self-described benefits decision. Omega's requested relief for these violations

remains repayment of benefits that United has improperly recouped via cross plan offset or offset

against other funds belonging to or owed to the provider and is thus cognizable under §

502(a)(1)(B).

### B.  Omega Plausibly Alleges an ERISA Violation

Next, United argues that Counts One, Two and Four of Omega's complaint seeking recovery of unpaid benefits under Section 502(a)(1)(B) lack plausibility.  Initially, United premises this position upon the case of *Quality Infusion Care, Inc. v Health Serv. Corp.*, 628 F. 3d 725, 730 (5th Cir. 2010), which United suggests blesses its effort to engage in same plan and cross-plan offsetting.

The flaws in this argument are varied and numerous.  *Quality Infusion* appears to have been decided under Texas state law and fails to even mention ERISA, to evaluate the health insurer's conduct under ERISA standards, or to consider the impact ERISA's fiduciary duties would have on the health insurer's conduct.  *Peterson* rejected United's *Quality Infusion* arguments at both the district court[51] and appellate levels.[52]  Clearly, *Quality Infusion* does not stand for the proposition for which it is put forth here.  Moreover, United suggests that it is Omega's burden to show that its offsetting and cross-plan offsetting are not authorized by the plan documents, rather than the other way around. United's actions must be authorized by the plan terms, and even United concedes that its Plans do not all contain language even arguably supportive of any offsetting, let alone the invasion of another beneficiary's or plan's assets to

---

[51]    "United also cites *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725 (5th Cir. 2010)—a case with facts similar to this one—in which the Fifth Circuit held that the plans at issue authorized cross-plan offsetting. Id. at 729-30. *Quality Infusion* does not so much as mention ERISA, however, and it relies almost entirely on the absence of language prohibiting cross-plan offsetting. Id. at 729 (noting that the plan "does not specify that the overpayment must be offset against the same patient's future claim"); id. at 730 ("No language in any of the three plans require BCBS to confine its contractual setoff rights to deductions from subsequent benefit payments to the same patient or under the same plan.")." *Peterson v. UnitedHealth Grp., Inc.*, 242 F. Supp. 3d 834, 847 (D. Minn. March 14, 2017).

[52]    "United relies on *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725 (5th Cir. 2010), for the proposition that cross-plan offsetting is authorized by plan language that authorizes intra-plan offsetting. But Quality Infusion was not an ERISA case ….." *Peterson v. UnitedHealth Grp., Inc.*, 913 F.3d 769, 776 n.5 (8th Cir. 2019).

accomplish this objective.   United cites the Declaration of Genovese as support for the proposition that all United plans contain language similar to that cited in Paragraph 40 of the SAC, but this language is unavailing for United's position.  As recited in Paragraph 40 of the SAC itself, this language only addresses recovery of funds from the B patient, not from other patients or plans.[53]  Lastly, the cited language fails to address the possible ERISA violations presented by such offsetting and cross-plan offsetting.

United recognizes that the decisions in *Montanile/Manuel* require tracing of funds to enforce an equitable lien by agreement (such as United argues its Plans create). United contends that these limitations on its powers of enforcement exist only in a litigation context, that is, when United seeks to recoup funds via litigation.  United cites no authority for the proposition that it derives greater enforcement authority than that permitted by ERISA when it acts in a nonjudicial context.

On the other hand, limitations on the powers of ERISA administrators outside the litigation context have recently drawn considerable attention.   In determining what authority a plan gives to an administrator, the plan must be read in light of trust law and the fiduciary duties imposed by ERISA. ERISA requires plan fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries" and for the "exclusive purpose" of providing benefits and defraying reasonable administrative expenses. 29 U.S.C. § 1104(a)(1).  *Peterson v. UnitedHealth Grp., Inc*., 242 F. Supp. 3d 834, 843 (D. Minn. 2017).   ERISA also prohibits a plan fiduciary from dealing with the assets of the plan in the fiduciary's own interest and from

