UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**OMEGA HOSPITAL, LLC**  CIVIL ACTION NO.

**VERSUS**  16-560-JWD-EWD

**UNITED HEALTHCARE OF
LOUISIANA, INC., ET AL.**

## RULING AND ORDER

Before the Court is the Motion to Extend Deadline to file Motion for Class Certification and Disclosure of Expert Written Reports ("Motion"),[1] filed by Plaintiff Omega Hospital, LLC ("Omega"), which is opposed[2] by Defendants United Healthcare of Louisiana, Inc. and United HealthCare Services, Inc. (collectively, "United"). The Motion seeks an extension of Omega's August 18, 2021 deadline[3] to file a motion to seek class certification and disclosure of expert reports.[4] Because the Fed. R. Civ. P. 16(b)(4) factors weigh in favor of granting an extension of the deadline for filing a motion for class certification, the Motion will be granted.

**I.  Background**

The deadline for Omega to file its motion for class certification was August 18, 2021. On that date, Omega filed the instant Motion (as well as a "placeholder" motion for class certification),[5] contending that good cause exists for an extension of the class certification motion deadline because Omega had not received complete responses to its discovery requests from United and did not have the information it needed to certify a class.[6] Omega also contended that

---

[1] R. Doc. 164.
[2] R. Docs. 166-67.
[3] *See* R. Doc. 160 for the original case management schedule for class certification discovery and briefing ("CMO").
[4] The Motion originally sought sixty day extensions of the other CMO deadlines. R. Doc. 164, pp. 1, 3 and R. Doc. 164-1. However, the parties subsequently and jointly sought, and were granted, extensions of the other CMO deadlines. R. Docs. 174-75, and 176-81.
[5] R. Doc. 165.
[6] R. Doc. 164, p. 2. On the date the Motion was filed, Omega contacted United to obtain consent for the Motion and provided a copy of a draft motion for extension; however, United could not reach its client representative regarding

the parties had been cooperating and had extended informal extensions of the discovery deadlines, which "allow[ed] productions of discovery outside of the original scheduling order."[7] United opposed the Motion, contending that Omega failed to demonstrate good cause for the extension and made misrepresentations regarding United's responses to discovery; specifically, Omega never identified deficiencies in United's production to Omega, and failed to identify any specific discovery that it required to support the Motion.[8] United further contended that it was Omega who had unreasonably delayed discovery regarding class certification, including its failure to timely respond to United's requests for production propounded on March 17, 2021 and failure to produce any documents, as well as its failure to timely respond to United's interrogatories and requests for admission, despite United's unsuccessful attempts to confer with Omega.[9] According to United, Omega's refusal to participate in class discovery and to confer regarding outstanding issues, and failure to establish any grounds supporting its inability to meet the class certification deadline, belie any claim that Omega acted diligently in its efforts to meet the deadline for the class certification motion.[10]

On August 25, 2021, a telephone conference was held with the parties to discuss the Motion. It was explained to Omega that the Motion did not sufficiently allege good cause in support of an extension because it failed to provide any details regarding the alleged discovery Omega contended was owed. Therefore, Omega was ordered to file a reply, setting forth sufficient

---

consent because he/she was out of the office. R. Doc. 164, p. 3 and R. Doc. 166-1, pp. 5-6. United contends that Omega never explained why Omega waited until the deadline to file its class certification motion to seek an extension of the remaining CMO deadlines. R. Doc. 166, p. 5 and R. Doc. 166-1, p. 6. United also contends that the draft proposed motion for extension is "vastly different" from the instant Motion, in that the draft motion was premised upon Omega's counsel's trial schedule. R. Doc. 166, p. 5 and R. Doc. 166-5.
[7] R. Doc. 164, p. 2.
[8] R. Doc. 166, p. 2.
[9] R. Doc. 166, pp. 3-5 and *see* the Declaration of Amanda Genovese, counsel for United, which sets out the discovery timeline between the parties, as well as the attached documents and discovery requests. R. Docs. 166-1 through 166-5.
[10] R. Doc. 166, pp. 5-8.

information to establish good cause in support of the extension, including specifics regarding the discovery that Omega propounded to United, to which United allegedly failed to respond, and other details regarding the discovery process. United was permitted to seek leave to file a sur-reply brief, if the reply brief raised issues not addressed in United's opposition memorandum.[11]