---

[53]        This United plan provision represents a virtual encyclopedia of ERISA violations: after once deciding and adjudicating claims, it purports to grant United the right to conduct its own appeal of its decision; a readjudication of that decision "at any time" (including periods after collection from the patient is no longer possible); the right to conduct such review and adjudication without notice or hearing; the right to dispense with an ERISA compliant explanation of denial; the right to dispense with notice of appeal rights; and the right to seize assets of the other plans or patients that it is obligated to serve.

acting in any capacity on behalf of a party whose interests are adverse to those of the plan or plan

participants. 29 U.S.C. § 1106(b)(1), (b)(2). *Id.* Consistent with these obligations, United cannot

exercise offsets or cross-plan offsets when doing so would be to the detriment of other plans or

other plan participants.[54]

The *Montanile/Manuel* decisions apply the same historic trust principles in the context of

efforts to recover funds.  United would have this Court believe that relief available to ERISA

plan administrators and the trust origins of that relief are but litigation constructs.  This is

backwards, as it is the historic trust remedies that define the powers of the plan administrator, not

the other way around.  *Montanile* recites this history in a manner that clarifies its application

here.  Of particular significance was the Court's discussion of *Sereboff:*

> The lien existed in *Sereboff* because of the beneficiaries' agreement with the plan
> to convey the proceeds of any third-party settlement. We explained that a claim to
> enforce such a lien is equitable because the plan "could rely on a familiar rul[e] of
> equity" to collect--specifically, the rule "that a contract to convey a specific object
> even before it is acquired will make the contractor a trustee as soon as he gets a
> title to the thing." Ibid.  The underlying remedies that the plan sought also were
> equitable, because the plan "sought specifically identifiable funds that were within
> the possession and control" of the beneficiaries--not recovery from the
> beneficiaries' "assets generally." 547 U.S. 356, at 362-363 (internal quotation
> marks omitted).

Traditional equity would thus have recognized an agreement by a plan participant to return

monies to be paid in the future in the same plan, same participant context because the funds so

sought would have been specifically identifiable and would have belonged to the contracting

party.

United argues that applying *Montanile/Manuel* tracing to non-judicial mechanisms for

recovery of benefit overpayments, would preclude cross-plan offsetting, and same plan offsetting

in every case. This is incorrect.  Omega concedes that certain contractual reimbursement

---

[54]     See extensive discussion of other example cases cited in Peterson, [cite]

provisions regarding overpayment of benefits have long been valid under ERISA. The prior jurisprudence upholding such reimbursement relates primarily to same plan same participant offsetting; in that setting, courts specifically found that the offset provisions were appropriate under ERISA principles. *See*, e.g., *Palmer v. Johnson & Johnson Pension Plan*, 2009 U.S. Dist. LEXIS 84848 (D. N.J. 2009). The present situation of offsetting and cross-plan offsetting raises a number of significant ERISA issues (e.g., such as the conflict of interest of an administrator who offsets benefits between several plans or participants, and questions as to which plan or participant is benefitting from the recovered overpayment) not present in the same plan, same participant offset situation.  Notably, United does not cite any samples of same plan, same patient offsetting that are at issue in this action.

The Fifth Circuit has recognized that where the overpayment results from the receipt of benefits that are mistakenly paid, all types of ERISA equitable liens must be enforced against a specifically identified fund in the individual or entity's possession.  *See, Manuel v. Turner Industries et al.*, 905 F.3d 859, 873-874 (5th Cir. 2018).  Neither *Montanile* nor *Manuel* specifically limited the application of their tracing principles to civil actions only, but instead applied these tracing principles to comport with the trust remedies traditionally available to plan administrators.  The recovery of overpayments from benefits attributable to other participants and other plans, implicates issues not applicable in the same plan, same participant offset scenario. Because of United's unique position as the administrator of various insured and self-insured plans, United is able to be the judge and jury, and to offset these monies in unrelated matters unilaterally.

Lastly, as noted above, Fifth Circuit jurisprudence directs that such conflicts of interest and claims handling issues should be addressed in the context of a claim for benefits under Section 501(a)(1)(B).  Omega seeks return of such benefit payments herein.