In Reply, Omega contends that it has established good cause under Fed. R. Civ. P. 16(b)(4) in support of the motion.[12] With respect to the first factor considered, *i.e.*, the reason for its inability to file its class certification motion on time, Omega asserts that the parties agreed to multiple informal extensions of time throughout the class discovery process spanning several months, which modified and extended certain CMO deadlines such that the discovery process was delayed, which impacted Omega's preparation.[13] Omega contends that when it then sought an extension of the class certification motion deadline, after having agreed to discovery extensions, United "reversed course on the trajectory of the relationship and modifications to the discovery schedule, deciding to vehemently oppose an extension of time that would bring the scheduling order in line with the prior agreements."[14] As further explanation, Omega contends that United still owes Omega responses to interrogatories propounded in June 2021 regarding numerosity, which Omega needs to prepare its motion for class certification.[15] Specifically, Omega contends that while United produced thousands of documents, it did not produce any documents responsive

---

[11] R. Doc. 170.
[12] R. Doc. 177, and *see* pp. 7-8. Omega was granted an extension until September 15, 2021 to file its reply brief (and other CMO deadlines were also extended) due to the effects of the August 29, 2021 landfall of Hurricane Ida. R. Docs. 174-75. The parties subsequently filed another joint motion for extension of the other remaining CMO deadlines, as well as Omega's deadline to file a reply brief, and referenced the court's General Order 2021-7, which suspended deadlines from August 26, 2021 until thirty days thereafter. While Omega alleged that the application of the General Order extended its reply deadline to October 1, 2021, Omega then filed its reply brief on the same day as the second joint motion for extension, thus mooting the second requested extension for its reply brief. R. Doc. 177 and *see* R. Doc. 181.
[13] R. Doc. 177, pp. 1-3, 8 and *see* R. Docs. 177-1, pp. 1-2, 6-7, 12 (correspondence of counsel regarding extensions of deadlines).
[14] R. Doc. 177, pp. 1-4.
[15] R. Doc. 177, pp. 4-5.

3

to its interrogatories seeking information regarding providers other than Omega, such that Omega did not have all of the information necessary to define the class.[16] Omega contends that its inability adequately prepare the class certification motion without this information underscores the importance of the extension sought, the second Fed. R. Civ. P. 16(b)(4) factor.[17]

Omega also alleges that United failed to sufficiently categorize its document production by Bates number aligned to specific discovery requests, in violation of Fed. R. Civ. P. 34(b)(2)(E)(i), including a production that was served on Omega three and half weeks prior to the class certification motion deadline. As such, Omega contends that it was prejudiced it in its review of the documents produced.[18] Omega contends that it acted prudently in filing the instant Motion before the expiration of the class certification motion deadline, and because it filed a "placeholder" motion.[19] With respect to the third and fourth Fed. R. Civ. P. 16(b)(4) factors, Omega argues that United will not suffer prejudice if the extension is granted, because United also had discovery issues outstanding,[20] United consented to other informal modifications to discovery deadlines, and United's opposition actually militates in favor of granting the extension, because United has alleged that it is prejudiced by Omega's "placeholder" motion, as it "obscure[es] the actual factual record Omega intends to rely upon." Omega argues that any prejudice to United can be cured through a modification of the CMO.[21]

---

[16] R. Doc. 177, pp. 5-6, 8-9 *citing* R. Doc. 177-1, pp. 19-23 (United's responses to Omega's second set of interrogatories regarding numerosity) and pp. 40-45 (United's supplemental responses to the same interrogatories).
[17] R. Doc. 177, pp. 9-10 *citing Buchanan v. Sirius XM Radio, Inc.*, No. 3:17-CV-0728-D, 2018 WL 1932825, at *1-2 (N.D. Tex. Apr. 24, 2018).
[18] R. Doc. 177, pp. 6-7, 9 *citing* decisions from this Court, requiring the identification of documents by Bates number produced in response to specific requests.
[19] R. Doc. 177, p. 9.
[20] As noted in the Court's August 25, 2021 Order, United's representations at the conference suggest that United also does not have all the information that it required in discovery. R. Doc. 170, p. 2. Furthermore, just before the conference, United filed a motion to compel Omega to respond to discovery (R. Doc. 169), which United did not raise during the conference, but which further supports the implication that United has its own discovery issues. United's motion to compel was denied without prejudice to re-urging considering the Court's August 25, 2021 order, requiring the parties to confer. R. Docs. 170, 172.
[21] R. Doc. 177, p. 10, *citing* R. Doc. 166, p. 6.