**C. Omega's state law breach of contract claim is not preempted by ERISA.**

**1.    Omega is entitled to assert a declaratory judgment action and to seek an injunction prohibiting further violation of ERISA**

United devotes few resources to arguing that Omega's count for declaratory judgment and injunctive relief "is preempted and implausible," and no more is warranted.  Omega does not seek to side-step this Court's September 11, 2018 Ruling [Doc. 90] by bringing a declaratory judgment claim under state law.[55]  Fundamentally, only Count Four of the Complaint is asserted under state law.  Omega refers the Court to and incorporates by reference, the discussion of its standing and right to seek injunctive and declaratory relief under the provisions of ERISA asserted in Section II D, above.

**2.    The breach of contract claim is adequately plead and is not preempted by ERISA.**

Omega's breach of contract claim is predicated upon agreements made between Omega personnel and United's representatives, independent of Omega's relationship with the United patient/members or the plan terms. In particular, Omega alleges both in the Complaint and in the attached Declaration that for each claim its personnel routinely contacted United to verify not only coverage for the procedure but also the rate of payment Omega would receive for its professional medical services. That rate varied, but was typically in the range of 60% to 80%.[56]

---

[55]    The cited pages refer to the Court's discussion of Omega's assignment in the context of previously asserted claims for breach of fiduciary duty, which claims even United concedes are not continued in the Complaint.

[56]    Exemplar verification sheets completed by Omega personnel for United patient/members are attached hereto as Exhibit   .

As a consequence of the unilateral actions engaged in by United, Omega did not receive the rate of payment it was promised and agreed to accept.

It is settled that whether ERISA preemption applies to third-party party health care provider's claims against out-of-network insurers "depends precisely on what rights the provider seeks to enforce and what it alleges has been breached."[57]  In *Crescent City Surgical Centre v. Humana Health Benefit Plan of Louisiana*,[58] an out-of-network healthcare provider sued a health insurance company in state court, alleging state law claims such as breach of contract, fraud, and negligent misrepresentation. In its state court petition, the healthcare provider alleged that every time "before providing services to [the insurance company's] customers," it would verify that the insurance company "will pay for medical bills for out of network medical services," as well as what the insurance company would "agree[] to pay."  Based on these communications, the healthcare provider provided medical services to the customers. However, the insurance company would subsequently "underpay[]" the healthcare provider.

The insurance company removed the case to federal court, arguing the healthcare provider's claims were preempted by ERISA. The healthcare provider filed a motion to remand. The district court observed that "[n]umerous courts have held that a pre-treatment reimbursement verification procedure like the one described is sufficient to give rise to state law claims for negligent representation, breach of contract, and detrimental reliance,"[59] and thereafter granted

---

[57]    *Center for Restorative Breast Surgery, LLC v. Humana Health Benefit Plan of Louisiana, Inc.*, No. 10-4346, 2011 U.S. Dist. LEXIS 36709, *5  (E.D. La. March 22, 2011).

[58]    No. 19-9540, 2019 U.S. Dist. LEXIS 156400 (E.D. La. Sept. 13, 2019).

[59]    *Crescent City,* 2019 U.S. Dist. LEXIS, at *7. *See also Center for Restorative Breast Surgery, LLC v. Humana Health Benefit Plan of Louisiana, Inc.*, No. 10-4346, 2011 U.S. Dist. LEXIS 36709  (E.D. La. March 22, 2011)("On the other hand, if a health care provider can assert a right to payment based on some separate agreement between itself and an ERISA defendant (such as a provider agreement or an *alleged verification of reimbursement prior to providing medical services*), that direct claim is not completely preempted by ERISA.")..

the motion to remand.  The court  explained, "Crucially, [the healthcare provider] specifically states its claims are  … based on '[the insurance company's] solicitation and knowing acceptance of [the healthcare provider's] services" and "disputes the rate [the insurance company] is reimbursing them for clearly defined benefits.[60]

Similarly, in *Omega Hosp., LLC v. United HealthCare Ins. Co.*,[61] these same two parties contested whether Omega's breach of contract claim, among other claims, was preempted. United contended that Omega's claim required interpretation of the plan documents as to what constitutes a "reasonable and customary" charge. Omega filed a motion to remand, which the district court granted:

> Completely separate and apart from the contents of the insurance policy, Omega's claims for negligent misrepresentation, breach of contract, and detrimental reliance implicate duties related to the substance of the discussions between the parties when Omega contacted United for precertification. To the extent that Omega's claims may require reference to and interpretation of ERISA plan documents, as asserted by United, the Fifth Circuit has explicitly rejected the argument that "mere consultation of an ERISA plan is . . . enough to bring the claims within the scope of § 502(a).". "A claim that implicates the *rate* of payment . . . , rather than the *right* to payment under the terms of the benefit plan, does not run afoul of *Davila* and is not preempted by ERISA." *Id.* Omega's claims are clearly based on the rate of payment, not the right of payment. Accordingly, ERISA does not preempt Omega's claims, and the Court lacks subject matter jurisdiction over the above-captioned matter.[62]

Omega's breach of contract claim does not attempt to enforce rights arising under an ERISA plan. The breach of contract claim does not implicate coverage and benefits established by the terms of an ERISA benefit plan; rather, it relates to the computation of contract payments

---

[60]    *Crescent City*, 2019 U.S. Dist. LEXIS, at *8. *See also Memorial Hermann Hospital Sys. v. Aetna Health, Inc.*, No. 11-267, 2011 U.S. Dist. LEXIS 94158 (S.D. Tex. Aug. 23, 2011)(finding the crucial question to be whether the dispute is over the "right to payment, as opposed to the rate of payment.").

[61]    No. 15-561, 2015 U.S Dist. LEXIS 56905 (E.D. La. April 30, 2015).

[62]    *Omega Hosp., LLC,* 2015 U.S Dist. LEXIS 56905, at *6-7, citing *Lone Star OB/GYN Assocs. v. Aetna Health, Inc.*, 579 F.3d 525, 530 (5th Cir. 2009).

or, in this case, the correct execution of such payments.  The former may constitute claims for benefits that could be brought pursuant to § 502(a)(1)(b), while the latter is an independent contractual obligation between the provider and the health insurer. Moreover, similar claims for state law breach of contract have been found by Louisiana district courts sufficiently plead for purposes of a motion to dismiss.[63] Thus, Omega's state law breach of contract claim is not preempted and is sufficiently plead. Accordingly, the motion to dismiss should be denied.

IV.     **Jury Trial**

Omega acknowledges that most of its claims asserted herein are not triable by jury and assents to the withdrawal of its jury trial request as to any claim that might have been triable by jury, thereby mooting further discussion of this issue.

Respectfully submitted,

 s/Paul A. Lea, Jr.
PAUL A. LEA, JR. (#18637)
paul@paullea.com
724 East Boston Street
Covington, Louisiana 70433
Telephone: (985)-292-2300
Facsimile:  (985)-249-6006

Stephen Murray, Jr. (#23877)
smurrayjr@murray-lawfirm.com
MURRAY LAW FIRM
650 Poydras Street, #2150
New Orleans, Louisiana 70130
Telephone: 504-525-8100
Facsimile:  504-584-5249

---

[63]     *See e.g. Crescent City Surgical Ctr. v. Cigna Health & Life Ins. Co.*, No. 18-11385, 2020 U.S. Dist. LEXIS 54556, *5-8 (E.D. La.  March 30, 2020).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 22, 2020, I filed the within and foregoing Memorandum in Opposition to United's Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties to this matter via electronic notification or otherwise:

Errol J. King, Jr.
errol.king@phelps.com
Katherine Leigh Cicardo
katie.mannino@phelps.com
Daniel P. Guillory
dan.guillory@phelps.com
Phelps Dunbar LLP
II City Plaza 400 Convention Street
Baton Rouge, Louisiana 70802
Telephone: 225-376-0207
Facsimile: 225-381-9197

Amanda L. Genovese
agenovese@omm.com
O'Melveny & Myers LLP
7 Times Square
New York, NY 10036
Telephone: 212-326-2000
Facsimile: 212-326-2061
*Counsel for Defendants, United Healthcare of Louisiana, Inc., et al.*

This 22nd day of May, 2020.

<u>*/s/ Paul A. Lea, Jr.*</u>
Paul A. Lea, Jr. (#18637)