In response, United avers that Omega did not identify any efforts to address discovery deficiencies with United's production.[22] According to United, Omega never accessed or reviewed a production of 5,390 pages prior to filing the instant Motion (40% of United's production), and after the conference with the Court, Omega asked United for updated links to three other productions because the previous links were allegedly corrupt. United contends that it had produced 88% of the documents about two months before Omega's class certification motion deadline, and other productions up to three weeks before Omega's motion was due, with the last two pages produced on July 30, 2021. Therefore, United contends that Omega's inability to meet its deadline was due to Omega's lack of diligence in reviewing the documents previously produced.[23]

United reiterates that Omega has not shown good cause for the requested extension because Omega failed to diligently pursue discovery, failed to meet agreed-upon deadlines, and has still not produced any of the documents requested by United.[24] Further, United argues that it was not obligated to agree to the currently-requested extension because it was sought at the eleventh hour, without any indication of the alleged discovery deficiencies newly raised by Omega. Finally, United contends that, to the extent Omega argues that it requires numerosity information from United in order to prepare its class certification motion, it is Omega's fault that Omega does not have that information because United offered to discuss "production of exemplar data concerning

---

[22] United admits that Omega did request a conference with United at one point without specifying discovery deficiencies but ultimately failed to schedule a conference. R. Doc. 166, p. 7, n. 6 and R. Doc. 180, p. 2, n. 1. United further contends that Omega never complained about the lack of categorization of the document production. However, United contends that its production is compliant with Fed. R. Civ. P. 34(b)(2)(E)(i) because the documents were produced in the ordinary course of business. R. Doc. 180, p. 3, n. 3.
[23] R. Doc. 180, pp. 2-3.
[24] R. Doc. 180, p. 3

5

other Louisiana providers" with Omega, but Omega never accepted that offer. United contends that it is willing to enter into a stipulation that will resolve this issue.[25]

## II. Law and Analysis

### A. Legal Standards

Fed. R. Civ. P. 6(b)(1)(a) provides: "When an act may or must be done within a specified time, the court may, for good cause, extend the time: with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires…."[26] Specifically regarding Scheduling Order deadlines, Fed. R. Civ. P. 16(b)(4) provides: "A schedule may be modified only for good cause and with the judge's consent."[27] The Fifth Circuit has explained that "[t]he good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'"[28] In other words, the party who seeks to modify a scheduling order deadline must show that, despite acting diligently, it will still be unable to meet that deadline.[29] Mere stipulations by the parties do not constitute good cause.[30] Courts consider four factors in determining whether to allow a scheduling modification for good cause under Rule 16(b)(4): (1) the explanation for the failure to complete

---

[25] R. Doc. 180, pp. 4-5.
[26] *See Garcia v. LQ Properties, Inc.,* No. 3:16-CV-1646-L, 2018 WL 276329, at *2 (N.D. Tex. Jan. 3, 2018) ("Federal Rule of Civil Procedure 6(b) allows a district court to grant extensions of time prior to the expiration of a deadline for "good cause.").
[27] While Federal Rule of Civil Procedure 23(c)(1) provides that class action certification must be determined "at an early practicable time," here, a CMO was in effect that provided for a specific deadline, and therefore Fed. R. Civ. P. 16 applies. *See also Buchanan,* 2018 WL 1932825, at *2, applying Fed. R. Civ. P. 16(b) to a motion for extension of a scheduling order deadline to file a motion for class certification.
[28] *Hernandez v. Mario's Auto Sales, Inc.,* 617 F. Supp. 2d 488, 492–93 (S.D. Tex. Jan. 21, 2009), *citing S & W Enters., L.L.C. v. SouthTrust Bank of Ala., NA,* 315 F.3d 533, 535 (5th Cir. 2003) (*quoting* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1522.1 (2d ed.1990)).
[29] *Hernandez,* 617 F. Supp. 2d at 493, *citing Rivera v. County of Willacy,* 2007 WL 1655303, *1 (S.D. Tex. June 6, 2007).
[30] *Hernandez,* 617 F. Supp. 2d at 493 *citing Rivera,* 2007 WL 1655303, *1 (*citing Chiropractic Alliance of N.J. v. Parisi,* 164 F.R.D. 618, 621 (D.N.J. Feb. 15, 1996)).

discovery on time, (2) the importance of the amendment, (3) the potential prejudice in allowing the amendment, and (4) the availability of a continuance to cure such prejudice.[31]

### B. Good Cause Supports An Extension of the Deadlines

With regard to the first Fed. R. Civ. P. 16(b)(4) factor, Omega has alleged sufficient explanations for its inability to file its class certification motion on time, as Omega has alleged that the parties had agreed to multiple informal extensions prior to the class certification motion deadline, such that United produced documents to Omega less than a month before the motion was due, and served supplemental responses to Omega's interrogatories, including the ones regarding numerosity, only eight days before the motion was due. Those responses and supplemental responses, however, appear to identify information only relating to Omega, and not information regarding other providers, as requested.[32] Furthermore, Omega contends that the thousands of documents produced were not categorized (including the thousands that Omega did access before filing the instant Motion), which hindered its preparation. While United raises Omega's failure to respond to United's discovery, that is not the pertinent inquiry, and is more properly raised in an appropriate motion filed by United (that complies with the applicable rules).

With regard to the second Fed. R. Civ. P. 16(b)(4) factor, *i.e.*, the importance of the amendment, Fed. R. Civ. P. 23(a) requires Omega to adequately establish numerosity of the class. Therefore, the requested information regarding numerosity, which Omega requested but has not yet received, is important. United does not argue that the information is not important, only that United would stipulate to this information, to some degree. To the extent United has offered in its

---

[31] *Leza v. City of Laredo,* 496 F. App'x 375, 376 (5th Cir. 2012), *citing Reliance Ins. Co. v. Louisiana Land & Expl. Co.,* 110 F.3d 253, 257 (5th Cir. 1997).
[32] R. Doc. 177-1, pp. 40-45. It is noted that Omega is obligated to raise any issues with United's responses to United.

7

sur-reply some possible stipulation regarding this information, it is unclear why United did not offer this solution in a timelier manner.

Finally, Omega is correct that the third and fourth factors, *i.e.*, the potential prejudice in allowing the amendment and the availability of a continuance to cure such prejudice, weigh in Omega's favor. United is not prejudiced in an extension of the class certification motion deadline. As Omega points out, United has actually represented that it faces more prejudice if it has to oppose the current "placeholder" motion.[33] Further, United has referenced its own discovery issues with Omega. Any prejudice to United in granting the extension to Omega may be sufficiently cured by a reasonable continuance.

Although it is a close question, the importance of the class certification motion and the availability of a continuance to cure any prejudice in allowing the extension weigh heavily in favor of granting Omega's motion. This is a complex case that has been pending for five years, throughout which the parties have undergone much procedural wrangling. While it appears true that Omega did not act with the level of diligence it should have, it is equally true that United seems more concerned with holding Omega to its bare bones, placeholder class certification motion than it is with any real prejudice caused by an extension since United agreed to extend virtually all other deadlines in the CMO. All parties need to be cognizant of the expectations of this Court that parties will work diligently to meet their obligations, confer in good faith to resolve issues, and avoid gamesmanship.

---

[33] R. Doc. 166, p. 6. It is also an inefficient use of the Court's resources.

## III. Conclusion

The Fed. R. Civ. P. 16(b)(4) factors weigh in favor of an extension of Omega's deadlines to file a motion for class certification, to disclose expert reports on class certification issues,[34] until October 17, 2021.

Accordingly,

**IT IS ORDERED** that the Motion to Extend Deadline to file Motion for Class Certification and Disclosure of Expert Written Reports,[35] filed by Plaintiff Omega Hospital, LLC is **GRANTED**. Omega's deadline to file a motion for class certification and deadline to disclose its expert reports on class certification issues are **EXTENDED** to **October 17, 2021**. All other deadlines remain in effect unless otherwise ordered by the Court.[36]

Signed in Baton Rouge, Louisiana, on October 7, 2021.

*[signature: Erin Wilder-Doomes]*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[34] While Omega does not really assert an argument in support of its request for an extension of the deadline to disclose expert reports, and it is unclear whether Omega still requires an extension of this deadline, since the deadlines for Omega's expert reports and class certification are the same, the extension for expert reports will also be granted. Presumably Omega also needs the information sought to provide to its experts, if any.
[35] R. Doc. 164.
[36] R. Doc. 181.